UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON, *et al* | CIVIL ACTION |
| *versus* | 22-211-SDD-SDJ |
| KYLE ARDOIN, in his official capacity as Secretary of State for Louisiana | |
| *consolidated with* | |
| EDWARD GALMON, SR., *et al* | CIVIL ACTION |
| *versus* | 22-214-SDD-SDJ |
| KYLE ARDOIN, in his official capacity as Secretary of State for Louisiana | |

## RULING

Before the Court are two motions: the *Motion of the Presiding Officers of the Louisiana Legislature to Intervene*[1] filed by Clay Schexnayder, Speaker of the Louisiana House of Representatives, and Patrick Page Cortez, President of the Louisiana Senate (collectively, "the Legislators"), and the *Motion to Intervene*[2] filed by Louisiana Attorney General Jeff Landry ("the Attorney General"). Both *Motions* are opposed,[3] though the *Robinson* Plaintiffs specify that they take no position on the Legislators' *Motion*.[4] For the reasons that follow, both *Motions* shall be GRANTED.

---

[1] Rec. Doc. No. 10.
[2] Rec. Doc. No. 30.
[3] The *Galmon* Plaintiffs filed a combined opposition to both motions (Rec. Doc. No. 36), and the *Robinson* Plaintiffs filed an opposition to the Attorney General's motion (Rec. Doc. No. 37).
[4] Rec. Doc. No. 37, p. 2, n. 2.

1

**I.   BACKGROUND**

On March 30, 2022, *Robinson v. Ardoin*[5] and *Galmon v. Ardoin*[6] were filed in the Middle District of Louisiana. Both suits challenge Louisiana's new congressional districting plan. In the interest of efficiency and judicial economy, *Galmon*, which had initially been allocated to Judge Brian A. Jackson, was reassigned to this Court, and on April 14, 2022, *Robinson* and *Galmon* were consolidated.[7] Now seeking to join the consolidated cases as parties are Clay Schexnayder, Speaker of the Louisiana House of Representatives, Patrick Page Cortez, President of the Louisiana Senate, and Louisiana Attorney General Jeff Landry. All of the putative intervenors assert that they are entitled to intervention as of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, permissive intervention under Rule 24(b). Plaintiffs oppose the interventions, arguing, *inter alia*, that the would-be parties have no independent interests to assert and that whatever interests they do have are already adequately represented by Defendant Kyle Ardoin, the Louisiana Secretary of State. The Court will address the parties' arguments in turn.

**II.   APPLICABLE LAW**

  A.  Intervention of Right Under Rule 24(a)

Federal Rule of Civil Procedure 24(a) provides that, on timely motion, the Court must permit anyone to intervene who is given an unconditional right to intervene by a federal statute; or who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical

---

[5] 3:22-cv-211.
[6] 3:22-cv-214.
[7] Rec. Doc. No. 34.

matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. The movant bears the burden of establishing his right to intervene, but Rule 24 is to be liberally construed. The United States Court of Appeals for the Fifth Circuit instructs that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained."[8] "The inquiry is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate."[9]

Although "[t]here is not any clear definition of the nature of the interest ... that is required for intervention of right,"[10] the Fifth Circuit has previously interpreted Rule 24(a)(2) to require a "'direct, substantial, legally protectable interest in the proceedings.'"[11] The Fifth Circuit has held that, ultimately, the "inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way."[12]

As for representation, the Fifth Circuit has made clear that the movant's burden of proving inadequate representation is a "minimal" one that is met if the movant shows that "'representation may be inadequate.'"[13] "Although the applicant's burden of showing inadequate representation is minimal, "it cannot be treated as so minimal as to write the requirement completely out of the rule."[14] The Fifth Circuit has held that "'[w]hen the party

---

[8] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)(quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir.1994)).
[9] *Brumfield v. Dodd,* 749 F.3d 339, 342 (5th Cir. 2014)(internal quotations omitted).
[10] 7C Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1908.1 (3d ed. 2007) [*Wright & Miller*] (internal quotation marks omitted).
[11] *Edwards v. City of Houston,* 78 F.3d 983, 1004 (5th Cir. 1996).
[12] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).
[13] *Brown v. Jefferson Par. Sch. Bd.*, No. CV 21-40, 2021 WL 949679, at *8 (E.D. La. Mar. 12, 2021)(quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994)).
[14] *Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 120 (5th Cir. 1991) (quoting *Bush v. Viterna,* 740 F.2d 350, 355 (5th Cir.1984)).

seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.'"[15]

### B. Permissive Intervention Under Rule 24(b)

Rule 24(b) provides that the Court may permit anyone to intervene who (1) is given a conditional right to intervene by a federal statute or (2) has a claim or defense that shares with the main action a common question of law or fact. This rule gives district courts discretion to allow intervention when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties."[16] "Permissive intervention is 'wholly discretionary' and may be denied even when the requirements of Rule 24(b) are satisfied."[17]

## III. ANALYSIS

### I. The Legislators' *Motion*

Clay Schexnayder and Patrick Page Cortez ("the Legislators") aver that they clearly satisfy the elements of intervention of right, which, again, are:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[18]

---

[15] *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984).
[16] *League of United Latin Am. Citizens v. Clements,* 884 F.2d 185, 189 n. 2 (5th Cir. 1989).
[17] *Turner v. Cincinnati Ins. Co.,* 9 F.4th 300, 317 (5th Cir. 2021).
[18] *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022).

4

On the first point, the Court agrees; there is no dispute that the *Motion* is timely, since it was filed only one week after the *Complaints* and before anything meaningful transpired in the case. Thus, the Legislators' entitlement to intervention of right hinges on the nature and magnitude of the interest articulated, as well as their ability to demonstrate that their interest is not already adequately represented. The Legislators assert a laundry list of interests in this case.[19] In the Court's view, many of these interests do not satisfy the requirements for intervention of right under Rule 24(a). Several of the assertions boil down to the Legislators' desire to avoid having their maps undone by an order of this Court or to be forced to redraw them; this strikes the Court as nothing more than a "generalized preference that the case come out a certain way." Other alleged interests are too ineffable, such as the Legislators' interest in defending "the injury to the legislative department of Louisiana, and the State itself."[20]

Nevertheless, the Court finds that the Legislators have articulated a legitimate interest where they cite their desire to defend the merits of the redistricting plans passed by the Legislature. In *League of United Latin Am. Citizens, Council No. 4434 v. Clements*,[21] the Fifth Circuit signaled that parties who play a "part in creating or revising the election scheme" meet the "real party in interest" test. And, as the Legislators note,

---

[19] "[T]o respond to allegations regarding the actions of the Legislature"; defending the redistricting plans passed by the Legislature; "an interest in seeking to prevent their votes in favor of the challenged plans from being nullified by an order deeming the plans violative of the Voting Rights Act"; "defending the injury to the legislative department of Louisiana, and the State itself, that would result from an injunction against the challenged plans"; preventing the Court from "transfer[ing] redistricting authority from the Legislature and to the court"; "avoiding a second redistricting process," which would divert time and resources from other pressing legislative issues; "a compelling and justiciable interest in defending and advancing legitimate legislative policies"; "an interest in ensuring that [] a remedy implements legitimate legislative policies"; "an interest in ensuring that [the Legislature's] policy choices guide redistricting overseen by a court"; "an interest in advocating their understanding of the legal requirements applicable to redistricting plans";  and "a compelling interest that Louisiana citizens' equal protection rights are honored in any future redistricting plan" (*See* Rec. Doc. No. 10).
[20] Rec. Doc. No. 10, p. 5.
[21] 884 F.2d 185, 188 (5th Cir. 1989).

the participation of legislators is a not-uncommon feature of recent redistricting litigation across the country.[22] Moreover, as a matter of common sense, the Court finds that the leaders of the legislative bodies that enacted the challenged maps have an interest in participating in a process where the various policy choices and judgments that went into creating the maps will be scrutinized. Especially in light of the liberal and flexible standard prescribed for Rule 24, the Court finds that the Legislators have established an interest.

The argument that the Legislators' interest will be impaired or impeded without their participation is heavily intertwined with their argument regarding adequacy of representation. Essentially, the Legislators argue that the only named Defendant in this suit, Secretary of State Ardoin, "did not enact the challenged plans, lacks constitutional authority to do so, has no knowledge of the policy considerations underpinning them, has no particular interest in defending those policy choices, and will not be tasked with enacting new plans if they are enjoined."[23] Therefore, they argue, their interest in defending the plans will be impaired if Secretary of State Ardoin, whose function is one of implementation, not development or defense of maps, is the sole Defendant. The Court credits this argument as persuasive.

