# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON., *et al.* | |
| Plaintiffs, | |
| v. | Case No.: 3:22-cv-00211-SDD-SDJ |
| KYLE ARDOIN, IN HIS OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, *et al* | |
| Defendant and Intervenor-Defendants, | |
| AND | (c/w) |
| EDWARD GALMON, SR., *et al.* | |
| Plaintiffs, | |
| v. | Case No.: 3:22-cv-00214-SDD-SDJ |
| KYLE ARDOIN, IN HIS OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, *et al.* | |
| Defendant and Intervenor-Defendants. | |

### INTERVENOR-DEFENDANT THE STATE OF LOUISIANA'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY MOTION TO STAY

Intervenor-Defendant the State of Louisiana (the "State"), by and through Jeff Landry, the Attorney General of Louisiana, files this Motion to Stay.

### INTRODUCTION

Plaintiffs brought this action seeking declaratory and injunctive relief under Section 2 of the Voting Rights Act. *Robinson, et al. v. Ardoin*, No. 3:22-cv-211-SDD-RLB (M.D. La.) (*filed* March 30, 2022). In their Complaint they allege that Louisiana's

1

2022 congressional map "continues the State of Louisiana's long history of maximizing political power for white citizens by disenfranchising and discriminating against Black Louisianans." Complaint (ECF No. 1 at 1). Just over a week later, Plaintiffs then sought a status conference in order that they may file a motion for preliminary injunction. (ECF No. 16). A video status conference was then set for April 13th. (ECF No. 17).

At the status conference the Court ordered that Defendants, intervenor or otherwise, had four-days over the Easter holiday to respond to Plaintiffs' PI motions.[1] (ECF No. 33). At the same status conference, the Court consolidated these cases. (ECF No. 33). After a second status conference in another, now consolidated, matter, the Court allowed Defendants two weeks to respond to Plaintiffs' motions. (ECF No. 35). As there is a case before the Supreme Court that will inevitably impact this proceeding (and could very well be outcome determinative) and the time for Plaintiffs to seek injunctive relief has passed, *see Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam), the Secretary of State now moves to stay these proceedings pending resolution of *Merrill v. Milligan* at the Supreme Court of the United States.

## **ARGUMENT**

The power to stay a case "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254

---

[1] It is important to note that the State had yet to be granted intervention and, as such, was advised by the clerk that Intervenors were not permitted to participate at the scheduling conferences in these consolidated cases. The motions to intervene were not granted until April 19, 2022 (ECF No. 64).

(1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. Courts have inherent power to stay proceedings while awaiting the outcome of another matter which may have a substantial or dispositive effect. *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937). A court is within its discretion to grant a stay when a related case with substantially similar issues is pending before another court. *See Greco v. NFL*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015).

"Whether to grant a stay pending resolution of another case is a fact-intensive question." *Alford v. Moulder*, 2016 U.S. Dist. LEXIS 143293, *4 (S.D. Miss. October 17, 2016) (citing *In re Beebe*, 1995 U.S. App. LEXIS 41303 (5th Cir. 1995)). Specifically, when considering whether to stay a matter pending resolution of a separate action, the Fifth Circuit has considered: (1) the potential hardship and prejudice to the moving party if a stay is denied; (2) the potential prejudice to the non-moving party if a stay is granted; and (3) other "difficulties inherent in the general situation, including potential judicial inefficiency . . . ." *See Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545-46 (5th Cir. 1983), *aff'd in part and vacated in part on other grounds*, 706 F.2d at 548 (5th Cir. 1983); *see also Greco*, 116 F. Supp. 3d at 761 ("[I]n determining whether a stay is proper, courts consider the interests of the parties and potential conservation of judicial resources."); *Landis*, 299 U.S. at 254-55 (same).

