IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON, EDGAR CAGE, DOROTHY NAIRNE, EDWIN RENE SOULE, ALICE WASHINGTON, CLEE EARNEST LOWE, DAVANTE LEWIS, MARTHA DAVIS, AMBROSE SIMS, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") LOUISIANA STATE CONFERENCE, AND POWER COALITION FOR EQUITY AND JUSTICE, | CIVIL ACTION NO.  3:22-cv-00211<br><br>Chief Judge Shelly D. Dick<br>Magistrate Judge Scott D. Johnson |

*Plaintiffs*,

v.

R. KYLE ARDOIN, in his official capacity as
Secretary of State for Louisiana,

*Defendant.*

| | |
|---|---|
| EDWARD GALMON, SR., CIARA HART, NORRIS HENDERSON, and TRAMELLE HOWARD, | CIVIL ACTION NO. 3:22-cv-00214 (consolidated with Civil Action No. 3:22-cv-00211)<br><br>Chief Judge Shelly D. Dick<br>Magistrate Judge Scott D. Johnson |

*Plaintiffs*,

v.

R. KYLE ARDOIN, in his official capacity as
Secretary of State for Louisiana,

*Defendant.*

## **BRIEF *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY**

TABLE OF CONTENTS

INTEREST OF THE *AMICI CURIAE* ............................................................................................................................ 2

ARGUMENT ......................................................................................................................................................... 2

CONCLUSION........................................................................................................................................................ 7

## TABLE OF AUTHORITIES

### CASES

*Baltimore County Branch of the NAACP v. Baltimore County*, No. 21-cv-3232,
   2022 WL 888419 (D. Md. Mar. 25, 2022) ..................................................................... 4

*Bartlett v. Strickland*, 556 U.S. 1 (2009) ............................................................................ 3–4

*Cooper v. Harris*, 137 S. Ct. 1455 (2017) ............................................................................ 4

*Fusilier v. Landry*, 963 F.3d 447 (5th Cir. 2020) ............................................................... 4

*Robinson v. Ardoin*, No. 22-30333, slip op. (5th Cir. June 12, 2022) ................................. 1, 5, 6–7

*Thornburg v. Gingles*, 478 U.S. 30 (1986) .......................................................................... 4


### STATUTES

52 U.S.C. § 10301(b) .......................................................................................................... *passim*

*Amici curiae* Michael Mislove, Lisa J. Fauci, Robert Lipton, and Nicholas Mattei seek clarification that "Black crossover districts"—that is, districts where less than half the adult voting-age population is Black, but Black voters (with limited but predictable crossover support from other voters) can nonetheless elect their preferred representatives—could be part of an appropriate remedy for the Voting Rights Act violation that this Court has found and thus could satisfy this Court's June 6, 2022 Ruling and Order on the Preliminary Injunction.

The Court has ordered the Louisiana Legislature to enact a remedial plan "that is compliant with Section 2 of the Voting Rights Act," Order at 152, and has suggested that "[t]he appropriate remedy in this context is a remedial congressional redistricting plan that includes an additional **majority-Black** congressional district," *id.* at 2 (emphasis added). *Amici* simply seek clarification that the remedial districts providing Louisiana's Black citizens an equal opportunity to elect representatives of their choice to Congress could be drawn as either majority-Black districts or Black crossover districts. As the Fifth Circuit noted this week in this very case, "[i]f a minority group can … elect its preferred candidates, it does not matter whether that ability accrues in a majority-minority or a performing crossover district." *Robinson v. Ardoin*, No. 22-30333, slip op. at 23 (5th Cir. June 12, 2022) (*per curiam*) [hereinafter "*Robinson*, slip op."]. Thus, for remedial purposes in this preliminary-injunction proceeding, the Legislature in the first instance and, if necessary, this Court may approve a remedial plan with two majority-Black districts, or two Black crossover districts, or one of each.

### INTEREST OF THE *AMICI CURIAE*

*Amici curiae* Michael Mislove, Lisa J. Fauci, Robert Lipton, and Nicholas Mattei are professors of mathematics and computer science at Louisiana State University and Tulane University.[1]  This Court previously granted *amici* leave to file a brief in this case, in support of neither party, to show that **computational redistricting**—using high-performance computers to draw maps that attempt to optimize multiple redistricting criteria—could produce a map that fully remedies any Voting Rights Act violation while simultaneously complying with all other legal requirements and traditional redistricting principles.  *Amici*'s April 20 brief presented an example plan called the "*Amicus* Map" that accomplished this objective with two Black crossover districts.  This Court found that the *Amicus* Map "could provide a starting point" for the Legislature as it seeks to remedy the Voting Rights Act violation found by the Court.  Order at 148.  In the prior filing, *amici* also offered to make their team's expertise in computational redistricting available in whatever capacity the Court deems most helpful, whether as *amici* or in any other role—an offer *amici* now renew at this critical juncture in the proceedings.

