# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON, et al., *Plaintiffs,* v. KYLE ARDOIN, in his official capacity as Secretary of State for Louisiana, *Defendant.* | Civil Action No. 3:22-cv-00211-SDD-SDJ<br><br>Chief Judge Shelly D. Dick<br><br>Magistrate Judge Scott D. Johnson |
| EDWARD GALMON, SR., et al., *Plaintiffs,* v. R. KYLE ARDOIN, in his official capacity as Secretary of State for Louisiana, *Defendant.* | Consolidated with<br>Civil Action No. 3:22-cv-00214-SDD-SDJ |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION TO CANCEL HEARING ON REMEDY AND TO ENTER A SCHEDULING ORDER FOR TRIAL**

Attorney General Jeff Landry, on behalf of the State of Louisiana, Secretary of State Kyle Ardoin, Clay Schexnayder, Speaker of the Louisiana House of Representatives, and Patrick Page Cortez, President of the Louisiana Senate, each in their respective official capacities (collectively "Defendants") present this Memorandum in Support of their Motion to Cancel Hearing on Remedy and to Enter a Scheduling Order for a Trial on the Merits. Due to the fast-approaching hearing, a response by Plaintiffs is respectfully requested by Wednesday, August 30th, and a decision is

respectfully requested by Friday, September 8th. A companion motion for expedited review will be filed shortly after the instant motion.

## RELEVANT BACKGROUND

On July 17, 2023, the Court ordered "that the preliminary injunction hearing stayed by the United States Supreme Court, and which stay has been lifted, be and is hereby reset to October 3-5, 2023, at 9:00 a.m." (ECF No. 250). The Court further directed that "[t]he parties shall meet and confer and jointly submit a proposed pre-hearing scheduling order on or before Friday July 21, 2023." *Id*. The parties met and conferred in good faith and were unable to reach complete agreement with respect to a schedule to govern the remedial proceeding. Therefore, the Plaintiffs and the Defendants each filed their own proposed scheduling orders. *See* (ECF Nos. 255 & 256). Meanwhile, on August 22, 2023, the United States Court of Appeals for the Fifth Circuit set Defendants' appeal of the underlying preliminary injunction order for oral argument on October 6, 2023, *Robinson v. Ardoin*, No. 22-30333 (5th Cir.), the day after the conclusion of the scheduled remedial proceeding.

As of the time of this filing, the Court has yet to issue a scheduling order in this matter despite the proposed schedules being submitted over 35 days ago. Many of the proposed deadlines in Plaintiffs' and Defendants' schedules have now passed.[1] Plaintiffs, for their part, have not sought to press their proposed schedule on the remedy phase and have not yet produced any expert reports or disclosures, or any proposed remedial plans, even though their own proffered deadlines have passed. (ECF No. 255 at 5). Given the significant delay on an already expected schedule,

---

[1] Plaintiffs' proposed schedule had August 11th as the date the parties would submit "any proposed plans" and as the deadline to exchange witness lists. (ECF No. 255 at 5). Defendants, jointly, proposed August 4th as the deadline for Plaintiffs' supplemental expert reports and disclosures and August 18th as the date to exchange fact and witness lists. (ECF No. 255-2 at 1).

there is simply no longer sufficient time to conduct a remedial hearing on a timeframe sufficient to sure the quality of presentations of counsel and the Court's decision.

The 2022 November Elections have come and gone, which means the premise for the Plaintiffs' twin preliminary injunction motions no longer exists. More to the point, any urgency that there be a remedy *now*, before a trial on the merits, is also gone. The 2024 General Election, however, is on the horizon, which, at roughly fourteen months away, means that the Court has enough time to try this case to a final judgment—if it acts *now* to set a date for trial. This window will close very soon if the Court declines to do so. And declining to do so would transgress the Supreme Court's mandate that this case is to proceed "for review in the ordinary course and in advance of the 2024 congressional elections in Louisiana." *Ardoin v. Robinson*, 143 S. Ct. 2654 (2023). For the reasons that follow, the Court should cancel the upcoming October remedial proceeding and schedule a trial on the merits so that the litigants, and more importantly the people of Louisiana, can have a final resolution of this continuing litigation.

