# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

September 28, 2023

Mr. Michael L. McConnell
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Street
Room 139
Baton Rouge, LA 70801

    No. 23-30642   In re: Jeff Landry
                            USDC No. 3:22-CV-211
                            USDC No. 3:22-CV-214

Dear Mr. McConnell,

Enclosed is a certified copy of the opinion issued as the mandate.

                                    Sincerely,

                                    LYLE W. CAYCE, Clerk

                                    *Christina Rachal*
                                By: _____
                                Christina C. Rachal, Deputy Clerk
                                504-310-7651

Enclosure(s)

cc:
      Mr. John Nelson Adcock
      Ms. Renee Chabert Crasto
      Mrs. Andree Matherne Cullens
      Mr. Joseph Elton Cullens Jr.
      Mr. Jared Evans
      Mrs. Angelique Duhon Freel
      Mr. Phillip Michael Gordon
      Mr. Carey Thompson Jones
      Ms. Abha Khanna
      Ms. Elizabeth Baker Murrill
      Mr. Stuart Naifeh
      Ms. Isabel Sara Rohani
      Mr. Adam Savitt
      Mr. Jacob D. Shelly

```
Mr. Phillip Strach
Ms. Tiffany Alora Thomas
Mr. Jason Brett Torchinsky
Mr. Jeffrey M. Wale
Mr. John Carroll Walsh
Mr. Edward Mark Wenger
```

Case: 23-30642    Document: 00516912407    Page: 1    Date Filed: 09/28/2023
Case 3:22-cv-00211-SDD-SDJ    Document 287    09/28/23    Page 3 of 20

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 28, 2023
Lyle W. Cayce
Clerk

No. 23-30642

In re Jeff Landry, *In his official capacity as the Louisiana Attorney General*; Kyle R. Ardoin, *in his official capacity as Louisiana Secretary of State*,

*Petitioners.*

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC Nos. 3:22-CV-211, 3:22-CV-214

_____

Before Jones, Higginson, and Ho, *Circuit Judges*.
By Edith H. Jones, *Circuit Judge*:

Louisiana's Attorney General has filed this request for mandamus relief seeking to vacate the district court's hearing scheduled to begin on October 3 and require the district court to promptly convene trial on the merits in this congressional redistricting case. We GRANT IN PART, ORDERING the District Court to VACATE the October Hearing.

The reasons for this grant of relief are as follows:

Redistricting based on section 2 of the Voting Rights Act, 52 U.S.C. § 10301, is complex, historically evolving, and sometimes undertaken with looming electoral deadlines. But it is not a game of ambush.

Since 1966, the Supreme Court has repeatedly reminded lower federal courts that if legislative districts are found to be unconstitutional, the elected

body must usually be afforded an adequate opportunity to enact revised districts before the federal court steps in to assume that authority. In *Reynolds v. Sims*, the Court stated that "legislative reapportionment is primarily a matter for legislative consideration and determination."[1] In subsequent cases,

> [t]he Court has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the courts should make every effort not to preempt. When a federal court declares an existing apportionment scheme unconstitutional, it is therefore, appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan.

*Wise v. Lipscomb,* 437 U.S. 535, 540, 98 S. Ct. 2493, 2497 (1978) (citations omitted). This is the law today as it was forty-five years ago.[2]

---

[1] 377 U.S. 533, 586, 84 S. Ct. 1362, 1394 (1964).

[2] *See North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018) ("[S]tate legislatures have primary jurisdiction over legislative reapportionment[.]") (quotation marks and citation omitted); *McDaniel v. Sanchez*, 452 U.S. 130, 150 n.30, 101 S. Ct. 2224, 2236 (1981) ("Moreover, even after a federal court has found a districting plan unconstitutional, redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to preempt.") (quotation marks and citation omitted); *Wise v. Lipscomb*, 437 U.S. at 540; *Connor v. Finch*, 431 U.S. 407, 414-15, 97 S. Ct. 1828, 1833-34 (1977) ("[A] state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally-mandated framework. . ... The federal courts by contrast possess no distinctive mandate to compromise sometimes conflicting state apportionment policies in the people's name."); *Chapman v. Meier*, 420 U.S. 1, 27, 95 S. Ct. 751, 766 (1975) ("We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through hits legislature or other body, rather than of a federal court."); *Gaffney v. Cummings*, 412 U.S. 735, 749, 93 S. Ct. 2321, 2329 (1973) ("Nor is the goal of fair and effective representation furthered by making the standards of reapportionment so difficult to satisfy that the reapportionment task is recurringly removed from legislative hands and

No. 23-30642

The district court did not follow the law of the Supreme Court or this court. Its action in rushing redistricting via a court-ordered map is a clear abuse of discretion for which there is no alternative means of appeal.[3] Issuance of the writ is justified "under the circumstances" in light of multiple precedents contradicting the district court's procedure here.

