**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| PRESS ROBINSON, EDGAR CAGE, DOROTHY NAIRNE, EDWIN RENE SOULE, ALICE WASHINGTON CLEE EARNEST LOWE, DAVANTE LEWIS, MARTHA DAVIS, AMBROSE SIMS, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") LOUISIANA STATE CONFERENCE, AND POWER COALITION FOR EQUITY AND JUSTICE, <br><br> *Plaintiffs*, <br><br> v. <br><br> NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, <br><br> *Defendant*. | CIVIL ACTION NO. 3:22-cv-00211 SDD-SDJ |
| EDWARD GALMON, SR., CIARA HART, NORRIS HENDERSON, TRAMELLE HOWARD, <br><br> *Plaintiffs*, <br><br> v. <br><br> NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, <br><br> *Defendant*. | CIVIL ACTION NO. 3:22-cv-00214 SDD-SDJ |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF**
**DR. DOUGLAS JOHNSON**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

LEGAL STANDARD ..........................................................................................2

ARGUMENT........................................................................................................3

I.      Dr. Johnson's Opinions on Compactness, Numerosity, and Traditional
        Redistricting Principles in the Plaintiffs' Illustrative Plans Are Inadmissible,
        Irrelevant, and Unreliable. ......................................................................3

        A.      Dr. Johnson's Opinions on Compactness are Irrelevant and Unreliable. ....4

        B.      Dr. Johnson's Analysis of Traditional Redistricting Principles is
                Unreliable and Unhelpful. ..............................................................6

        C.      Dr. Johnson's Opinion on Communities of Interest Is Beyond the
                Scope of His Expertise and Unsupported by Any Reliable
                Methodology. ...................................................................................7

        D.      Dr. Johnson's Opinion that Plaintiffs' Experts Failed to Satisfy
                *Gingles* I's Numerosity Requirement Is Unreliable and Should be
                Excluded. ........................................................................................9

II.     Dr. Johnson's Opinion About the Ability of Black Voters to Elect Candidates
        of Choice in The Illustrative Plans Goes Beyond the Scope of His Purported
        Expertise, Is Not Based on Any Reliable Methodology, and Is Irrelevant as a
        Matter of Law. .........................................................................................9

III.    Dr. Johnson's Purported Racial Predominance Analysis of The Illustrative
        Plans is Both Irrelevant to Section 2's Legal Requirements and Unreliable.........11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
 No. 2:07-CV-468, 2009 WL 4669854 (E.D. Tex. Sept. 15, 2009)..............................12

*Allen v. Milligan*,
 599 U.S. 1 (2023)..........................................................................................1, 4, 5, 10

*Bartlett v. Strickland*,
 556 U.S. 1 (2009)....................................................................................................9, 11

*Boudreaux v. Scott's Boat Rentals, LLC*,
 No. CV 14-1820, 2016 WL 9406087 (E.D. La. Apr. 20, 2016)..............................2, 14

*Burst v. Shell Oil Co.*,
 No. CIV.A. 14-109, 2015 WL 3755953 (E.D. La. June 16, 2015)...........................3, 8

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)...............................................................................................1, 2

*Fetty v. City of Baton Rouge*,
 518 F. Supp. 3d 923 (M.D. La. 2021)...........................................................................14

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997)......................................................................................................2

*Gonzalez v. Harris County*,
 601 Fed. Appx 255 (5th Cir. 2015)................................................................................4

*Goodman v. Harris Cnty.*,
 571 F.3d 388 (5th Cir. 2009) ....................................................................................2, 7

*Guile v. United States*,
 422 F.3d 221 (5th Cir. 2005) .........................................................................................3

*Johnson v. Arkema, Inc.*,
 685 F.3d 452 (5th Cir. 2012) .........................................................................................6

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999).......................................................................................................2

*League of United Latin Am. Citizens v. Perry*,
 548 U.S. 399 (2006).......................................................................................................5

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   174 F. Supp. 3d 911 (D.S.C. 2016) ........................................................3, 14

*MGMTL, LLC v. Strategic Tech.*,
   No. CV 20-2138-WBV-MBN, 2022 WL 485279 (E.D. La. Feb. 17, 2022) ............................................................................................10

*Milligan v. Merrill*,
   No. 2:21-cv-1536, 2022 WL 264819 (N.D. Ala. Jan. 24, 2022) ...................6