As for adequacy of representation, the Fifth Circuit instructs that "'[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented.'"[24] The Court is persuaded by the

---

[22] *See, e.g., Caster v. Merrill*, No. 2:21-CV-1536-AMM, 2022 WL 264819, at *7 (N.D. Ala. Jan. 24, 2022), *cert. granted before judgment sub nom. Merrill v. Milligan,* 142 S. Ct. 879 (2022)(granting legislators' motion to intervene to defend the redistricting plan); *Carter v. Chapman*, 270 A.3d 444, 453 (Pa. 2022) (granting intervenor status to the Speaker and Majority Leader of the Pennsylvania House of Representatives and the President Pro Tempore and Majority Leader of the Pennsylvania Senate); *Harper v. Hall*, 2022-NCSC-17, ¶ 3, 868 S.E.2d 499.
[23] Rec. Doc. No. 10, p. 10-11.
[24] *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984)

6

Legislators' assertion that their interest in defending House Bill 1 and Senate Bill 5 is not adequately represented by the Secretary, since his ultimate objective is "administering whatever election rules may apply by law, not in administering the specific plans challenged in this case."[25] Although the Secretary's interest in "orderly elections" may, in this case, mean that he disfavors any attempt to defeat the already-existing maps, the Legislators point out that ultimately, the Secretary may be disinterested in the merits as long as any remedy "were to occur in time to administer the next scheduled legislative elections."[26] This divergence of interests is evidence of inadequate representation.

Finding that the Legislators have demonstrated their entitlement to intervene as of right under Rule 24(a), the Court orders that their *Motion* shall be GRANTED.

## II.    The Attorney General's *Motion*

Attorney General Jeff Landry's *Motion* is timely, coming only two weeks after the *Complaints* and before any significant developments in the case. Though he cites a number of state statutes giving him authority to represent the state and to intervene in civil suits,[27] he points to no federal statute giving him a right to intervene under Rule 24(a). Therefore, to intervene as of right, he must satisfy the now-familiar factors under Rule 24(a)(2).[28]

As an initial matter, the Court is underwhelmed by the Attorney General's assertion that his interest in this suit is "to protect the interests of the State."[29] This is an overly general statement by the standards of Rule 24(a), which requires a *particularized* interest.

---

[25] Rec. Doc. No. 10, p. 11 (citing La. R.S. § 18:18).
[26] *Id.* at p. 13.
[27] Rec. Doc. No. 30, p. 4-5.
[28] *See supra,* p. 4.
[29] Rec. Doc. No. 30, p. 6.

7

The Attorney General further asserts that "[t]he State has unique sovereign interests not shared by the other parties," but, at his most specific, he describes that interest as the need "to defend the State's congressional plan."[30] This interest is not unique – it is explicitly shared by the Legislators who also moved to intervene.  Also unavailing is the Attorney General's argument that he is entitled to intervene in this suit because he is charged with various election-related responsibilities under state law.[31] Intervention of right requires a direct and substantial interest in *this proceeding*; the Attorney General does not explain how being designated as statutory counsel for each Parish Board of Election Supervisors, for example, is relevant to congressional redistricting.

That being said, the Court is mindful of the United States Supreme Court's recent instruction that "a State's opportunity to defend its laws in federal court should not be lightly cut off."[32] In *Cameron v. EMW Women's Surgical Center, P.S.C.*, decided March 3, 2022, the high Court, in a *Ruling* affirming the Kentucky attorney general's intervention to defend a Kentucky abortion law, wrote as follows:

> Paramount among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law. Therefore, a State "clearly has a legitimate interest in the continued enforceability of its own statutes," and a federal court must "respect ... the place of the States in our federal system". . .Respect for state sovereignty must also take into account the authority of a State to structure its executive branch in a way that empowers multiple officials to defend its sovereign interests in federal court.[33]

The Supreme Court also relied upon provisions of Kentucky law that mirror Louisiana law with respect to the role of the attorney general:

---

[30] Rec. Doc. No. 30, p. 5.
[31] *Id*. at p. 7.
[32] 142 S. Ct. 1002, 1011 (2022).
[33] *Cameron v. EMW Women's Surgical Ctr., P.S.C.,* 142 S. Ct. 1002, 1011 (2022)(internal citations omitted).

8

> In this case, although the secretary for Health and Family Services apparently enjoyed the authority under state law to defend the constitutionality of HB 454, the secretary shared that authority with the attorney general. Indeed, it is the attorney general who is deemed Kentucky's "chief law officer" with the authority to represent the Commonwealth "in all cases."[34]

Under Louisiana law, the Attorney General is the "chief legal officer," charged with "the assertion or protection of any right or interest of the state."[35] Overall, *Cameron* suggests that the Attorney General's desire to represent Louisiana as a sovereign state is a legitimate interest in this proceeding.