    **I.    A Stay Should be Granted Pending the Supreme Court's Determination in *Merrill v. Milligan*.**

The Supreme Court's upcoming resolution of lingering questions regarding Section 2 of the Voting Rights Act, specifically questions as to when an additional majority-minority district is required, will directly impact the present matter. Tus, there are several important reasons why Defendant's interests and the interests of judicial economy counsel in favor of granting a stay here. First, the unique relief sought in the instant action is rare, and a case requesting this rare relief is currently pending before the United States Supreme Court in *Merrill v. Milligan*. The last case to result in a new majority-minority congressional district was *De Grandy v. Wetherell*, 794 F. Supp. 1076 (N.D. Fla. 1992) as a result of a "deadlock" lawsuit, and the last contested Section 2 case that resulted in the creation of an additional majority-minority congressional district was *Hastert v. State Board of Elections*, 777 F.Supp. 634 (N.D. Ill. 1991). Both of these lawsuits pre-dated the *Shaw* cases.[2]

This case closely parallels the recent Alabama trial court decisions where the Supreme Court issued stay, and granted a *writ of certiorari* in one case and granted *certiorari before judgment* in the other.[3] In those cases, the Plaintiffs sought to create bizarrely shaped districts that were drawn first on the basis of race, claimed that proportional representation by race justifies the proposed districts, and then adjusted the resulting maps to try to meet other state criteria.

---

[2] *LULAC v. Perry*, 457 F.Supp. 2d 716 (E.D. Tex. 2006) resulted in a redrawing of Congressional District 23, but it did not mandate the creation of an entirely new majority-minority district.

[3] Merrill is actually two cases. *Merrill, et al. v. Milligan, et al.*, No. 21-1086 (2022); *Merrill, et al. v. Caster, et al.*, No. 21-1087 (consolidated with *Milligan*). In *Caster*, the Supreme Court granted cert. before judgment and took the case before the 11th Circuit could rule, and in the *Milligan* the court noted probable jurisdiction and placed the case on the appellate docket from the three-judge district court panel. *See Merrill v. Milligan*, 142 S. Ct. 879 (2022).

4

As a result of these parallels, the issues currently under consideration by the Supreme Court *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Mar. 21, 2022); *Merrill v. Milligan*, No. 21-1086 (U.S., Feb. 7, 2022), are likely to substantially affect or be fully dispositive over the issues presented in this case. The judicial inefficiency (and hardship to the State) that could result from a liability finding from this court pre-dating the Supreme Court's pronouncement in *Merrill* puts the State at grave risk that this Court could find liability under a legal theory that may no longer be applicable law. In addition, should this case proceed, the litigants could be placed in a position to entirely relitigate this case following the disposition of *Merrill*. These concerns demonstrate the clear risk of wasted time and resources for both this Court and the Parties if these proceedings are not stayed. *Second*, a stay is proper to eliminate electoral and voter confusion as Louisiana's July 20, 2022 candidate qualifying deadline for its congressional elections draws closer, and the State's other steps necessary to properly administer the election require timely attention. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam).

Accordingly, this Court should stay proceedings pending resolution of *Merrill*.

### A. The Possibility of Prejudice to the State Weighs in Favor of Granting a Stay.

#### 1. The Issues in *Merrill* Will Likely be Dispositive of this Case.

In determining whether a stay is proper, courts must weigh, *inter alia*, the similarity of issues and consequent likelihood that the related case will impact the case at bar, *see Greco*, 116 F. Supp. 3d at 761, the balance of the equities, *see Alford*,

5

2016 U.S. Dist. LEXIS 143293, *6, and the "interests of judicial economy," *Labouliere v. Our Lady of the Lake Found.*, No. 16-00785-JJB-EWD, 2017 U.S. Dist. LEXIS 160853, at *25 (M.D. La. Sep. 29, 2017). Accordingly, courts frequently stay proceedings pending the outcome of a separate case pending before the Supreme Court of the United States where the Supreme Court's decision may substantially affect, or prove to be dispositive of the matter. *See, e.g.*, *Kamal v. J. Crew Grp., Inc.*, Civil Action No. 15-0190 (WJM), 2015 U.S. Dist. LEXIS 172578, at *4 (D.N.J. Dec. 29, 2015) (staying action pending Supreme Court's decision in a separate related action, and citing decisions of nine federal district courts staying similar cases); *see also Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15 C 5182, 2016 U.S. Dist. LEXIS 581, at *8 (N.D. Ill. Jan. 5, 2016) (same).