### ARGUMENT

As the Court has correctly noted, Section 2 of the Voting Rights Act (VRA) is designed to ensure minority voters an "'[equal] opportunity … to elect representatives of their choice,'" Order at 8 (quoting 52 U.S.C. § 10301(b))—**not** an equal opportunity to reside in a district where they constitute an arithmetic majority of the population.  To be sure, in some circumstances a genuine opportunity to elect a minority group's preferred candidates may require an outright majority of the population.  But in other circumstances, it may not.  In

---

[1] No parties oppose the filing of this *amicus* brief, which is not in support of any party.

still other circumstances, a district that is just barely majority-minority may not suffice to elect the minority group's preferred candidate. In short, what matters is whether a district actually affords the minority group electoral opportunity, not the percentage of the district comprised by members of the minority group.

As *Amici* demonstrated in their April 20 brief, in Louisiana it is possible to draw congressional districts where Black voters can elect their preferred candidates while constituting less than half the district's population. The *Amicus* Map, for example, contains a compact New Orleans-based 41.5% Black voting-age population (BVAP) district that was carried by the Black-preferred candidate in 19 of 19 key statewide elections and a compact Baton Rouge-based 42.9% BVAP district that was carried by the same Black-preferred candidates in 14 of those 19 elections. *See* April 20 Br. at 22–24 & Table One, 26–27 & Table Two.

As a matter of law, Black crossover districts often serve as appropriate remedies for VRA violations. In *Bartlett v. Strickland*, 556 U.S. 1 (2009), the Supreme Court held that, although Section 2 "does not mandate creating or preserving crossover districts," it does "allow[] States to choose their own method of complying with the Voting Rights Act, … includ[ing] drawing crossover districts." *Id.* at 23 (plurality opinion). Writing for the plurality, Justice Kennedy explained that a state legislature's discretionary choice to create "crossover districts may serve to diminish the significance and influence of race by encouraging minority and majority voters to work together toward a common goal. The option to draw such districts gives legislatures a choice that can lead to less racial isolation, not more." *Id.* The plurality even proclaimed that States could, and properly should, defend themselves against Section 2 allegations by pointing to effective crossover districts, which

can serve as evidence of "equal political opportunity" under the Act's totality-of-circumstances analysis. *Id.* at 24.

Building on *Bartlett v. Strickland*, the Supreme Court in *Cooper v. Harris*, 137 S. Ct. 1455 (2017), expressly stated that the VRA can "be ***satisfied by*** crossover districts." *Id.* at 1472. In a portion of the opinion by Justice Kagan that all Justices joined, the Court held that the North Carolina legislature's decision to convert "a successful crossover district" into a majority-Black district could not be justified by "a proper interpretation" of Section 2 of the VRA, "rested … instead on a pure error of law," and thus violated the Equal Protection Clause's racial-gerrymandering doctrine. *Id.*

Following these Supreme Court precedents, other federal courts regularly approve crossover districts as remedies for VRA violations. *See, e.g.*, *Baltimore Cnty. Branch of the NAACP v. Baltimore Cnty.*, No. 21-cv-3232, 2022 WL 888419, at *1– 6 (D. Md. Mar. 25, 2022) (approving defendant's proposed remedial plan, with a reconfigured district in which Black voters would not constitute a numerical majority but would still "have an opportunity to elect a representative of their choice"); *see also Fusilier v. Landry*, 963 F.3d 447, 469 n.7 (5th Cir. 2020) (distinguishing district court's remedial map from plaintiffs' "*Gingles* step one" map) (citing *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986)).

In this case, the parties have repeatedly relied on these same precedents. For example, the Robinson Plaintiffs correctly told the Fifth Circuit that, "once a Section 2 violation is established, the minority voting-age population of the remedial district need not exceed 50% if a crossover district can be created that provides minority voters the ability to elect their preferred candidates." Robinson Fifth Circuit Brief Opposing a Stay at 19 (filed June 10, 2022). And Defendants presumably would agree that the Louisiana Legislature should have

the prerogative to choose either majority-Black districts or Black crossover districts when designing a remedial congressional plan in response to this Court's June 6 Ruling and Order. *Cf. Robinson*, slip op. at 17 (noting that the Legislature "will be free" to develop new maps and "to weigh whatever factors it chooses alongside the requirements of *Gingles*").