## ARGUMENT

While the Defendants appreciate the Court's efforts to move this case to a speedy resolution, the Defendants' rights to a fair and full hearing no longer permit the proceedings to move along the present path. The prejudice that the impending October 3rd remedial proceeding has to the Defendants' rights cannot be gainsaid. For more than forty years, the Supreme Court has recognized that "where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981). This is true by virtue of the preliminary injunction mechanism (which necessitates expedited, yet *temporary*, resolution, given the specter of a rapidly impending

3

irreparable injury), and it is aggravated by the nature of Voting Rights Act litigation (which cannot be resolved without tremendously detailed, and time-consuming, preparation and presentation of expert testimony). Defendants have *never* been given the opportunity to make their case in defense of the enacted maps fully, and denying them the opportunity to do so now, given the ability for them to do so before the 2024 November Elections, would imperil the Defendants' rights and call into question the fundamental fairness of this litigation.

The Defendants are aware that much needs to be accomplished between now and the 2024 November Elections to avoid another round of, among other things, *Purcell* fights and expedited motions practice before this Court. Circumventing a repeat of the chaos leading up to the 2022 November Elections has motivated the Defendants to submit this request on an emergency basis. The gravity of this litigation, the implications of the challenged congressional maps for the 2024 election and Defendants' rights, as well as simple procedural fairness and federalism concerns, should compel the Court to swiftly decide this motion in Defendants' favor.

**I.    There is now insufficient time to conduct a remedial proceeding by October 3rd, and allowing it to proceed would result in a waste of judicial resources.**

The Court's remedial proceeding cannot practically occur as scheduled because none of the lead-up events can occur as *any* of the parties envisioned. With fewer than 6 weeks before a three-day hearing, there still is not a scheduling order, and no order embracing all necessary events can be practically achieved.

The parties each submitted their proposed schedules on July 21st, over a month ago, and no scheduling order has been issued by the Court. In the meantime, many of the parties proposed deadlines have already come and gone without a scheduling order. Moreover, Plaintiffs have not

4

adhered to the case deadlines they themselves proposed.[2] Thus, nothing has happened in this remedial matter since the Supreme Court's order vacated its stay. Defendants have yet to see any disclosures or revised plan(s) from Plaintiffs. Defendants can hardly to begin to mount a cogent defense when they are, at present, completely in the dark as to what plans Plaintiffs will even be proffering and what expert opinions they intend to support them. There is now not enough time for the necessary disclosures and expert reports in advance of the hearing, and if the Court were to conduct it anyway, it would sacrifice the quality of presentations and, by consequence, the quality of any future ruling..

Conversely, the 2024 General Election is roughly fourteen months away. This is *just* enough time to hold a trial on the merits and to allow the appellate process to run its course in advance of those elections. In the expedited, chaotic world of redistricting litigation, the amount of time that the Court has to allow *both* sides to fully and fairly litigate their positions is a luxury that does not often arise, and it should not be squandered.

The Plaintiffs themselves recognize that more robust litigation, certainly beyond the proceedings that occurred during the 2022 preliminary injunction proceedings, is needed. That is why they asked the Court for leeway to engage in "a more robust remedial process by allowing [them] to incorporate new election data[3] and accommodate concerns raised by Defendants in opposition to the initial remedial map Plaintiffs proposed in 2022." (ECF No. 256, at 2-3.) In other words, the Plaintiffs recognize that more work needs to be done to account for the truncated preliminary-injunction proceedings. For its part, the Supreme Court has long recognized that

---

[2] One would assume that, given their desire for a swift remedy, Plaintiffs would be acting of their own volition absent an order from this Court to ensure, for their part, that any remedial proceeding occurs along their preferred timeline. They are not.