This case was remanded after the Supreme Court stayed lower court proceedings to decide *Alabama v Milligan*, 143 S. Ct. 1487 (2023). *Ardoin v. Robinson*, 142 S. Ct. 2892 (2022) (cert. dismissed as improvidently granted and stay vacated by 143 S. Ct. 2654 (2023)). The district court here had held, in June 2022, after an expedited preliminary injunction proceeding, that Louisiana's congressional districts violate section 2, requiring an additional majority black congressional district. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 766 (M.D. La. 2022). The district court then ordered the state legislature to reconfigure such an additional district within five legislative days. *Robinson v. Ardoin*, 37 F.4th 208, 232 (5th Cir. 2022). Landry pursued an immediate appeal and a motion to stay in this court. This court denied a stay, *id.*, but

---

performed by federal courts which themselves must make the political decisions necessary to formulate a plan or accept those made by reapportionment plaintiffs who may have wholly different goals from those embodied in the official plan. From the very outset, we recognized that the apportionment task, dealing as it must with fundamental choices about the nature of representation. . . is primarily a political and legislative process.") (citation omitted); *Burns v. Richardson*, 384 U.S. 73, 85, 86 S. Ct. 1286,1293 (1966) ("[J]udicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having an adequate opportunity to do so.") (quotation marks and citation omitted).

[3] The dissent contends that the ordinary appellate process suffices. But the dissent does not challenge the notion that if the remedial hearing goes forward, the merits of the preliminary injunction will be on a separate appellate track from the remedy order. Nor does the dissent explain how the panel that will hear the merits of the preliminary injunction would have jurisdiction to order relief to the state on the scheduling of the fifteen-month-later separately litigated remedy hearing, as no Rule 28(j) letter can manufacture appellate jurisdiction under 28 U.S.C. § 1291 over the non-final trial setting order.

expedited the appeal—until the Supreme Court entered its stay. *Ardoin v. Robinson*, 142 S. Ct. at 2892.

A year later, the Supreme Court's stay was lifted, *Ardoin v. Robinson*, 143 S. Ct. at 2654, and the parties completed briefing the merits of the preliminary injunction, which another panel of this court will hear in oral argument on October 6.

Undeterred by the pendency of appeal on the merits, the district court opted to go ahead on October 3-5 with an expedited hearing to determine a court-ordered redistricting map. But the court provided merely five weeks for the state's preparation. No mention was made about the state legislature's entitlement to attempt to conform the districts to the court's preliminary injunction determinations.

This post-merits activity prompted the state to seek a writ of mandamus from this court pursuant to 28 U.S.C. § 1651. In this court, "mandamus will be granted upon a determination that there has been a clear abuse of discretion." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc). As "one of the most potent weapons in the judicial arsenal, three conditions must be satisfied" before mandamus may be issued. *In re Gee*, 941 F.3d 153, 157 (5th Cir. 2019) (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380, 124 S. Ct. 2576, 2587 (2004)). The Supreme Court has elaborated that:

> First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Cheney*, 542 U.S. at 380-81 (quotation marks and citations omitted).

After reviewing the mandamus factors, we conclude that the state is entitled to partial mandamus relief.

1. *The state has no other means of relief and is not seeking to use mandamus as a substitute for appeal.*

The only issue before this panel is the scheduling of the remedial hearing and potential scheduling for trial on the merits. The events leading to this writ application post-date the merits-only preliminary injunction by fifteen months. In ruling on this application, we do not discuss the merits. Likewise, the decision on the merits of a Section 2 violation of the Voting Rights Act has no direct relationship with nor factual nor legal overlap with the scheduling issues this panel confronts.