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ................................................................2, 11

*Moyer v. Siemens Vai Services, LLC*,
   2013 WL 12231281 (E.D. La. 2013) .............................................................4

*Nairne v. Ardoin*,
   3:22-cv-00178, Doc. 174 (M.D. La. Nov. 28, 2023) .....................................1

*Perez v. Texas*,
   No. 11-CA-360-OLG-JES-XR, 2014 WL 12480146 (W.D. Tex. July 9, 2014) ................................................................................................12

*In re Rezulin*,
   309 F. Supp. 2d at 541 ................................................................................12

*Robinson v. Ardoin*,
   37 F.4th 208 (5th Cir. 2022) .........................................................................4

*Robinson v. Ardoin*,
   605 F. Supp. 3d 759 (M.D. La. 2022) .....................................................1, 13

*Sims v. Kia Motors of Am., Inc.*,
   839 F.3d 393 (5th Cir. 2016) .........................................................................2

*Singleton v. Allen*,
   No. 2:21-CV-1291-AMM, 2023 WL 5691156 (N.D. Ala. Sept. 5, 2023) ..............................................................................................5

*U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*,
   645 F. Supp. 3d 554 (E.D. La. 2022) .......................................................3, 8

*In re Vioxx Prod. Liab. Litig.*,
   No. MDL 1657, 2016 WL 8711273 (E.D. La. Sept. 16, 2016) ....................10

**Other Authorities**

Fed. R. Evid. 702 ....................................................................................................1, 2, 4, 7

Louisiana Joint Rule 21 ...............................................................................................4, 5

## INTRODUCTION

Defendants offer Dr. Douglas Johnson as a rebuttal expert to Plaintiffs' *Gingles* I experts, Anthony Fairfax and William Cooper. As required by *Gingles* I—a standard reaffirmed by the Supreme Court in *Allen v. Milligan*, 599 U.S. 1, 19-22 (2023)—Mr. Fairfax and Mr. Cooper have each created Illustrative Plans including two majority-Black districts to "establish that Black voters as a group are 'sufficiently large and geographically compact to constitute a majority in some reasonably configured legislative district.'" *Robinson v. Ardoin,* 605 F. Supp. 3d 759, 778 (M.D. La. 2022) (quoting *Cooper v. Harris*, 581 U.S. 285, 301 (2017)), *vacated on other grounds*, 86 F.4th 574 (5th Cir. 2023).

Dr. Johnson's opinion evidence, as reflected in his Expert Report and Supplemental Expert Report, fails to satisfy the standards for expert testimony under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, and should be excluded. Dr. Johnson's reports improperly offer opinions on matters of law and communities of interest in Louisiana for which he has no qualification, while his opinions on compactness and traditional districting principles are based on unreliable methodologies and are irrelevant under the governing law. Dr. Johnson's testimony that Plaintiffs' Illustrative CD 2 would "eliminate the ability to elect [a candidate of choice] from thousands of Black voters," Johnson Suppl. Rep., Ex. B at ¶ 37, is inadmissible because it is outside the scope of his expertise. And his opinion that race was allegedly the predominant factor in the creation of Plaintiffs' Illustrative Plans rests on improper speculation about the subjective intent of Plaintiffs' experts and should be excluded for the reason the Court excluded his similar testimony in *Nairne v. Ardoin*, 3:22-cv-00178, Doc. 174 (M.D. La. Nov. 28, 2023).

## **LEGAL STANDARD**

Expert opinion testimony is admissible only if it is reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702. "The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016) (citation omitted); *see generally Nairne*, Doc. 174, at 1-2.

The "Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 597). A court may exclude "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert witness may give opinions on issues of fact only when he is qualified to do so. *See* Fed. R. Evid. 702. An expert is not permitted to make credibility determinations, offer conclusions of law, or "go beyond the scope of his expertise in giving his opinion." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009); *Boudreaux v. Scott's Boat Rentals, LLC*, No. CV 14-1820, 2016 WL 9406087, at *4 (E.D. La. Apr. 20, 2016) (same).

Courts apply a non-exclusive five-factor test to determine reliability under *Daubert*: (1) whether the theory can be or has been tested; (2) whether it has been subject to peer review and publication; (3) its known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) the degree to which the theory has been generally accepted in the scientific community. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (en banc). To determine whether the expert testimony is relevant, a court must determine whether the expert's reasoning and methodology fit the facts of the case and will assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at

2

591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted).