As to adequacy of representation, the Attorney General claims that he does not share the same ultimate objective as Secretary of State Ardoin, because Ardoin's objective is "the orderly implementation of whatever election rules are in force," while the Attorney General is "tasked specifically with defending the laws and sovereign interests of the State of Louisiana."[36] This argument seems to elide that "whatever election rules are in force" are, of course, set forth in those very state laws that the Attorney General is bound to defend, but the Court credits the distinction that the Secretary of State's focus is the *implementation* of laws, not defending their legality.

Lastly, the Attorney General's argument that the State's interest would be impaired in his absence is lacking. He maintains that "the Court's determination could have long lasting impacts on the State,"[37] but that would be the case regardless of Landry's presence or absence as a party to this suit. Primarily, the Attorney General argues that the State's interest would be impaired if he is not allowed to intervene and is thus

---

[34] *Id.*
[35] La. Const. art. IV, § 8.
[36] Rec. Doc. No. 30, p. 9.
[37] *Id.* at p. 8.

9

prevented from "providing a defense to Plaintiffs' challenge to the method of electing members to Congress."[38] But, as Plaintiffs point out, Attorney General Landry is fully empowered to represent Secretary of State Ardoin;[39] Landry never articulates why he must mount a defense by becoming party to the suit *himself* instead of, in his capacity as "chief legal officer," representing the existing state Defendants.

The Court finds that Attorney General Landry has failed to establish that he is entitled to intervention of right. But, in light of *Cameron*, the Court will allow permissive intervention for the Attorney General to defend the enforceability of Louisiana law, here, the existing maps. There is no doubt that Landry's *Motion* is timely or that his proposed defense shares questions of law or fact in common with the claims in the underlying litigation. Therefore, the Court exercises its discretion to grant permissive intervention, finding that "no one would be hurt and the greater justice could be attained."[40]

### III. Plaintiffs' Concerns

Plaintiffs worry that allowing additional defendants to intervene will "unnecessarily duplicate" efforts, "effectively doubling or even tripling page limits and argument time."[41] The Court shares this concern, but finds that it can be mitigated by careful management of the briefing process and the evidentiary hearing. Indeed, "[f]ederal courts have inherent powers necessary to achieve the orderly and expeditious disposition of their dockets."[42]

---

[38] *Id.* at p. 8.
[39] *See* La. R.S. 49:257 ("Notwithstanding any other law to the contrary, the attorney general, at his discretion, shall represent or supervise the representation of the interests of the state in any action or proceeding in which the constitutionality of a state statute or of a resolution of the legislature is challenged or assailed").
[40] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)(quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir.1994)).
[41] Rec. Doc. No. 36, p. 8.
[42] *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 86 F.3d 464, 467 (5th Cir. 1996). *See also, e.g.,* Federal Rule of Evidence 611.

In the Court's view, the greater threat to the expedient adjudication of this case would be the delays associated with a potential appeal from this Court's denial of a motion to intervene as of right, which is immediately appealable in the Fifth Circuit.[43]

### III.  CONCLUSION

For the foregoing reasons, the *Motion of the Presiding Officers of the Louisiana Legislature to Intervene*[44] filed by Clay Schexnayder, Speaker of the Louisiana House of Representatives, and Patrick Page Cortez, President of the Louisiana Senate and the *Motion to Intervene*[45] filed by Louisiana Attorney General Jeff Landry are hereby GRANTED and the movants permitted to intervene as Defendants in the consolidated cases.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>April 19, 2022</u>.

*[signature: Shelly D. Dick]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[43] *Sommers v. Bank of Am., N.A.,* 835 F.3d 509, 512 (5th Cir. 2016)("Under our precedents, '[t]he denial of a motion to intervene of right is an appealable final order under 28 U.S.C. § 1291,' but 'we have only provisional jurisdiction' to review the denial of permissive intervention"); *Valley Ranch Dev. Co. v. Fed. Deposit Ins. Corp.*, 960 F.2d 550, 555 (5th Cir. 1992) ("[A] denial of intervention is immediately appealable as a collateral order"); *Edwards v. City of Hous.*, 78 F.3d at 992 ("The denial of a motion to intervene of right is an appealable final order....")
[44] Rec. Doc. No. 10.
[45] Rec. Doc. No. 30.