The issues under active consideration by the Supreme Court in *Merrill* are on all fours with the instant case. The question presented in *Merrill* is "[w]hether the State of Alabama's 2021 redistricting plan for its seven seats in the United States House of Representatives violated section 2 of the Voting Rights Act, 52 U.S.C. §10301." 2022 U.S. LEXIS 1626, at *1. Specifically, that case arises from a dispute over Alabama's newly drawn congressional districts, where a three-judge district court concluded that Alabama's congressional districting plan likely violates section 2 of the Voting Rights Act, and thus entered an injunction ordering that Alabama's congressional districts be completely withdrawn. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (describing procedural background).

6

Similarly, Plaintiffs here challenge Louisiana's new congressional districting plan "on the ground that it violates Section 2 of the Voting Rights Act" and likewise seek declaratory and injunctive relief. (ECF No. 1 at ¶ 1).[4] There is little, if any, daylight between the dispositive issues under consideration in *Merrill* and those before this Court. The near total overlap of issues between the two cases translates to a high likelihood that *Merrill* will directly impact the instant case, which then implicates concerns of judicial economy and conservation of resources because of the risk that this Court's proceedings would have to be prepared under new standards in light of the Supreme Court's signal that it will re-address binding precedent. *See Greco*, 116 F. Supp. 3d at 761.

The Supreme Court in *Merrill*—through opinions by Justice Kavanaugh, Chief Justice Roberts, and Justice Kagan—has openly stated that it will be revisiting and clarifying Section 2 vote dilution claims. *Merrill v. Milligan*, 142 S. Ct. at 881 ("[T]he Court's case law" with respect to "whether an additional majority-minority congressional district . . . is required by the Voting Rights Act and not prohibited by the Equal Protection Clause . . . is notoriously unclear and confusing.") (Kavanaugh, J. concurring with Alito, J.); *id.* at 882-83 ("*Gingles* and its progeny have engendered considerable disagreement and uncertainty regarding the nature and contours of a vote dilution claim.") (Roberts, C.J. dissenting); *id.* at 889 (acknowledging that the Court believes "that the law needs to change.") (Kagan, J. dissenting). As the

---

[4] *Compare* (ECF No. 1 at 51-52) (claim brought under Section 2 of the VRA) *and Galmon, et al. v. Ardoin*, No. 3:22-cv-214 (ECF No. 1 at 25-26) (same) *with Milligan, et al. v. Merrill, et al.*, No. 2:21-cv-1530 (ECF No. 1 at 48-49) (same) *and Caster, et al. v. Merrill, et al.*, No. 2:21-cv-1536 (ECF No. 1 at 29-30) (same).

Supreme Court has given this Court every reason to believe that the law governing Section 2 claims is about to change with respect to redistricting cases, this Court should use its inherent power to stay these proceedings. *See Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545-46 (5th Cir. 1983), *aff'd in part and vacated in part on other grounds*, 706 F.2d at 548 (5th Cir. 1983). Staying a case while a controlling appeal is pending is "at least a good" reason "if not an excellent one." *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.,* 559 F.3d 1191, 1198 (11th Cir. 2009) (a stay is appropriate when "a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case").

Should this case proceed, the hardship to the State will be immense as it will be potentially compelled to defend itself against Plaintiffs claims now under the current—soon to be outmoded—Section 2 regime and *again* under any new regime the Supreme Court announces. It is simply not contestable that Section 2 claims are fact and resource intensive inquiry. *NAACP v. Fordice*, 252 F.3d 361, 367 (5th Cir. 2001) ("Before making its totality of the circumstances analysis, the district court correctly recognized that it was required to effect a flexible, fact-intensive inquiry predicated on "an intensely local appraisal of the design and impact of the contested electoral mechanisms, a searching practical evaluation of the past and present reality and a functional view of political life." (internal citations and quotations omitted) (cleaned up)).

Furthermore, it is expected that the Supreme Court will decide *Merrill* before the end of the 2022-2023 term, meaning that a decision will probably be released by

8

March 2023, but no later June of 2023 in any event.[5] A decision in even June of 2023 is *well in advance* of the congressional elections in 2024, which will allow sufficient time to hear this case in the normal course. Further, as is shown below in Section I(A)(2), there can be no prejudice to Plaintiffs as immediate injunctive relief is currently foreclosed by the *Purcell* in any event.