The Amicus Map provides an example of what a remedial redistricting plan with two crossover districts might look like. It contains a 41.5% BVAP district in greater New Orleans and a 42.9% BVAP district in greater Baton Rouge. As explained in detail in the April 20 brief, the *Amicus* Map also has the following features:

- The *Amicus* Map's six districts—and specifically its two Black crossover districts—are geographically compact (for a visual inspection, see the color figure below) and thus have excellent Reock, Polsby-Popper, and Convex Hull compactness scores. *See* April 20 Br. at 28–30.

- The *Amicus* Map splits only seven parishes. *Id.* at 30.

- The *Amicus* Map splits only two municipalities within a single parish. *Id.* at 30 & n.11.

- The *Amicus* Map's Black crossover districts do not split a single parish or municipality that was not already split in the Enacted Plan. *Id.* at 31.

- The *Amicus* Map does not split any of Louisiana's 3,000-plus election precincts. *Id.* at 28, 34.

- The *Amicus* Map's New Orleans district contains the entire city and all parts of the New Orleans metropolitan area to its east or south. *Id.* at 32, 42.

- The *Amicus* Map's Baton Rouge district contains the entire city and 8½ of the 10 parishes in the Baton Rouge metropolitan area. *Id.* at 32–33, 43.

5

- The *Amicus* Map has a lower population deviation (0.008%) than any congressional plan in Louisiana history.  *Id.* at 34.

- The *Amicus* Map leaves the vast majority of Louisianans—more than 3 million residents—in their current congressional district.  *Id.* at 37.

- The *Amicus* Map does not pair any incumbent Representatives in the same district. *Id.*

- Furthermore, without conceding the validity of any of Defendants' criticisms of Plaintiffs' illustrative plans (as detailed by the Fifth Circuit), *amici* note that the *Amicus* Map also has the following properties:  The *Amicus* Map does not contain any district that "stretches from Louisiana's northern border down to Baton Rouge and Lafayette."  *Robinson*, slip op. at 7.

- The *Amicus* Map's Black crossover districts do not extend to "the delta parishes of northeast Louisiana" or "combine[] rural populations in northern Louisiana with urban populations in Baton Rouge."  *Id.* at 8, 13; *see id.* at 18.

- The *Amicus* Map's Baton Rouge district does not have "small tendrils that jut into parts of central Louisiana."  *Id.* at 8.

- The *Amicus* Map does not divide Black neighborhoods from other parts of Baton Rouge or Lafayette, as both cities are kept perfectly intact.  *Id.* at 11, 13.

- Neither of the *Amicus* Map's Black crossover districts "spans long distances."  *Id.* at 13.

As depicted below, the *Amicus* Map's New Orleans-based District 2 is green, and its Baton Rouge-based District 6 (the functional equivalent of District 5 in Plaintiffs' illustrative plans) is blue:



©2021 CALIPER

*Amici* previously submitted this map, developed through computational redistricting, which the Court already recognized could be a useful "starting point" for the Legislature in the remedial process. But *amici* wish to emphasize that they and their expert team can apply these same computational redistricting techniques to generate additional maps that could address any other issues identified by the Court or the parties. *Amici* make this offer not in support of any party, but as a service to the Court.

<h2 style="text-align:center">CONCLUSION</h2>

*Amici* believe that the Louisiana Legislature, in the first instance, and this Court, if necessary, can best deliver a fair remedial redistricting plan to the people of Louisiana if the Court expressly recognizes that Black crossover districts, no less than majority-Black districts, may be appropriate in these circumstances. *Amici* therefore ask the Court to clarify

that its June 6 Ruling and Order does not confine proper remedies to districts that must be "majority-Black."  Order at 2.

    And to the extent the Court agrees that computational redistricting, including the tools that allowed *amici* and their expert team to develop the *Amicus* Map presented in the April 20 brief, would be helpful to the Court, going forward, *amici* and their team stand ready to assist in any capacity.

Dated: June 15, 2022

**JENNER & BLOCK LLP**

Sam Hirsch*
Jessica Ring Amunson*
Alex S. Trepp*
JENNER & BLOCK LLP
1099 New York Avenue, NW,
Suite 900
Washington, D.C. 20001
(202) 639-6000
shirsch@jenner.com
jamunson@jenner.com
atrepp@jenner.com

Keri L. Holleb Hotaling*
Andrew J. Plague*
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 923-2975
khotaling@jenner.com
aplague@jenner.com

*Pro hac vice*

Respectfully submitted,

**BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.**

*/s/ Viviana Aldous*
Judy Y. Barrasso (La. Bar No. 2814)
Viviana Aldous (La. Bar No. 38653)
BARRASSO USDIN KUPPERMAN
  FREEMAN &SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA 70112
Tel: (504) 589-9700
Fax: (504) 589-9701
jbarrasso@barrassousdin.com
valdous@barrassousdin.com

*Counsel for Amici*