[3] The existence of new election data that Plaintiffs themselves wish to rely upon simply underscores the incomplete factual record exists in this case without a trial on the merits.

redistricting litigation is an especially fact-intensive endeavor. *See Allen v. Milligan*, 143 S. Ct. 1487, 1503 (2023) All of these issues point to the inescapable conclusion that a remedial hearing should be cancelled and a trial set. Yet another rushed proceeding is simply not in the interest of the parties or of substantial justice.

The Defendants would be remiss if they also did not point out that the Plaintiffs' proposed scheduling order, if entered near the time it was filed, would exacerbate tremendously all of the issues the Defendants have identified in this motion. The Plaintiffs have insisted on (1) barreling past a decision on the merits of their claims to the remedial phase, (2) submitting brand-new remedial maps and expert reports, but (3) not providing those materials in time for the Defendants to properly assess and respond to them. These concerns are now further exacerbated by the fact that the parties generally, and the Defendants specifically, have lost *a month* of time to prepare for the remedial hearing that is scheduled less than 6 weeks from now because no scheduling order has been entered and Plaintiffs have sat on their hands instead of voluntarily complying with their proposed deadlines. Any scenario short of cancelling the hearing and setting this matter for trial will result in the abridgement of Defendants' rights and a violation of basic principles of federalism. In no uncertain terms, the Court should prevent this outcome.

The United States Court of Appeals for the Fifth Circuit has set Defendants' appeal of the underlying preliminary injunction order for oral argument on October 6, 2023, *Robinson v. Ardoin*, No. 22-30333 (5th Cir.). That is the day after the conclusion of the scheduled remedial proceeding, which is currently set for October 3-5, 2023. The Fifth Circuit's scheduling of oral argument on October 6 is yet another reason for this Court to cancel the remedial proceedings. The timing of oral argument—just nine days after the conclusion of supplemental briefing the Fifth Circuit requested—suggests the Fifth Circuit is prepared to rule quickly on the merits of the preliminary

injunction. That forthcoming ruling could have any number of different impacts on this matter, including a reversal which would negate the need for any remedial phase on the preliminary injunction. This Court should instead focus resources on the ultimate merits questions in this case and set this matter for a trial sufficiently in advance of next year's elections. By proceeding forward with a remedy phase on a preliminary injunction order that is currently on appeal, and with a decision from the Fifth Circuit seemingly forthcoming, this Court risks a complete waste of judicial resources at both levels.

**II.     Forgoing resolution of the merits via a final trial is fundamentally unfair to Defendants and is disrespectful to basic principles of federalism.**

Declining to resolve the merits of the Plaintiffs' Section 2 claims by way of a full trial would inflict further constitutional injury on the Defendants. Defendants have not yet had the opportunity to fully and fairly litigate the merits of its enacted maps, given the remarkably expedited preliminary injunction proceedings that occurred back in late Spring 2022. This alone raises basic fairness concerns if the Court moves past the merits and onto considerations of a remedy.

To be certain, it is error to "improperly equate[] 'likelihood of success' with 'success,'" and it is an even more erroneous error to "ignore[] the significant procedural differences between preliminary and permanent injunctions." *Camenisch*, 451 U.S. at 394. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties *until a trial on the merits can be held*." *Id.* at 395 (emphasis added). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id*. Indeed, "[a] party . . . is not required to prove his case in full at a

7

preliminary-injunction hearing, . . . and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.*

In other words, the merits of this case have not yet been fully and fairly resolved. By treating them as if they had been (i.e., by skipping past a final trial on the merits and moving on to considerations of a remedy), the Court is at risk of prejudicing a State with nearly 3.5 million voters[4] preparing to cast ballots during a 2024 General Election cycle that is likely to see record-level voter turnout. And this is no idle concern. For more than a century, the Supreme Court has held that every defendant must be afforded "an opportunity to present" its defense *and then* to have a "question" *actually* "decided" against it. *Fayerweather v. Ritch*, 195 U.S. 276, 299 (1904).