That this application presents an unusual posture for mandamus is not a contrivance of Landry or this panel but the result of the district court's unique rush to remedy when circumstances did not require it. Moreover, because this application is wholly different from the merits of the appeal, the state has no adequate remedy by way of appeal.

The plaintiffs respond that the state may adequately appeal following the decision formulating a court-ordered redistricting plan. That outcome would embarrass the federal judiciary and thwart rational procedures. Denying mandamus effectively means a two-track set of appeals on the merits

and the court-ordered plan. No matter the outcome—or timing—of this court's merits panel determination, one side will seek relief in the Supreme Court. Similarly, the anticipated court-ordered redistricting plan will be appealed to this court and likely to the Supreme Court. And all of this will persist well into the 2024 election year. The likelihood of conflicting courts' scheduling and determinations will create uncertainty for the state and, more important, the candidates and electorate who may be placed into new congressional districts. In sum, while there is on paper a right to appeal whatever decision the district court renders on drawing its own redistricting maps, the paper right is a precursor to legal chaos.

2. *Clear and Indisputable Right*

The state contends that it has a clear right to relief because the court's remedial redistricting plan should not be ordered before it has a fulsome opportunity to defend itself on the merits of plaintiffs' section 2 claim.[4] That the state lacked a full opportunity to mount a defense on the merits is likely accurate. Plaintiffs' testimony showed that they had been planning a lawsuit for months before the legislature effectuated its 2022 redistricting. But under the district court's expedited scheduling, the state had less than four weeks to prepare for what became a five-day evidentiary hearing.[5]

This court's order denying a stay pending appeal repeatedly noted that the panel's conclusions were only tentative and the plaintiffs' case had clear weaknesses. The court referenced the importance of final adjudication.

---

[4] The state also argues that the plaintiffs' case became moot after the 2022 election cycle ended. This is incorrect, because the district court enjoined all future elections pursuant to the allegedly violative state plan, and this reflected the scope of the plaintiffs' demand for relief.

[5] The state says it had only two weeks before the preliminary injunction hearing to prepare expert witness reports, which are critical in legislative redistricting cases.

*Robinson*, 37 F.4th at 222 ("[T]he plaintiffs have much to prove when the merits are ultimately decided.").[6] Of course, an order denying stay pending appeal cannot be a "merits" ruling and is subject to reconsideration by this court, either in the upcoming oral argument or on review of a final judgment. *Id.* at 232 ("Our ruling here concerns only the motion for stay pending appeal; our determinations are for that purpose only and do not bind the merits panel[.]") (quotation marks and citations omitted). But the point is that this court recognized the hasty and tentative nature of the district court's decision and, at least implicitly, the need for further development of factual and legal aspects. *Id.* ("[N]either the plaintiffs' arguments nor the district court's analysis is entirely watertight[.]").

The progress of the Alabama redistricting litigation in some ways parallels this case but is instructive as to full and fair procedures *not* accorded here. First, while that case progressed to a seven-day preliminary injunction hearing within about two months after the legislature finalized congressional districts, Alabama has never contended that its defense was unduly truncated. *Allen v. Milligan*, 143 S. Ct. 1487, 1502 (2023) (noting that the three-judge district court's preliminary injunction hearing lasted seven days, during which it received live testimony from 17 witnesses, reviewed more than 1000 pages of briefing and upwards of 350 exhibits while considering arguments from 43 different lawyers); *Singleton v. Allen*, No. 2:21-CV-1291-AMM, 2023 WL 5691156, at *10 (N.D. Ala. Sept. 5, 2023) (noting that at the Alabama remedial hearing, the parties agreed that the Alabama three-judge

---

[6] This court also said the state put all its eggs in one basket, litigating essentially that only with race-predominant considerations could the plaintiffs justify a second majority-black congressional district. *Robinson*, 37 F.4th at 217. No litigant, however, is bound at trial on the merits to a defense strategy that failed to succeed on a preliminary injunction.

7

district court would consider all evidence admitted during the preliminary injunction hearing unless counsel raised a specific objection).