To be admissible, "[a]n expert's opinion must be supported to provide substantial evidence" and courts must look to the "basis of the expert's opinion, and not the bare opinion alone" or "the mere *ipse dixit* of a credentialed witness." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (citation omitted). Expert testimony that is "fundamentally unsupported" will be excluded because such testimony is unreliable and "offers no expert assistance to the [trier of fact]." *Id.*; *see also U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022) (similar). In addition, expert testimony that does not "adequately account for contrary evidence," is "not reliable or scientifically sound." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 174 F. Supp. 3d 911, 932 (D.S.C. 2016) (collecting cases); *see also Burst v. Shell Oil Co.*, No. CIV.A. 14-109, 2015 WL 3755953, at *16 (E.D. La. June 16, 2015) (excluding expert testimony due, in part, to the expert's "willingness to ignore or disregard contrary results"), *aff'd*, 650 F. App'x 170 (5th Cir. 2016).

## ARGUMENT

### I.    Dr. Johnson's Opinions on Compactness, Numerosity, and Traditional Redistricting Principles in the Plaintiffs' Illustrative Plans Are Inadmissible, Irrelevant, and Unreliable.

Dr. Johnson's testimony, as reflected in his Expert Report and Supplemental Expert Report, is inadmissible because it improperly offers opinions on matters of law and communities of interest in Louisiana for which he has no qualification. Dr. Johnson offers no methodology whatsoever for the conclusions he reaches related to the compactness of the illustrative districts or his identification of communities of interest in Louisiana, and many of his opinions are based on misstatements of law that render them as irrelevant and

3

unreliable as they are inadmissible. *See* Johnson Rep., Ex. A; *Moyer v. Siemens Vai Services, LLC*, 2013 WL 12231281, at *2 (E.D. La. 2013) (FRE 702 requires an opinion witness to have "such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.") (quoting *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004)). His report also opines in cursory fashion that the Black populations in the Illustrative Plans are not sufficiently numerous, yet his lack of any methodology for assessing these criteria leads to opinions that are flawed, unreliable, and beyond the scope of his expertise.

### A.    Dr. Johnson's Opinions on Compactness are Irrelevant and Unreliable.

Dr. Johnson does not dispute that Plaintiffs' Illustrative Plans are more compact than the enacted plan whether assessed by mathematical compactness scores or by visual appearance. Nor does he challenge the analysis of compactness provided by Mr. Fairfax and Mr. Cooper. Instead, he dismisses the significance of the compactness of the Illustrative Plans on the ground that "the word 'compact' never appears in Joint Rule 21," and "any time a densely-populated area is added to a rural district, the district will get geographically smaller and naturally improves [sic] its compactness scores." Johnson Suppl. Rep., Ex. B at ¶ 9. But the *Gingles* I inquiry focuses on whether the proposed majority-minority district reasonably comports with "traditional districting principles," and the geographic compactness of a district is well-established as a traditional redistricting principle. *See, e.g.*, *Allen*, 599 U.S. at 20 (assessing illustrative plans' compactness as a traditional redistricting principle); *Robinson v. Ardoin*, 37 F.4th 208, 218-19 (5th Cir. 2022) (same). The focus of the *Gingles* I inquiry is on traditional districting principles, not the State's specific redistricting criteria. *Gonzalez v. Harris County*, 601 Fed. Appx 255, 260-61 (5th Cir. 2015)

4

("[I]t would be unfair to require [p]laintiffs to draw maps in strict accordance with the County's priorities. Under [such a] scheme, the entire Section 2 analysis is infected by which traditional redistricting principles the County has prioritized, thereby precluding any meaningful review." (citation omitted)). Otherwise, a state would be free to manipulate its redistricting principles to preclude satisfaction of the first *Gingles* precondition. *See e.g.*, *Singleton v. Allen*, No. 2:21-CV-1291-AMM, 2023 WL 5691156, at \*60, 62 (N.D. Ala. Sept. 5, 2023) (rejecting consideration of legislative redistricting principles that were tailored to prevent satisfaction of *Gingles* I). Thus, the presence or absence of the term "compact" in Louisiana Joint Rule 21 is irrelevant to the *Gingles* I inquiry into the compactness of the Black population.