### 2. The Supreme Court's Holding in *Purcell* Counsels in Favor of a Stay.

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (quoting *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 231 (1989)). "Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5. These concerns are heightened "in the apportionment context" where "'a court is entitled to and *should* consider the proximity of a forthcoming election and the mechanics and complexities of state election laws'" when determining whether to "'award or withhold immediate relief.'" *Veasey v. Perry*, 769 F.3d 890, 893. Injunctions close in time to elections are thus strongly disfavored in federal court. *Id.* at 4-6.

A determination that an election or election deadline is too close under *Purcell* depends in part on "the nature of the election law at issue, and how easily the State

---

[5] The Supreme Court has recently been deciding redistricting cases approximately four months after oral argument. *See, e.g.*, *Shelby County v. Holder*, 570 U.S. 529 (2013) (argued Feb. 27, 2013, decided June 25, 2013); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254 (2015) (argued Nov. 12, 2014, decided March 25, 2015); *Bethune-Hill v. Va. St. Bd. of Elections*, 137 S. Ct. 788 (2017) (argued Dec. 5, 2016, decided March 1, 2017); *Cooper v. Harris*, 137 S. Ct. 1455 (2017) (argued Dec. 5, 2016, decided May 22, 2017); *Abbott v. Perez*, 138 S. Ct. 2305 (2018) (argued April 24, 2018, decided June 25, 2018).

9

could make the change without undue collateral effects." *Merrill*, 142 S. Ct. at 881 n.1 (Kavanaugh, J., concurring). Accordingly, "[c]hanges that require complex or disruptive implementation must be ordered earlier than changes that are easy to implement." *Id.* Implementation of new redistricting maps are among the most disruptive changes a Court can order, not just because of the complexities involved, but also the downstream effects that it can have on numerous aspects of state election administration and the electoral system overall. Indeed, "[s]hifting district and precinct lines can leave candidates wondering, voters confused, and election officials with a tremendous burden to implement maps in a timely manner with very limited resources." *Perez v. Texas*, 970 F. Supp. 2d 593, 606 (W.D. Tex. 2013). For this Court to comply with *Purcell*'s dictates in the redistricting context, any remedy would have to be ordered earlier than typical changes to election laws given the complex nature of redistricting and its downstream consequences on the electoral system and administration. In fact, the Court already acknowledged that a *Purcell* problem exists; first, when initially ordering a *four-day* response window to Plaintiffs' PI motions over a holiday weekend, and again at a hearing when agreeing to minor modifications that schedule. In this instance, rushing to afford Plaintiffs relief does not alleviate their *Purcell* problem, it simply makes that problem come to fruition faster.

  Here, granting Plaintiffs their requested relief in this redistricting case would cut too close to critical statutory deadlines for the 2022 congressional elections: the June 22 deadline for nominating petitions; the July 22 candidate qualifying deadline;

10

the July 29 candidate objection deadline; the September 24 oversea resident and military service member ballot mailing deadline; and early voting starts October 18, 2022. *See* Dec. of Comm. of Elections Sherri Hadskey (ECF No. 101-4 at ¶ 16). Further, the Secretary and the rest of Louisiana's election administration machinery needs sufficient time to implement any new maps–a process which is already underway. *Id*. at ¶ 18. Similar to the district court's injunction in *Merrill*, however, injunctive relief this close to the candidate qualifying deadline would be "a prescription for chaos for candidates, campaign organizations, independent groups, political parties, and voters" because "those individuals and entities now do not know who will be running against whom in the primaries." *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). As Justice Kavanaugh described in his concurrence,

> Filing deadlines need to be met, but candidates cannot be sure what district they need to file for. Indeed, at this point, some potential candidates do not even know which district they live in. Nor do incumbents know if they now might be running against other incumbents in the upcoming primaries.

*Id.* The *Purcell* concerns are exacerbated here because of the compressed timeline resulting from delays in the delivery of the census data. (ECF No. 101-4 at ¶¶ 17, 19); *see also id*. at ¶ 20 (noting the current paper shortage that adds significant risks that ballot paper may run out if any is wasted).

Such electoral confusion that would ensue from any injunction of this Court ordering new congressional maps mere weeks before the candidate qualifying deadline is the kind of action that *Purcell* aims to prevent, particularly considering the complex nature and far-reaching impact of redistricting on the electoral system.