Neither has occurred here. The Defendants were prevented from fulsomely defending their case by virtue of the expedited preliminary-injunction proceedings, and the resulting preliminary-injunction opinion from the Court did not fully resolve—and as a matter of law, could not have fully resolved—the merits of the Plaintiffs Section 2 claims. Given the limited purpose of a preliminary injunction ("merely to preserve the relative position of the parties until a trial on the merits can be held") they are often considered "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Camenisch*, 451 U.S. at 395. "[A]t the preliminary injunction stage, the court is called upon to assess the *probability* of the plaintiff's ultimate success on the merits" and "[t]he foundation for that assessment will be more or less secure" depending upon multiple factors, including the pace at which the preliminary proceedings were decided. *Sole v. Wyner*, 551 U.S. 74, 84-85 (2007) (emphasis added). Simply put, deciding that a claim is "likely to succeed" is not the same as "actually litigat[ing] and resolv[ing]" a claim.

---

[4] Louisiana has a voting age population estimate of 3,564,038. Federal Register, Estimates of the Voting Age Population for 2020, https://www.federalregister.gov/documents/2021/05/06/2021-09422/estimates-of-the-voting-age-population-for-2020 (last accessed August 24, 2023).

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). And providing a remedy for a claim that has not yet been "actually litigated and resolved" amounts to a violation of the basic rights of litigants. *Id.*

There is, moreover, the changing legal landscape in the wake of *Allen v. Milligan* and *Students for Fair Admission v. University of North Carolina*, both of which the Supreme Court issued while this case was held in abeyance. In the former, the Supreme Court addressed Section 2 of the Voting Rights Act for the first time in fourteen years, and it clarified how the *Gingles* preconditions apply. Relevant to this case, the Supreme Court elucidated "how traditional districting criteria limit[] any tendency of the VRA to compel proportionality," *id*. at 1509, which means that the district court's reliance (in part) on a proportionality as a legitimate goal is no longer tenable and must be revisited. *See Robinson v. Ardoin*, 605 F. Supp. 3d 759, 851 (M.D. La. 2022). *Milligan* also emphasized the centrality of communities of interest in the Section 2 analysis, which has featured prominently at every stage of this case. *See* 143 S. Ct. at 1505. And Justice Kavanaugh's concurring opinion in *Milligan* stressed that it is the compactness of the minority community—not solely the compactness of the proposed districts—that must be evaluated. *Id.* at 1518 (Kavanaugh, J., concurring).

The latter case, in turn, changed fundamentally the way in which States may consider race when taking state action. The *Students for Fair Admissions* Court underscored that as race-based legislative acts reach their intended ends, they become obsolete and less likely to survive Equal Protection scrutiny. This principle followed the Court's decision in *Shelby County v. Holder*, which struck as unconstitutional a different Voting Rights Act provision because "[o]ur country has changed, and while any racial discrimination in voting is too much, Congress must ensure that the legislation it passes to remedy that problem speaks to current conditions." 570 U.S. 529, 557 (2013).

Simply put, the merits of this case (particularly given the changing legal landscape) remain live. So long as they do, there can be no remedy imposed.

### III. The Court has no jurisdiction to proceed with a remedial hearing stemming from a preliminary injunction that is now moot.

Mootness typically arises if an Article III-required injury-in-fact ceases. But it also arises if time has rendered a court unable to *remedy* a purported injury. Injunctive relief, moreover, is necessarily and solely prospective. What matters is that the Plaintiffs are no longer "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). It follows inexorably that the Court has no power to hold a hearing about a remedial injunction if the event purporting requiring the injunction has come and gone. The Plaintiffs filed motions seeking injunctive relief based on their argument that conducting the *2022* November Elections under the auspices of Louisiana's enacted congressional map would inflict an irreparable injury upon them unless the Court granted their requested relief *before* the 2022 November Elections. The 2022 congressional elections, however, were held nine months ago. Because the Court can no longer provide a remedy related to the 2022 November Elections, it has no power to "reset" a previously stayed *remedial* hearing. (ECF No. 250.) Instead, the only option available to the Court is to set a trial date to fully and fairly resolve the merits of their claims.