Second, and also pertinent, in the Alabama case on remand from the Supreme Court, the three-judge panel afforded the state legislature six weeks to propose a new districting plan. *See contra Singleton*, 2023 WL 5691156 at \*6-\*7 (noting that the Alabama three-judge district court delayed remedial proceedings for six weeks after remand from the Supreme Court to allow the legislature to pass a new congressional redistricting plan). Last year, with the 2022 elections fast approaching, the district court prescribed an impossibly short timetable for state legislative action amounting to only five legislative days. Whatever the propriety of that timetable (about which we express no opinion) at that time, there is no warrant for the court's rushed remedial hearing by the first week of October 2023, months in advance of deadlines for districting, candidate filing, and all the minutiae of the 2024 elections. Even more significant, the Alabama court on remand from the Supreme Court afforded the state an adequate opportunity to accomplish a redistricting compliant with final judgment. Here, of course, there is no final judgment on the merits. But the district court acted ultra vires in rushing to prescribe its own maps.

As demonstrated above, a court must afford the legislative body that becomes liable for a Section 2 violation the first opportunity to accomplish the difficult and politically fraught task of redistricting. That is *required* for redistricting litigation to proceed according to its "ordinary course and in advance of the 2024 congressional elections in Louisiana"—as the Supreme Court's remand in this case mandated. *Ardoin v. Robinson*, 143 S. Ct. at 2654. Not only has the Supreme Court serially reinforced this duty of lower courts, but this court has carefully adhered to these rulings. Nearly forty years ago, this court criticized a district court's rushed, court-ordered redistricting plan less than a month and a half following final judgment. *Jones v. City of Lubbock*,

727 F.2d 364, 387 (5th Cir. 1984). We admonished that the court's procedures

> *if challenged, would have required that we vacate this order.* For the sake of future parties, we reiterate briefly some of the principles that the district court should bear in mind. Apportionment is principally a legislative responsibility. . . . A district court should, accordingly, afford to the government body a reasonable opportunity to produce a constitutionally permissible plan. . . .

*Id*. (internal citations omitted) (emphasis added).[7] The district court here had no warrant to undertake redistricting (A) through a court-ordered plan (B) with no elections impending, (C) on a severely limited pretrial schedule, and (D) without having afforded the Louisiana legislature the first opportunity to comply with its ruling.

"A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts. On mandamus review, we review for these

---

[7] *See also United States v. Brown*, 561 F.3d 420. 435 (5th Cir. 2009) ("[A]t least in redistricting cases, district courts must offer governing bodies the first pass at devising a remedy[.]"); *Rodriguez v. Bexar County*, 385 F.3d 853, 869-70 (5th Cir. 2004) ("[D]istrict courts should use a great deal of caution in invalidating the results of a duly held election and ordering the implementation of its own alternative districting plan. The primary responsibility for correcting Voting Rights Act deficiencies rests with the relevant legislative body. . . . Both the Supreme Court and this court have admonished district courts to afford local governments a reasonable opportunity to propose a constitutionally permissible plan and not haphazardly to order injunctive relief.") (citations and footnote omitted); *Chisom v. Roemer*, 853 F.2d 1186, 1192 (5th Cir. 1988) ("[R]esponsible state or local authorities must be first given an opportunity to correct any constitutional or statutory defect before the court attempts to draft a remedial plan. In the case at bar, that means that should the court rule on the merits that a statutory or constitutional violation exists the Louisiana Legislature should be allowed a reasonable opportunity to address the problem. We have no reason whatsoever to doubt that the governor and legislature will respond promptly.").

types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result." *In re Volkswagen of Am.,* 545 F.3d at 310 (citing *McClure v. Ashcroft,* 335 F.3d 404, 408 (5th Cir.2003)). Here, we find that the district court's errors produced a patently erroneous result.

### 3. *Appropriate under the circumstances*

If this were ordinary litigation, this court would be most unlikely to intervene in a remedial proceeding for a preliminary injunction. Redistricting litigation, however, is not ordinary litigation. Of course, the law as set forth by the Supreme Court's interpretation of the Constitution and section 2 must be vindicated. But the remedy necessarily involves the exercise of discretion by federal courts whose judgments will interfere with a primary constitutional structural device of self-government: making decennial districting choices about representation in legislative bodies. Ever since its initial forays into legislative districting, the Supreme Court has explained the proper procedure to implement federal court judgments while accommodating to the greatest extent the legislatures' ability to confect their own remedial plans. The district court here forsook its duty and placed the state at an intolerable disadvantage legally and tactically.