Dr. Johnson also contends that the definition of "compact" under California state law is relevant to analyzing Mr. Cooper and Mr. Fairfax's Illustrative Plans, but the definition of "compact" enacted by California voters has no bearing on whether Mr. Cooper and Mr. Fairfax's Illustrative Plans are "compact" as required to make a threshold evidentiary showing for the purposes of *Gingles* I. *Id.* at ¶¶ 52-53, 55-56; *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433 (2006). Moreover, even if it were relevant, Messrs. Fairfax and Cooper drew geographically compact districts "such that nearby areas of population [were] not bypassed for more distant population," by seeking to keep parishes whole, preserving core based statistical areas, and relying on testimony on communities of interest in Louisiana in the drawing of their district lines. *Compare* Johnson Suppl. Rep., Ex. B Fig. 29 ¶¶ 53, *with* Fairfax December 22, 2023 Suppl. Rep., Ex. C at 22-23, and May 9, 2022 PI Hr'g Tr. 132:5-22, 156:16-157:6, 159:8-20 (Cooper).

**B.**     **Dr. Johnson's Analysis of Traditional Redistricting Principles is Unreliable and Unhelpful.**

Dr. Johnson's opinion that the Illustrative Plans improperly combine rural and urban populations into a single district is irrelevant and unhelpful because it is contrary to the governing legal standards in *Allen* that the compactness of illustrative plans is not undermined by a showing that a district combines urban and rural, or high- and low-density, areas. In *Allen*, the Supreme Court affirmed the district court's determination that Alabama's enacted congressional plan violated Section 2 based in part on illustrative maps presented by the plaintiffs that included both rural and urban population centers linked by shared communities of interest. *See Milligan v. Merrill*, No. 2:21-cv-1536, 2022 WL 264819, at *63-64 (N.D. Ala. Jan. 24, 2022) (finding that plaintiffs' illustrative plans, which created two majority Black districts including urban population centers and portions of the rural Black Belt were, visually compact); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).

Dr. Johnson's reliance on population density maps also ignores critical facts and is unsupported by any established methodology. Dr. Johnson asserts that CDs 3, 4 and 5 in the enacted map are predominantly rural while CDs 1, 2, and 6 are predominantly urban. Johnson Suppl. Rep., Ex. B., ¶¶ 13-14. He asserts that Plaintiffs' Illustrative Plans have improperly created mixed urban-rural districts in CDs 3, 4, and 5 using population density maps including the outlines of these districts. But Dr. Johnson's population density maps exclude the outlying areas of  CDs 1, 2, and 6—even though in the enacted plan each of these districts include substantial low-density rural areas and including these areas would show that the majority of the enacted plan's districts contain a population-dense urban center combined with a geographically population-sparse rural area. *Id.* Dr. Johnson also

6

selectively ignores urban areas in CD 3 (Lafayette and Lake Charles), CD 4 (Shreveport, the third highest population urban area in the State), and CD 5 (Monroe and Alexandria). Johnson Suppl. Rep. ¶ 13, Fig. 3.

Dr. Johnson's opinions on compactness are based on no reliable methodology. His assertion that Illustrative CD 5 improperly combines rural and urban areas takes no account of any other evidence regarding communities of interest. Moreover, he offers no methodology whatsoever for assessing when the inclusion of urban and rural areas in the same congressional district is inappropriate. Instead, he appears to take the categorical position that any change in the urban-rural mix of the districts as compared to the enacted plan renders the Illustrative Plans noncompact. With no methodology for how such an assessment can or should be made, Dr. Johnson's opinions regarding compactness amount to an impermissible ipse dixit.

**C.    Dr. Johnson's Opinion on Communities of Interest Is Beyond the Scope of His Expertise and Unsupported by Any Reliable Methodology.**

Dr. Johnson's opinions on communities of interest in Louisiana should be excluded in their entirety because Dr. Johnson has not established that he is qualified to opine on communities of interest in Louisiana and goes far beyond the scope of his expertise in rendering these opinions. *See* Fed. R. Evid. 702; *Goodman*, 571 F.3d at 399.