*See, e.g.*, *Merrill*, 142 S. Ct. at 879 (staying district court injunction ordering complete redrawing of congressional districts when primary elections would begin "just seven weeks" from the Supreme Court's date of disposition); *Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 31 (2020) (noting that the district court contravened the Supreme Court's "long standing precedents" by ordering changes to Wisconsin's election laws "in the period close to an election," which was "just six weeks before" the election); *Andino v. Middleton*, 141 S. Ct. 9, 10 (2020) (Kavanaugh, J. concurring) (observing that 5-6 weeks before an election was too "close" to enjoin South Carolina's witness requirement for absentee ballots); *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2618 (2020) (staying district court's orders allowing initiative sponsors more time to collect signatures where the Ninth Circuit would "hear Idaho's case . . . almost a month before Idaho's Secretary of State must certify ballot questions to county clerks" to have the questions printed on the ballot). This is especially true when considering "the mechanics and complexities of state election laws" in the context of redistricting. *Covington v. North Carolina*, No. 1:15CV399, 2015 U.S. Dist. LEXIS 196293, at *11 (M.D.N.C. Nov. 25, 2015) (citing *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)). As the Louisiana Commissioner of Elections stated: "I am concerned that any further disruption to [the redistricting] process would make it difficult if not impossible to hold a successful and timely congressional primary election." (ECF No. 101-4 at ¶ 19).

Just recently in Louisiana, a state judge invalidated the results of a local election in *Koonce v. Ardoin*, No. 2022-1323 (14th Judicial District Court, Parish or Calcasieu). On April 8, that court ordered a local election invalidated because a

12

registrar had mis-assigned certain voters. Changes to election boundaries as a result of a possible remedial order from this court, along with the likelihood of a stay from either the 5th Circuit or the U.S. Supreme Court restoring Louisiana's adopted map run a serious risk of problems in the administration of elections.

A recent incident in the District 2, Sulpher City Council election serves as a reminder as to the difficult work that the Secretary of State's office does and the potential for catastrophic *election nullifying* results. *See* Hearing Transcript of *Koonce v. Ardoin*, No. 2022-1323, 218:27-220:25 (14th Judicial District Court, Parish or Calcasieu) (attached hereto as Appendix A, pin cite portions highlighted) (nullifying an election due to a mistake by the Registrar of Voters placing voters into incorrect districts); *id.* at 220:2-7 (noting importantly that "this is an election where people need to have faith in the outcome of the election."). These are the exact types of incidents that *Purcell* is concerned with.

Accordingly, the Supreme Court's admonition in *Purcell* also counsels in favor of granting a stay of this case in light of Louisiana's impending congressional candidate qualification deadline.

> a. <u>The Harm Attendant the Needlessly Expedited Preliminary Injunction Schedule Counsels in Favor of a Stay.</u>

As *Purcell* already bars immediate relief to Plaintiffs in any event, the Court's expedited schedule only serves to prejudice the Defendants by artificially inhibiting their ability to mount a defense. First, it must be noted that in its Memorandum in Response to Plaintiffs' motions, the State noted that it was preparing to file a motion

13

to reset deadlines in addition to the instant motion. *See* (ECF No. 108 at 23 n.10, n.11). After further consideration, the State will not be filing the motion to reset as the instant motion, should it be granted, would moot that motion in any event. The State still maintains the current schedule has been prejudicial to its case, not necessarily in the quality of the response or expert reports but in the scope of the same.[6]

The fact that the preliminary injunction process has been needlessly artificially shortened continues to harm the State. As a practical matter, what the current schedule does is, in effect, flip the burdens on bringing litigation on its head by putting the Defendants at such a disadvantage when it is, at every stage of this proceeding, Plaintiffs burden to prove their case. The underlying assumption, of course, is that every party has an equal opportunity to raise and defend against issues. That burden is made materially easier, all things considered, when the Plaintiffs have significantly more time to advance their case than the State. For example, Plaintiffs had months to prepare their evidence and experts as the bill that became the current congressional map was passed the legislature on February 21st of this year.[7] Plaintiffs were well aware that a veto override was expected because they filed their lawsuits within a day of the successful veto override. *Compare Robinson*, ECF No. 1 (filed March 30, 2022) *and Galmon*, ECF No. 1 (filed March 30, 2022) *with*