## CONCLUSION

There is no legally defensible reason to allow the now-moot preliminary-injunction order to control final resolution of the Plaintiffs' claims on the merits. The Court no longer has jurisdiction to issue the relief sought by the Plaintiffs in their preliminary-injunction motions. The truncated timeline under which those motions were adjudicated prejudiced the Defendants' rights, and it would prejudice them further if the Court were to transmogrify its preliminary-injunction "likelihood of success on the merits" conclusion into a final resolution of the Plaintiffs' Section 2

10

claims. Finally, the over month long delay (and counting) in setting a schedule and inaction by the Plaintiffs has further prejudiced Defendants such that it is simply not possible to have a remedial hearing.

    For all these reasons, the Court should vacate its preliminary-injunction hearing and set a date for a final trial in this matter.

Respectfully submitted this the 25th day of August, 2023.

/s/ *John C. Walsh*
John C. Walsh, LA Bar Roll No. 24903
**SHOWS, CALL & WALSH, L.L.P**
Batton Rouge, LA 70821
Ph: (225) 383-1461
Fax: (225) 346-5561
john@scwllp.com

/s/ *Phillip J. Strach*
Phillip J. Strach*
phillip.strach@nelsonmullins.com
  *Lead Counsel for Secretary Ardoin*
Thomas A. Farr*
tom.farr@nelsonmullins.com
John E. Branch, III*
john.branch@nelsonmullins.com
Alyssa M. Riggins*
alyssa.riggins@nelsonmullins.com
Cassie A. Holt*
cassie.holt@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Ph: (919) 329-3800

* admitted *pro hac vice*

*Counsel for Defendant R. Kyle Ardoin, in his official capacity as Secretary of State of Louisiana*

/s/ *Michael W. Mengis*
Michael W. Mengis, LA Bar No. 17994
**BAKERHOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600
Fax: (713) 751-1717
Email: mmengis@bakerlaw.com

E. Mark Braden*
Katherine L. McKnight*
Richard B. Raile*
**BAKERHOSTETLER LLP**
1050 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036
(202) 861-1500
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

/s/ *Erika Dackin Prouty*
Erika Dackin Prouty*
**BAKERHOSTETLER LLP**
200 Civic Center Dr., Ste. 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com

*Counsel for Legislative Intervenors, Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page Cortez, in his Official Capacity as President of the Louisiana Senate*

Patrick T. Lewis*
**BAKERHOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

* *Admitted pro hac vice*

|  |  |
|---|---|
|  | Jeff Landry |
|  | Louisiana Attorney General |
| Jason B. Torchinsky (DC 976033)* | */s/Angelique Duhon Freel* |
| Phillip M. Gordon (DC 1531277)* | Elizabeth B. Murrill (LSBA No. 20685) |
| Holtzman Vogel Baran | Shae McPhee (LSBA No. 38565) |
| Torchinsky & Josefiak, PLLC | Morgan Brungard (CO Bar No. 50265)* |
| 15405 John Marshall Highway | Angelique Duhon Freel (LSBA No. 28561) |
| Haymarket, VA 20169 | Carey Tom Jones (LSBA No. 07474) |
| (540) 341-8808 phone | Jeffrey M. Wale (LSBA No. 36070) |
| (540) 341-8809 fax | Office of the Attorney General |
| jtorchinsky@holtzmanvogel.com | Louisiana Department of Justice |
| pgordon@holtzmanvogel.com | 1885 N. Third St. |
| *admitted pro hac vice | Baton Rouge, LA 70804 |
|  | (225) 326-6000 phone |
|  | (225) 326-6098 fax |
|  | murrille@ag.louisiana.gov |
|  | freela@ag.louisiana.gov |
|  | walej@ag.louisiana.gov |
|  | jonescar@ag.louisiana.gov |
|  | mcphees@ag.louisiana.gov |
|  | brungardm@ag.louisiana.gov |

*Counsel for Defendant, State of Louisiana*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this 25th day of August 2023, the foregoing has been filed with the Clerk via the CM/ECF system that has sent a Notice of Electronic filing to all counsel of record.

                                       */s/ Jeffrey M. Wale*
                                       Jeffrey M. Wale