Accordingly, we VACATE the remedial order hearing. Further scheduling in the case must be done by the district court pursuant to the principles enunciated herein.

No. 23-30642

James C. Ho, *Circuit Judge*, concurring:

I concur. I write to respond to my distinguished dissenting colleague.

I agree that mandamus is not ordinarily a substitute for appeal. I also agree that whatever the district court might have done pursuant to its October 3 hearing would eventually be subject to appeal.

But that does not end the analysis. "[E]xceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (per curiam). So it doesn't matter that "uncorrectable damage may not result if petitioners are forced to wait for a remedy on direct appeal"— "the clearly erroneous nature of the district court's order [may] call[] for a more immediate remedy." *In re Impact Absorbent Techs., Inc.*, 106 F.3d 400, 1996 WL 765327, *3 (6th Cir. 1996) (unpublished table decision) (granting mandamus relief to compel dismissal of case). *See also, e.g.*, *Holub Indus., Inc. v. Wyche*, 290 F.2d 852, 856 (4th Cir. 1961).

Moreover, mandamus relief may be especially warranted where the stakes of the litigation are unusually significant. *See, e.g.*, *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012) (granting mandamus relief to compel dismissal of case involving "appreciable foreign policy consequences" and "astronomical" "financial stakes").

Consider, for example, *In re Trinity Industries, Inc.*, No. 14-41067 (5th Cir. Oct. 10, 2014). It was asserted there (as here) that the district court had no legal basis to hold a particular proceeding (there, it was a trial under the False Claims Act). It was further argued that "the litigation stakes . . . are unusually high"—namely, the risk of a $1 billion adverse judgment. *Id.*

Notably, the mandamus panel did not deem the matter beyond the scope of the writ—even though any damages award can obviously be

11

reversed later on appeal (as indeed later occurred in that case). To the contrary, the mandamus panel acknowledged that "this is a close case." *Id.* It ultimately denied relief. But the panel went out of its way to caution the district court not to proceed. It said that "[t]his court is concerned" about the impending proceedings, and warned that the petitioner had presented a "strong argument" that the case should not go to trial. *Id.* The district court nevertheless proceeded to trial. So this court subsequently reversed. In doing so, this court specifically noted that the district court went to trial "despite . . . a caution from this court that the case ought not proceed." *United States ex rel. Harman v. Trinity Indus., Inc.*, 872 F.3d 645, 647 (5th Cir. 2017).[1]

As with *Trinity Industries*, this case presents "unusually high" stakes. It doesn't just delineate how Louisiana voters may exercise their right to vote for their elected representatives in the House. It could also impact the course of national policy decisions made by Congress—after all, every member of Congress has a voice, and a vote, in those deliberations. Whatever the final outcome of Louisiana's redistricting process may be, the people of Louisiana, and the country, are entitled to an orderly process that they can trust.

As the majority explains, it would fly in the face of decades of Supreme Court precedent for a district court to usurp the prerogative of the state Legislature to take the first crack at drawing a remedial map. Yet that appears

---

[1] I suppose that this mandamus panel could have followed the example in *Trinity Industries* by sounding a similar firm note of warning to the district court here, while ultimately denying rather than granting mandamus relief. *See*, *e.g.*, *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 347 n.4 (5th Cir. 2017) (noting that "this court has routinely held, sometimes in published opinions, that a district court erred, despite stopping short of issuing a writ of mandamus") (collecting cases). But that's a matter of discretion, not restriction. Moreover, if our court's experience in *Trinity Industries* teaches us anything, it's that sometimes you need a writ, not a warning.

to be what is being contemplated here. As the majority notes, the district court gave the State only five legislative days to produce a remedial map.

The dissent responds that that was a year ago, and suggests that "this yearlong process" should have given the State ample time to work. But that doesn't strike me as a realistic understanding of the legislative process. This matter has been pending on appeal throughout this period of time—not to mention subject to an extended stay by the Supreme Court. And naturally, the whole point of any appeal is that the district court ruling could be set aside—thereby obviating the need for any remedial effort by the Legislature.

It seems impractical, to say the least, to expect busy elected officials and their staffs to set aside all of the other responsibilities of public office, just to focus all of their attention on negotiating a hypothetical remedial plan that the courts have not yet even resolved is necessary. And not only impractical, but unfair to the citizens of Louisiana, who no doubt seek the attention of their elected representatives on countless other pressing matters of importance to their communities.