Dr. Johnson specifically alleges that Plaintiffs' illustrative versions of CD 2 "all violate communities of interest" in the Acadiana and Delta regions. *See* Johnson Suppl. Rep., Ex. B at ¶¶ 19, 43. Dr. Johnson asserts that Plaintiffs' Illustrative Plans "utterly disregard this important and historical community of interest," by excluding the Acadiana region from CD2. *Id.* at ¶ 43. Mr. Fairfax and Mr. Cooper have demonstrated that they relied on several factors to guide their understanding of communities of interest in drawing

their Illustrative Plans. *See* Fairfax December 22, 2023 Suppl. Rep., Ex. C at 22-23 (Fairfax relied on socioeconomic data and roadshow testimony.); May 9, 2022 PI Hr'g Tr. 132:5-22, 156:16-157:6, 159:8-20 (Cooper testified that he relied on Core Based Statistical Areas (CBSAs) to reflect communities of interest.). By contrast, Dr. Johnson engages in no substantive analysis of communities of interest of his own and fails to consider critical evidence regarding communities of interest relied on by Plaintiffs' map drawers. Among other things, Dr. Johnson fails to consider any of the roadshow testimony that Mr. Fairfax relied upon and does not question or meaningfully address CBSA evidence cited by Mr. Cooper. Nor does Dr. Johnson refute that Mr. Cooper's Illustrative Plans create a compact additional majority Black district that encompasses the Monroe MSA, the Delta Parishes, the Alexandria MSA, the Baton Rouge MSA.

Dr. Johnson presents no substantive analysis of his own in assessing communities of interest, nor could he. Dr. Johnson simply ignores the alternative evidence proffered by Plaintiffs to demonstrate that the Illustrative Plans preserve communities of interest. Thus, Dr. Johnson "does not provide any explanation of the investigation he performed, the specific sources of information he relied on, or what methodology he employed to reach his conclusions," and his statements about the Acadiana region are "nothing more than bare conclusions" that "offer no value to the trier of fact." *U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022). Dr. Johnson's "willingness to ignore or disregard contrary results" renders his opinion unreliable. *Burst v. Shell Oil Co.*, No. CIV.A. 14-109, 2015 WL 3755953, at *16 (E.D. La. June 16, 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 2016). Accordingly, this Court should exclude Dr. Johnson's opinions regarding communities of interest as inadmissible, unreliable, conclusory, and irrelevant.

**D.      Dr. Johnson's Opinion that Plaintiffs' Experts Failed to Satisfy**
         ***Gingles* I's Numerosity Requirement Is Unreliable and Should be**
         **Excluded.**

In his Supplemental Report, Dr. Johnson opines that the Census Bureau's use of differential privacy method to prevent the inadvertent disclosure of individual identities in the census data undermines the opinions of Messrs. Cooper and Fairfax that the Black population is sufficiently numerous to form a majority in their illustrative districts. *See* Johnson Suppl. Rep., Ex. B ¶¶ 58-66. As his report acknowledges, Dr. Johnson's opinion on this issue is purely speculative, and he concedes that that the BVAPs of the illustrative districts may well be higher than reported rather than lower. *Id.* ¶¶ 63-64. Moreover, Dr. Johnson fails to identify any more reliable source of population data than the Census Bureau, nor does he point to any methodology for map drawers to account for differential privacy that Plaintiffs' experts could or should have deployed. He implies that they should have drawn their illustrative districts at some unspecified BVAP threshold higher than 50%, but that is not the law. *See Bartlett*, 556 U.S. at 18. Dr. Johnson's opinion on the impact of differentially privacy on *Gingles* I numerosity is a sideshow that offers nothing helpful in resolving this case.[1]

**II.     Dr. Johnson's Opinion About the Ability of Black Voters to Elect Candidates**
         **of Choice in The Illustrative Plans Goes Beyond the Scope of His Purported**
         **Expertise, Is Not Based on Any Reliable Methodology, and Is Irrelevant as a**
         **Matter of Law.**

Dr. Johnson's opinion that Plaintiffs' Illustrative Plans "move thousands of Black voters out of" the majority-Black CD2 in the enacted plan and "eliminate" those voters'

---

[1] In addition, insofar as Dr. Johnson intends to suggest that the illustrative districts may not provide Black voters an opportunity to elect, such an opinion, as noted above, is beyond the scope of his expertise and is addressed by other experts in this case using reliable and accepted methodologies.

"ability to elect their preferred candidates" is outside the scope of his expertise, lacks any methodology, and is irrelevant as a matter of law. Johnson Suppl. Rep. at ¶ 37.