---

[6] For example, the State intended to have the existing or additional experts opine upon the Senate Factors and the transition of Louisiana from a Democratic Party dominated state to one where the Republican Party tends to dominate statewide politics. Both of these are relevant to the State's defense and could have been covered more robustly given a more routine response deadline.
[7] Louisiana State Legislature, 2022 First Extraordinary Session, https://www.legis.la.gov/Legis/BillInfo.aspx?i=241484

Louisiana State Legislature, 2022 First Extraordinary Session, https://www.legis.la.gov/Legis/BillInfo.aspx?i=241484 (veto override vote held on March 31, 2022).

While the State's motions to intervene were pending in the now consolidated matters, the Court implemented a schedule that works a material injustice on the State and, thereby, the people of Louisiana. That prejudice continues even now as both sets of Plaintiffs have included *additional* expert reports with their reply briefs, yet the Robinson Plaintiffs, as of 3:30 pm central time on May 3rd, had yet to produce their backup data as required by the Court. *See* (ECF No. 35). Therefore, for this reason and many other, the schedule is needlessly prejudicially, especially in light of the *Purcell* issues that currently exist, which further counsel in favor of a stay here.

### B. Conservation of Judicial Resources Counsels in Favor of a Stay.

The issues before the Supreme Court in *Merrill* could be dispositive of this litigation. *See Merrill*, 142 S. Ct. at 881. At the very least, the Supreme Court's disposition of that case will be informative to the Parties' claims and defenses in the instant case. It can hardly be understated that the risk of wasting party and judicial resources is great when some, if not all, of discovery, summary judgment, and trial may need to be relitigated in their entirety. Forcing the parties and the Court to undertake an endeavor which will in all likelihood prove fruitless is an extraordinary waste of time and resources. What's more, it works a harm on the integrity of the judicial process itself to make a rushed decision based on incomplete evidence resulting from a hurried process. Should a Defendant seek an appeal from a grant of

a preliminary injunction here—an appeal from an adverse ruling, one would surmise, is a near certainty—then it is almost assured that the Fifth Circuit (or then the Supreme Court) would itself invoke both *Purcell* and *Merrill* while issuing a stay and holding the merits of any such appeal until *Merrill* is decided. For this reason alone, this Court should stay this case pending resolution of *Merrill*.

## **CONCLUSION**

For the aforementioned reasons, the Court should stay proceedings pending resolution of *Merrill v. Milligan* before the United States Supreme Court.

Dated: May 3, 2022

Respectfully Submitted,

Jeff Landry
Louisiana Attorney General

*/s/Angelique Duhon Freel*
Elizabeth B. Murrill (LSBA No. 20685)
Shae McPhee (LSBA No. 38565)
Morgan Brungard (CO Bar No. 50265)**
Angelique Duhon Freel (LSBA No. 28561)
Carey Tom Jones (LSBA No. 07474)
Jeffrey M. Wale (LSBA No. 36070)
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6000 phone
(225) 326-6098 fax
murrille@ag.louisiana.gov
freela@ag.louisiana.gov
walej@ag.louisiana.gov
jonescar@ag.louisiana.gov
mcphees@ag.louisiana.gov
brungardm@ag.louisiana.gov

Jason B. Torchinsky (DC 976033 )*
Phillip M. Gordon (DC 1531277)*
Dallin B. Holt (VSB 97330)*
Holtzman Vogel Baran Torchinsky & Josefiak, PLLC
15405 John Marshall Highway
Haymarket, VA 20169
(540) 341-8808 phone
(540) 341-8809 fax
jtorchinsky@holtzmanvogel.com
pgordon@holtzmanvogel.com
dholt@holtzmanvogel.com

*admitted *pro hac vice*

** admission *pro hac vice* forthcoming    *Counsel for Intervenor-Defendant the State of Louisiana*

## CERTIFICATE OF SERVICE

**I CERTIFY** I have served the foregoing was served on counsel for the parties via electronic means on May 3, 2022.

<u>*/s/Angelique Duhon Freel*</u>
Angelique Duhon Freel