\* \* \*

I concur in the grant of mandamus relief.[2]

---

[2] The dissent observes in passing that this mandamus proceeding could have been assigned to the pending appeal panel in No. 22-30333. I certainly agree that judges should work collaboratively and in a spirit of comity when it comes to the assignment and transfer of cases. I'm reminded of our court's experience in *Defense Distributed v. Platkin*, 55 F.4th 486 (5th Cir. 2022), and *Defense Distributed v. Platkin*, 48 F.4th 607 (5th Cir. 2022), involving the unfortunate refusal of a federal district court in New Jersey to heed a request to transfer a Texas case back to the relevant district court within our circuit. Had the panel in No. 22-30333 requested transfer of this mandamus proceeding to its current docket, I imagine I would've agreed. But no such request was made.

No. 23-30642

STEPHEN A. HIGGINSON, *Circuit Judge*, dissenting:

The Supreme Court has been clear, cautioning long ago that mandamus is a "drastic and extraordinary remed[y] . . . reserved for really extraordinary causes." *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947). Thus, settled caselaw confirms that mandamus is *not* a tool to manage a district court's docket; nor can mandamus substitute for appeal. Yet review of this matter's procedural history shows that mandamus here improperly does both.

## I. Procedural History

This petition, filed by Louisiana Attorney General Jeff Landry and Louisiana Secretary of State Kyle Ardoin ("the State"), concerns ongoing litigation over Louisiana's congressional maps. On June 6, 2022, the district court preliminarily enjoined the State from conducting any congressional elections under the map enacted by the Legislature and ordered the Legislature to enact a remedial plan on or by June 20, 2022, at which point the district court would otherwise issue additional orders to enact a remedial plan. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 766-67 (M.D. La. 2022). The district court even invited the State to seek more time should it need it, explaining that "[i]f Defendants need more time to accomplish a remedy for the Voting Rights Act violation, the Court will favorably consider a [m]otion to extend the time to allow the Legislature to complete its work." *Robinson v. Ardoin*, No. 22-00211, ECF No. 182 (M.D. La. June 9, 2022).

The preliminary injunction was appealed to this court, which administratively stayed the injunction, then vacated that stay and denied a stay pending appeal, while expediting No. 22-30333. *Robinson v. Ardoin*, 37 F.4th 208, 215 (5th Cir. 2022).[1] On the eve of the district court's remedial

---

[1] Briefing now is complete and our court will hear argument next week.

14

plan hearing, however, the Supreme Court stayed the injunction and held the case in abeyance pending resolution of (the then-styled) *Merrill v. Milligan* (No. 21-1086 and No. 21-1087). *Ardoin v. Robinson*, 142 S. Ct. 2892 (2022).

When *Milligan* issued one year later, the Supreme Court instructed in the instant matter as follows: The "[s]tay heretofore entered by the Court on June 28, 2022 [is] vacated. This will allow the matter to proceed before the Court of Appeals for the Fifth Circuit for review in the ordinary course and in advance of the 2024 congressional elections in Louisiana." *Ardoin v. Robinson*, 143 S. Ct. 2654 (2023).

Correspondingly, this court in No. 22-30333, promptly ordered briefing "addressing [*Milligan*] and any other developments or caselaw that would have been appropriate for Rule 28(j) letters over the past year had the case not been in abeyance." Mem. to Counsel at 1, *Robinson v. Ardoin*, No. 22-30333, ECF No. 242 (5th Cir. June 28, 2023). In response, the State urged this court to vacate the injunction, remand, and "direct the district court to conduct a trial on the merits and reach a final judgment in advance of the 2024 congressional elections in Louisiana." Letter at 2, *Robinson v. Ardoin*, No. 22-30333, ECF No. 246 (5th Cir. July 6, 2023). On July 17, 2023, the district court rescheduled the remedial plan hearing that was supposed to have taken place the previous year—and for which the State had presumably fully prepared for given the original hearing was only cancelled the day before it was supposed to occur—for approximately eleven weeks later on October 3-5, 2023, consistent with the Supreme Court's vacatur of its stay of the district court's injunction. *Robinson v. Ardoin*, Nos. 22-cv-211 and 22-cv-214, ECF No. 250 (M.D. La. July 17, 2023).