Dr. Johnson's opinion is irrelevant as a matter of law. Plaintiffs have proffered Illustrative Plans to establish the first *Gingles* precondition—namely, that Black voters in Louisiana are "sufficiently large and [geographically] compact to constitute a majority in a reasonably configured district." *Allen*, 599 U.S. at 18 (quoting *Wisconsin Legislature v. Wisconsin Elections Comm'n*, 142 S. Ct. 1245, 1248 (2022)). No Section 2 case has ever held that *Gingles* I can be satisfied only if every minority voter residing in an opportunity district in the challenged plan is included in an opportunity district in an Illustrative Plan. *Cf. Shaw v. Hunt*, 517 U.S. 899, 917 n.9 (1996) ("[A] § 2 plaintiff [does not have] the right to be placed in a majority-minority district once a violation of the statute is shown."). Thus, it is wholly irrelevant to this analysis whether Plaintiffs' Illustrative Plans would have the result, if enacted, of moving some number of Black voters out of an existing Black-majority district.

Moreover, Dr. Johnson has no expertise or experience qualifying him to opine on the ability of Black voters to elect their candidate of choice, and he has not been proffered as an expert on *Gingles* II and III. *See In re Vioxx Prod. Liab. Litig.,* No. MDL 1657, 2016 WL 8711273, at *4 (E.D. La. Sept. 16, 2016) (expert proffered in mathematics and science could not testify "outside his field of expertise" to provide analysis on adequacy of disclosures). Nor has he shown "any experience, training, background, or knowledge" in analyzing historical voting data or racially polarized voting. *MGMTL, LLC v. Strategic Tech.*, No. CV 20-2138-WBV-MBN, 2022 WL 485279, at *6 (E.D. La. Feb. 17, 2022). Indeed, his report does not demonstrate that he has conducted any analysis of voting data

in this case or any prior case. *Id.* (rejecting expert testimony where there was no evidence that the expert had not conducted relevant analysis in present case or any prior cases).

Dr. Johnson's opinion about the ability of Black voters to elect their candidates of choice should also be excluded under *Daubert* because his methodology—counting the number of Black voters removed from a district—has no identifiable support in political science literature. *See Moore*, 151 F.3d at 275–76. Dr. Johnson cites no scientific articles or sources to support this cursory analysis. Dr. Johnson's analysis stands in stark contrast to the robust analysis provided by Plaintiffs' *Gingles* II and III experts, Lisa Handley and Max Palmer, who reviewed years of election and voting data and performed generally accepted statistical analyses to opine on these issues.

## III. Dr. Johnson's Purported Racial Predominance Analysis of The Illustrative Plans is Both Irrelevant to Section 2's Legal Requirements and Unreliable.

Dr. Johnson also opines that Mr. Cooper and Mr. Fairfax's "descriptions of any predominant factor other than race in the drawing of Congressional District 5…do not stand up to even the most basic scrutiny." Johnson Suppl. Rep., Ex. B. ¶ 10. Yet at the *Gingles* I stage, the Supreme Court explicitly requires plaintiffs to consider race to answer the "objective, numerical" *Gingles* I inquiry of whether Black people "make up more than 50 percent of the voting age population in the relevant geographic area." *Bartlett v. Strickland*, 556 U.S. 1, 18 (2009) (plurality op.).

Dr. Johnson's assertions that race was the predominant factor animating Plaintiffs' Illustrative Plans are nothing more than an effort to opine on Messrs. Cooper and Fairfax's subjective intent in drawing specific district lines. As the Court concluded in precluding Dr. Johnson from offering similar testimony in *Nairne*, "[t]he Defendants do not contend that Dr. Johnson has a specialty, discipline or expertise in discerning a person's subjective

intent in decision making," and he is "simply unqualified to opine on [the mapmaker's] subjective intent." *Nairne*, Doc. 174 at 6 (footnote omitted).

Dr. Johnson has "no special knowledge that allows [him] to opine as to [Messrs. Fairfax and Cooper's] subjective intent" when they drew the illustrative maps. *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 WL 4669854, at *5 (E.D. Tex. Sept. 15, 2009). Even in redistricting cases involving an alleged gerrymander by the State in violation of the Fourteenth Amendment, courts have "caution[ed] the experts not to . . . comment on the subjective intent of any individual legislator or staff member." *Perez v. Texas*, No. 11-CA-360-OLG-JES-XR, 2014 WL 12480146, at *3 (W.D. Tex. July 9, 2014). Here—where no intent claim is at issue, and without the benefit of the "testimonial and documentary evidence on legislative process, procedure, and tradition" that forms the core basis for expert testimony on legislative intent, *id.* at *3—Dr. Johnson's proffered "interpretations of conduct or views as to the motivation of parties" should be excluded. *In re Rezulin*, 309 F. Supp. 2d at 541.