The State then, on July 21, submitted more letter argument, *still in No. 22-30333*, reiterating its arguments as to both the hearing and also the unscheduled trial, to "request[] the remedies outlined in [its] July 6, 2023 Letter Brief." Letter at 1, *Robinson v. Ardoin*, No. 22-30333 (5th Cir. July 21,

2023). The State argued on August 19, in its reply brief to this court in No. 22-30333, that the hearing and lack of trial date "make[] little sense when the district court could bring the case to final judgment in time for the 2024 election cycle," Reply Br. at 2-3 n.2, and sought dismissal of the appeal and vacatur of the preliminary injunction, *id.* at 2.

Next, the State moved *in the district court* to cancel the remedial plan hearing. Mot., *Robinson v. Ardoin*, Nos. 22-cv-211 and 22-cv-214, ECF No. 260 (M.D. La. Aug. 25, 2023). That motion was denied, Order, *Robinson v. Ardoin*, Nos. 22-cv-211 and 22-cv-214, ECF No. 267 (M.D. La. Aug. 29, 2023), and the State neither appealed the denial nor moved to expedite its appeal of the preliminary injunction in pursuance of which the hearing is scheduled.

Despite this procedural history, the State instead separately filed a mandamus petition seeking to vacate the scheduled district court hearing and to set a district court trial date. Pet. at 4, *In re Landry*, No. 23-30642 (5th Cir. Sept. 15, 2023). On receipt of the petition, I would have consolidated with No. 22-30333 and reassigned for consideration by that panel, respectful of the long-pending appeal as well as that panel's explicit invitation to the parties to submit argument—which, months before this petition, they did, presenting the same issues and requesting the same relief. *In re Landry*, No. 23-30642 (5th Cir. Sept. 17, 2023) (Higginson, J. dissenting from order requesting responsive briefing).

## II. Analysis

Until today, mandamus has been ordered only when a petitioner has "no other adequate means to attain the relief [it] desires"—thus, specifically, mandamus "is not a substitute for appeal." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (citations and internal

quotation marks omitted) (alteration in original).[2] While the majority acknowledges this principle, it factually errs in describing this matter as "wholly different from the merits appeal." There could be no more conclusive proof of the availability of appellate relief than this circumstance, where the petitioner is already an appellant pressing the same issues and seeking the same relief, challenging the *same injunction in pursuance of which this hearing was scheduled*. There is no support for the assertion that the hearing, lasting for three days at the beginning of October, is mutually exclusive with progression to a full merits trial. The State can also, of course, appeal any remedial plan that the hearing produces. The panel asserts a prerogative to ignore this as only a "paper right" based on its prediction that this litigation will "turn into legal chaos" and eventually reach the Supreme Court. Needless to say, our court has yet to adopt a rule that mandamus lies where a matter may reach the Supreme Court.

Furthermore, "we limit mandamus to only 'clear abuses of discretion that produce patently erroneous results.'" *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008)). Oddly, the majority points to this court's order *denying* the State's motion for a stay pending appeal as evidence that the State has made the higher showing that it is entitled to mandamus. No patent error exists here. Quite the opposite. Until today, we have explicitly assured district judges that they enjoy "broad discretion and inherent authority to manage [their] docket." *June Med. Servs., L.L.C. v. Phillips*, 2022 WL 4360593 at *2 (5th Cir. 2022) (quoting *In re Deepwater Horizon*, 988

---

[2] Contrary to the assertion that "[d]enying mandamus effectively means a two-track set of appeals," it is the majority that now invites parties to slice and dice in the hopes of eleventh-hour success in front of a mandamus panel when an earlier-in-time merits panel has so far declined to act on the same issues, presumably intending to question counsel about those issues in oral argument.

F.3d 192, 197 (5th Cir. 2021) (per curiam)). The district court exercised that discretion when the Supreme Court lifted its stay after a year. The district court could, with approximately eleven weeks of notice to parties, reschedule the hearing that had originally been scheduled for well over a year earlier, a hearing that parties had prepared for because it was not cancelled until the day before it was supposed to begin. It is this yearlong process that the majority inexplicably calls a "game of ambush."

For these reasons, I dissent and would deny the petition.

**A True Copy**
**Certified order issued Sep 28, 2023**

*Tyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**