Other courts have repeatedly precluded Dr. Johnson from offering similar testimony on the motivation of map drawers. In *Common Cause v. Lewis*, a court rejected Dr. Johnson's opinions about, among other things, the intent of another map-drawer. 18 CVS 014001, 2019 WL 4569584, at *95-96 (N.C. Sup. Ct., Wake Cnty., Sep. 3, 2019). There, Dr. Johnson opined that one senate district was "drawn to capture as much of" the Charlotte suburbs as possible into a single district, and that another Senate District similarly reflected an effort to "unite[] the southern suburbs" of Charlotte. *Id*. The court "reject[ed] Dr. Johnson's explanations" as they "appear[ed] to be purely speculative, and in any event his speculation d[id] not withstand minimal scrutiny." *Id.* That court also noted that, at that

12

time, "Dr. Johnson ha[d] testified as a live expert witness in four cases previously, and the court and it "join[ed] these other courts in rejecting Dr. Johnson's methodologies, analyses, and conclusions." *Id.* at *95 (collecting cases that called Dr. Johnson's expert testimony "unreliable and not persuasive," and his analysis or methodology as "unsuitable," "troubling," "lack[ing] merit" or "inappropriate").

Dr. Johnson's testimony should also be excluded because he does not address all of the relevant evidence regarding the intent of Plaintiffs' experts in creating their Illustrative Plans. Both of Plaintiffs' map making experts have testified that they "only considered race to the extent necessary to test for numerosity and compactness as required by *Gingles* I," and the Court credited that testimony. *Robinson*, 605 F. Supp. at 827. Each testified that they drew the maps based on traditional redistricting criteria. *See* May 9, 2022 PI Hr'g Tr. at 113:11-14, 156:8-12, 202:5-11; 204:24-205:4. In particular, Mr. Fairfax explained that he evaluated six distinct socioeconomic variables and did not allow race to predominate. *See* Fairfax May 2, 2022 Suppl. Rep. at 12; May 9, 2022 PI Hr'g Tr. 186:17-187:1; 189:5-15; 190:12-192:11, 193:11-14.

Dr. Johnson glosses over critical components of Plaintiffs' experts' opinions. He focuses exclusively on two of six socioeconomic variables that Mr. Fairfax considered to reach the conclusion that race was the predominant factor in drawing those maps. *See* Johnson Rep., Ex. A ¶ 19 (concluding that "race predominated over the factors shown in Mr. Fairfax's 'Education' and 'Risk Factors' maps in decisions regarding where to draw the Congressional District lines" without analyzing any of the other socioeconomic maps). Nor did Dr Johnson evaluate all available evidence—in particular, the other four socioeconomic maps presented by Mr. Fairfax and the roadshow testimony upon which Mr.

Fairfax relied, *see* May 9, 2022 Tr. 195:10-196:1; Fairfax May 2, 2022 Suppl. Rep. at 12—to rule out the alternative, non-discriminatory criteria that Mr. Fairfax considered.

Likewise, Dr. Johnson claims that Mr. Cooper "makes no attempt to describe any predominant factor in the drawing of Congressional District 5 in his Illustrative Cooper5 other than race." Johnson Suppl. Rep., Ex. A at ¶ 8. But this assertion ignores Mr. Cooper's unequivocal testimony that he did not allow race to predominate and he balanced race along with several other traditional redistricting principles. *See* May 9, 2022 PI Tr. 113:11-14, 156:8-12. Mr. Cooper was not obliged to identify one predominant consideration when based on his experience and expertise, he balanced many factors and did not allow any one of them to predominate. Dr. Johnson asserts that Messrs. Cooper and Fairfax "offer no sustainable justification for their maps other than racially-driven ambition to draw two majority-Black districts," *see* Johnson Suppl. Rep., Ex. B at ¶17, but such opinions about credibility by an expert are impermissible. *Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923, 934 (M.D. La. 2021) (explaining that an expert witness is "not permitted to offer opinions that . . . address the credibility of any witness); *see also Boudreaux v. Scott's Boat Rentals, LLC*, No. CV 14-1820, 2016 WL 9406087, at *4 (E.D. La. Apr. 20, 2016).

Because Dr. Johnson's methodology "fail[s] to adequately account for contrary evidence," it is "not reliable or scientifically sound." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 174 F. Supp. 3d at 932 (collecting cases). Absent a reliable methodology or consideration of all relevant facts, Dr. Johnson's opinions about racial predominance amount to attacks on Messrs. Fairfax and Cooper's credibility that are not helpful to this Court and should therefore be excluded.

## **CONCLUSION**

For the foregoing reasons, this Court should exclude the proposed testimony of

Dr. Douglas Johnson.


DATED:  January 15, 2024                    Respectfully submitted,

By: /s/ *Kathryn Sadasivan*

| | |
|---|---|
| Stuart Naifeh (admitted *pro hac vice*) | Robert A. Atkins (admitted *pro hac vice*) |
| Kathryn Sadasivan (admitted *pro hac vice)* | Jonathan H. Hurwitz (admitted *pro hac vice*) |
| Victoria Wenger (admitted *pro hac vice*) | Yahonnes Cleary (admitted *pro hac vice*) |
| NAACP Legal Defense and Educational Fund, Inc. | Amitav Chakraborty (admitted *pro hac vice*) |
| 40 Rector Street, 5th Floor | Adam P. Savitt (admitted *pro hac vice*) |
| New York, NY 10006 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| Tel: (212) 965-2200 | 1285 Avenue Of The Americas, New York, NY 10019 |
| snaifeh@naacpldf.org | Tel.: (212) 373-3000 |
| ksadasivan@naacpldf.org | Fax: (212) 757-3990 |
| vwenger@naacpldf.org | jhurwitz@paulweiss.com |
| | ratkins@paulweiss.com |
| R. Jared Evans | ycleary@paulweiss.com |
| I. Sara Rohani (admitted *pro hac vice*) | achakraborty@paulweiss.com |
| NAACP Legal Defense and Educational Fund, Inc. | asavitt@paulweiss.com |
| 700 14th Street N.W. Ste. 600 | |
| Washington, DC 20005 | John Adcock |
| Tel: (202) 682-1300 | Adcock Law LLC |
| jevans@naacpldf.org | 3110 Canal Street |
| srohani@naacpldf.org | New Orleans, LA 70119 |
| | Tel: (504) 233-3125 |
| | jnadcock@gmail.com |
| Nora Ahmed (admitted *pro hac vice*) | |
| ACLU Foundation of Louisiana | Sophia Lin Lakin (admitted *pro hac vice*) |
| 1340 Poydras St, Ste. 2160 | Dayton Campbell-Harris (admitted *pro hac*)** |
| New Orleans, LA 70112 | American Civil Liberties Union Foundation |
| Tel: (504) 522-0628 | 125 Broad Street, 18th Floor |
| nahmed@laaclu.org | New York, NY 10004 |
| | slakin@aclu.org |

Tracie L. Washington
Louisiana Justice Institute
Suite 132
3157 Gentilly Blvd
New Orleans LA, 70122
Tel: (504) 872-9134
tracie.washington.esq@gmail.com

Megan Keenan (admitted *pro hac vice*
Sarah Brannon (admitted *pro hac vice*)**
American Civil Liberties Union
Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org

T. Alora Thomas-Lundborg (admitted *pro hac vice*)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu

*Counsel for Robinson Plaintiffs*

***Practice is limited to federal court.*


By: /s/*Abba Khanna*

J. E. Cullens, Jr.
Andrée Matherne Cullens
S. Layne Lee
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. One
Baton Rouge, LA 70810
(225) 236-3636

Abha Khanna (*admitted pro hac vice*)
ELIAS LAW GROUP LLP
1700 Seventh Ave. Suite 2100
Seattle, Washington 98101
(206) 656-0177
akhanna@elias.law

Daniel Cohen (*admitted pro hac vice*)
Qizhou Ge (*admitted pro hac vice*)
Jacob D. Shelly (*admitted pro hac vice*)
ELIAS LAW GROUP LLP
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
(202) 968-4490
dcohen@elias.law
age@elias.law
jshelly@elias.law

*Counsel for Galmon Plaintiffs*