# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON, EDGAR CAGE, DOROTHY NAIRNE, EDWIN RENE SOULE, ALICE WASHINGTON, CLEE EARNEST LOWE, DAVANTE LEWIS, MARTHA DAVIS, AMBROSE SIMS, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") LOUISIANA STATE CONFERENCE, AND POWER COALITION FOR EQUITY AND JUSTICE, | Civil Action No. 3:22-cv-00211-SDD-SDJ |
| *Plaintiffs,* | |
| v. | |
| NANCY LANDRY, in her official capacity as Secretary of State for Louisiana. | |
| *Defendant.* | |
| EDWARD GALMON, SR., CIARA HART, NORRIS HENDERSON, TRAMELLE HOWARD, | Civil Action No. 3:22-cv-00214-SDD-SDJ |
| *Plaintiffs,* | |
| v. | |
| NANCY LANDRY, in her official capacity as Secretary of State for Louisiana. | |
| *Defendant.* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 2

ARGUMENT ........................................................................................................ 4

I.    Defendants Have Not Carried Their Burden of Demonstrating this Case
Is Moot. ...................................................................................................... 6

      A.    The State's Voluntary Enactment of SB 8 Does Not Deprive this
Court of Jurisdiction. .............................................................. 7

      B.    The Mere Passage of SB 8 Does Not "Completely and Irrevocably"
Eradicate the Effects of Defendants Section 2 Violation. ..................... 12

II.    The Public Interest Weighs Against a Finding of Mootness. ......................... 15

CONCLUSION ...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Already, LLC* v. *Nike, Inc.*,
   568 U.S. 85 (2013) ................................................................................................ 7

*Caliste* v. *Cantrell*,
   329 F. Supp. 3d 296 (E.D. La. 2018) ..................................................................... 6

*Callais* v. *Landry*,
   No. 3:24-cv-00122 (February 19, 2024) ................................................................ 14

*Callais* v. *Landry*,
   No. 3:24-cv-122-DCJ-CES-RRS (W.D. La. Jan. 31, 2024) ..................................... 3

*Chafin* v. *Chafin*,
   568 U.S. 165 (2013) ............................................................................................. 4

*City News & Novelty, Inc.* v. *City of Waukesha*,
   531 U.S. 278 (2001) ............................................................................................. 8

*City of Mesquite* v. *Aladdin's Castle, Inc.*,
   455 U.S. 283, 289 (1982) .................................................................................. 7, 8

*Envt'l Conservation Org.* v. *City of Dallas*,
   529 F.3d 519 (5th Cir. 2008) ................................................................................ 8

*United States* v. *Esposito*,
   371 F. Supp. 3d 288 (M.D. La. 2019) .................................................................... 4

*Freedom From Religion Found., Inc.* v. *Abbott*,
   58 F.4th 824 (5th Cir. 2023)................................................................................. 11

*Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ...................................................................................... 4, 5, 7

*Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Found., Inc.*,
   484 U.S. 49 (1987) ......................................................................................... 4, 6

*Little* v. *King*,
   768 F. Supp. 2d 56 (D.D.C. 2011) ....................................................................... 15

*Little* v. *Strange*,
   796 F. Supp. 2d 1314 (M.D. Ala. 2011)................................................................ 15

*Los Angeles Cnty.* v. *Davis,*
440 U.S. 625 (1979) ............................................................................ 6

*Morse* v. *Republican Party of Va.,*
517 U.S. 186 (1996) ............................................................................ 9

*Nat'l Black Police Ass'n* v. *Dist. of Columbia,*
108 F.3d 346 (D.C. Cir.1997) ........................................................... 12

*Parents Involved in Cmty. Sch.* v. *Seattle Sch. Dist. No. 1,*
551 U.S. 701 (2007) ............................................................................ 7

*Perez* v. *Perry,*
26 F. Supp. 3d 612 (W.D. Tex. 2014) ........................................ 8, 9, 10

*United States* v. *Phosphate Export Assn., Inc.*
393 U.S. 199, 203 (1968) .................................................................... 6

*Pierre* v. *Vasquez,*
No. 1:20-CV-224-LY, 2022 WL 3219421 (W.D. Tex. Aug. 9, 2022) ..................... 16

*Ramming* v. *United States,*
281 F.3d 158 (5th Cir. 2001) .............................................................. 5

*Robinson* v. *Ardoin,*
86 F.4th 574 (5th Cir. 2023) .............................................................. 1

*Speech First, Inc* v. *Fenves,*
979 F.3d 319 (5th Cir. 2020) ............................................................ 11

*Sprint Commc'ns, Inc.* v. *Jacobs,*
571 U.S. 69 (2013) ............................................................................ 4

*Tucker* v. *Gaddis,*
40 F.4th 289 (5th Cir. 2022) ......................................................... 8, 16

*United States* v. *W. T. Grant Co.,*
345 U.S. 629 (1953) .................................................................. 4, 5, 8

## Statutes

28 U.S.C. § 1331 ................................................................................ 5

28 U.S.C. § 1343 ................................................................................ 5

28 U.S.C. § 1357 ................................................................................ 5

28 U.S.C. § 2284 ..................................................................................... 15

Federal Tort Claims Act ........................................................................... 5

La. Acts 2024, 1st Ex. Sess., No. 2 ......................................................... 2

Voting Rights Act of 1965, 52 U.S.C. §§ 10301, et seq. ...................... *passim*

**Other Authorities**

Court Ordered Redistricting (Jan. 16, 2024),
    https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-
    special-session-on-court-ordered-redistricting ..................................... 10

Liz Murrill (@AGLizMurrill), Twitter (Jan. 16, 2024, 4:53 PM),
    https://twitter.com/AGLizMurrill/status/1 747376599446516056 ...................... 10

House Bill 1 ........................................................................................... *passim*

Senate Bill 4 ............................................................................................... 2

Senate Bill 8 ........................................................................................... *passim*

## PRELIMINARY STATEMENT

Black Louisianans have already been forced to vote under a congressional districting plan containing one-majority Black district that this Court and two panels of the Fifth Circuit deemed likely violated the Voting Rights Act of 1965, 52 U.S.C. §§ 10301, et seq.  In those decisions, this Court and the Fifth Circuit expressly held that the illustrative maps submitted by Plaintiffs and composed of two majority-Black congressional districts were drawn with appropriate consideration of race and were not racial gerrymanders.  *See, e.g.*, *Robinson* v. *Ardoin*, 86 F.4th 574, 596 (5th Cir. 2023).

Now, nearly two years after Black Louisianans brought this case to demand an equal opportunity to elect candidates of their choice to the U.S. Congress, Defendants seek to declare it moot on the grounds that a new law creating two majority-Black districts, Senate Bill 8 ("SB 8"), was passed by the Louisiana Legislature.  Defendants admitted they passed SB 8 to resolve this litigation and after an explicit directive by the Fifth Circuit.  Moreover, as SB 8 is being attacked in the newly filed *Callais* v. *Landry* action as constituting a racial gerrymander—and with Black Louisianans right to an undiluted vote again under threat—they have painted Plaintiffs as "interlopers" for seeking to defend the law when Defendants declined to do so and carefully avoided suggesting SB 8 is constitutional.

By their statements and omissions, Defendants have only highlighted how much remains at stake in this case and why Plaintiffs are entitled to a declaratory judgment that Louisiana's 2022 congressional plan violates Section 2 and a

permanent injunction mandating two congressional districts in Louisiana in which Black voters can elect candidates of their choice. Defendants have not and cannot meet the heavy burden of demonstrating this case is moot. This Court should deny Defendants' motion to dismiss.

## **BACKGROUND**

In June 2022, this Court held that the congressional districting plan passed by the Louisiana Legislature, known as House Bill 1 ("HB 1"), likely violated Section 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10301, and in November 2023, the Fifth Circuit affirmed that conclusion. The Fifth Circuit instructed this Court to allow the Legislature until January 15, 2024, to enact a new plan, and if the Legislature failed to enact a lawful plan, to proceed swiftly to the merits of Plaintiffs' claims and impose a court-ordered map in advance of the 2024 election should Plaintiffs prevail. In January 2024, recognizing that HB 1 would likely not survive until the 2024 election—and opting not to pass maps substantially similar to the illustrative maps submitted by Plaintiffs that were introduced during the Special Session, *see, e.g.*, Senate Bill 4—the Legislature passed and the Governor signed Senate Bill 8, which provides for a new congressional districting plan with two majority-Black congressional districts. La. Acts 2024, 1st Ex. Sess., No. 2. Legislators and the State made clear SB 8 was passed to avoid the Court imposing one of Plaintiffs' maps.

Almost immediately after the enactment of SB 8, a group of self-described "non-African American" plaintiffs filed a lawsuit in the Western District of Louisiana

attacking SB 8 as a purported racial gerrymander and raising one of the central issues this Court confronted in this case: whether Section 2 requires Louisiana to have a second congressional district where Black voters can elect a candidate of choice. Although this Court answered that question in the affirmative, the *Callais* plaintiffs seek a preliminary injunction enjoining SB 8 to reinstate a map with a single district in which Black voters could elect a candidate of their choosing—just like HB 1. *See Callais* v. *Landry*, No. 3:24-cv-122-DCJ-CES-RRS (W.D. La. Jan. 31, 2024), ECF No. 17-3 at 12.

Plaintiffs in this case have moved to intervene in the *Callais* litigation to defend their entitlement under the VRA to a congressional plan with two majority-Black districts. The *Callais* plaintiffs have opposed that motion in part on the surprising theory that Plaintiffs lack a legally protectable interest in ensuring that their Section 2-protected rights are not violated once again and in part on the ground that their interests are already adequately protected by the governmental defendant. Notably, neither the State of Louisiana nor the presiding officers of the Louisiana Legislature have sought intervention in *Callais* to defend SB 8—a full three weeks after the complaint was filed—and their opposition to Plaintiffs' First-Filed motion, with its insistence that there is little to no party overlap, suggests they do not intend to intervene there. ECF No. 355, at 13-14. Nor has the Secretary yet mounted any defense of SB 8, but she has agreed to a hurried schedule that would have the *Callais* court issuing a final judgment and implementing a remedial map by the end of April. See *Callais* v. *Landry*, No. 3:24-cv-122-DCJ-CES-RRS (W.D. La. Jan. 31, 2024), ECF

No. 43. This is in marked contrast to this litigation, where the Legislative leaders and the Attorney General moved to intervene to defend the legality of the 2022 map within days of Plaintiffs filing their complaint, and where the Secretary of State was one of the loudest proponents of delay. *See* ECF No. 1 (complaint filed Mar. 30, 2022); ECF No. 10 (legislative leaders' motion to intervene filed April 6, 2022); ECF No. 30 (State's motion to intervene filed April 13, 2022).

## <u>ARGUMENT</u>

The burden of demonstrating mootness "is a heavy one." *See United States* v. *W. T. Grant Co.*, 345 U.S. 629, 633 (1953). "[A] case 'becomes moot only when it is *impossible* for a court to grant *any effectual relief whatever* to the prevailing party.'" *Chafin* v. *Chafin*, 568 U.S. 165, 172 (2013) (emphasis added and citation omitted); *see id.* ("'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). That requirement respects the longstanding principle that "federal courts are obliged to decide cases within the scope of federal jurisdiction." *United States* v. *Esposito*, 371 F. Supp. 3d 288, 295 (M.D. La. 2019); *see also Sprint Commc'ns, Inc.* v. *Jacobs*, 571 U.S. 69, 72 (2013) (quoting *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821) (holding that federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

The "formidable burden" of demonstrating mootness lies with Defendants, the parties moving for dismissal on mootness grounds. *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *see also Gwaltney of*

*Smithfield, Ltd.* v. *Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (emphasis added and citation omitted) ("The *defendant* must demonstrate that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"); *Laidlaw*, 528 U.S. at 190 (requiring that defendant demonstrate mootness and overcome voluntary cessation doctrine); *W. T. Grant Co.*, 345 U.S. at 633 (same). Defendants cite *Ramming* v. *United States*, 281 F.3d 158, 161 (5th Cir. 2001), to argue instead that the parties asserting jurisdiction—here, Plaintiffs—have the burden of proof. ECF No. 352-1 at 5. But neither the decision by the court in *Ramming* nor the cases it cites arose in the context of a mootness challenge, much less a mootness challenge premised on the voluntary action of defendants. *See Ramming*, 281 F.3d at 164–65 (analyzing the jurisdictional question under the Federal Tort Claims Act whether claims were time-barred). Rather, they raised the question whether the court had jurisdiction at the outset of the case.[1] And Defendants cite no case in which, having established that the court had jurisdiction to resolve their claims, a plaintiff was required to prove jurisdiction again any time a defendant asserts the case has become moot. On the contrary, the Supreme Court has been clear that standing and mootness are not the same and has repeatedly placed the burden of demonstrating

---

[1] There is no question this court had jurisdiction when this lawsuit was filed. Plaintiffs filed this action on March 30, 2022 alleging that HB 1 violated Section 2 of the VRA, a federal statute. Three separate jurisdictional statutes provide this Court with jurisdiction to hear and resolve those claims. *See* 28 U.S.C. § 1331 (general federal question jurisdiction); *id.* § 1343(a)(3), 1343(a)(4) (jurisdiction over claims alleging violations of federal civil rights laws, including the right to vote); *id.* § 1357 (jurisdiction over claims to enforce the right to vote). Moreover, this Court has already found, in its preliminary injunction order, that Plaintiffs have standing to assert the claims raised in the Complaint. *See* ECF No. 173 at 82-83.

mootness on the defendant. *See Laidlaw*, 528 U.S. at 189 (faulting the court of appeals for "confus[ing] mootness and standing"). As explained below, Defendants have failed to carry that burden here.

## I.  Defendants Have Not Carried Their Burden of Demonstrating this Case Is Moot.

To establish mootness, the Defendant must show (1) that "it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,'" *Gwaltney of Smithfield, Ltd.*, 484 U.S. at 66 (quoting *United States* v. *Phosphate Export Assn., Inc.,* 393 U.S. 199, 203 (1968)), and (2) that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty.* v. *Davis*, 440 U.S. 625, 631 (1979). Only "[w]hen both conditions are satisfied [can it] be said that the case is moot." *Id.* In the absence of such a showing, the case is not moot and Plaintiffs are entitled to a declaratory judgment that the challenged map violated Section 2 and prospective injunctive relief requiring Louisiana to conduct congressional elections under a map with two districts in which Black voters have an opportunity to elect candidates of their choice. *See*, *e.g.*, *Caliste* v. *Cantrell*, 329 F. Supp. 3d 296, 307 (E.D. La. 2018), aff'd, 937 F.3d 525 (5th Cir. 2019) (where case was not moot, court had power to grant declaratory relief).

Defendants assert two purported bases for mootness. First, they argue that public statements made by some of the Plaintiffs and their counsel regarding SB 8 provide conclusive evidence that Plaintiffs have obtained all the relief they sought. Second, they argue that the enactment of SB 8 supersedes HB 1 and thereby moots Plaintiffs' challenge to HB 1. Both arguments fail. First, the Defendants' voluntary

adoption of a new congressional map with no evidence that the challenged conduct will not recur at the earliest opportunity after this case is dismissed, does not render the case moot. Second, the mere passage of a new plan—with, as Defendants remind the Court, no legally enforceable compulsion to do so—cannot be said to "have completely and irrevocably eradicated the effects of the alleged violation." This is particularly true where that plan is under attack in collateral litigation and may no longer be operative by the time of the 2024 election.

**A.  The State's Voluntary Enactment of SB 8 Does Not Deprive this Court of Jurisdiction.**

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000) (citing *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). The party asserting mootness carries "[t]he 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again," and the Supreme Court has described the standard for determining whether a defendant's voluntary conduct moots the case as "stringent." *Id*. at 189. To show that their voluntary conduct mooted this case, the defendant must demonstrate that "subsequent events [have made] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Cmty. Sch.* v. *Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

The reason "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued" is clear: "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where

he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91 (2013).[2]  Accordingly, "allegations by a defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case." *Envt'l Conservation Org.* v. *City of Dallas*, 529 F.3d 519, 528 n.4 (5th Cir. 2008). "A defendant may voluntarily abandon certain conduct, and that abandonment may be an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice. But that is a matter relating to the exercise rather than the existence of judicial power." *Tucker* v. *Gaddis*, 40 F.4th 289, 294- 95 (5th Cir. 2022) (Ho., J., concurring).

These principles have regularly been applied in redistricting cases to reject claims that the enactment of a new redistricting plan renders the challenge moot. For example, in *Perez* v. *Perry*, 26 F. Supp. 3d 612 (W.D. Tex. 2014), private plaintiffs sued the State of Texas under Section 2 and the Fourteenth Amendment to enjoin the use of their 2011 state house and congressional map. *Id.* at 614. Simultaneously, Texas was defending their 2011 maps in preclearance litigation brought under Section 5 of the VRA. *Id.* After the federal district court in Washington, DC denied preclearance, the legislature enacted new state and congressional maps in 2013. *Id.*

---

[2] *See also City News & Novelty, Inc.* v. *City of Waukesha*, 531 U.S. 278, 284 n.1 (2001) ("[A] party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." (citing *Gwaltney*, 484 U.S. at 66–67); *City of Mesquite*, 455 U.S. at 289, n. 10 ("Courts are not "compelled to leave '[t]he defendant ... free to return to his old ways.'") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

at 614-15. The State filed a motion to dismiss, arguing that the suit was moot in light of the enactment of new 2013 maps. *Id.* The three-judge panel applied the voluntary cessation doctrine and found that the state had not carried its burden to show that it would not resume its unlawful conduct once the case was dismissed. *Id.* at 621-22. Of particular significance to the *Perez* court in reaching this conclusion was that "the Legislature adopted the 2013 plans at least in part in an attempt to end this particular litigation," *id.* at 621, and that Texas had "steadfastly maintained the legality" of its original map and had not "announced any policy change that would preclude the Legislature from engaging in the same alleged wrongful conduct." *Id.*; *see also Morse* v. *Republican Party of Va.*, 517 U.S. 186, 235 n.48 (1996) (plurality) (declining to dismiss a Voting Rights Act case as moot where, despite their voluntary cessation of the challenged practice, the defendants had engaged in the challenged practice for many years and they had continued to defend the practice as "necessary").

Defendants here have likewise utterly failed to demonstrate that the conduct Plaintiffs challenged is not reasonably likely to recur. Indeed, Defendants' words and actions demonstrate that the likelihood of recurrence is high. As in *Perez*, Defendants insist that HB 1 was lawful, and remind the Court that no "controlling order, judgement, or decree . . . required the State to enact [SB 8]," citing the Fifth Circuit's vacatur of the preliminary injunction. Defs. Memo. ISO of Mot. To Dismiss, Doc. 352-1 at 7-9 ("This Court never issued any final judgment invalidating the Old Law. And while it did issue a preliminary injunction, the Fifth Circuit vacated it."). Yet at the same time as Defendants insist they were under no legal obligation to abandon HB

9

1, the members of the Legislature and other officials involved in SB 8's passage avowedly did so to avoid this Court stepping in and imposing the Plaintiffs' map. *See*, *e.g.*, Office of the Governor, Governor Jeff Landry Opens First Special Session on Court Ordered Redistricting (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting (asking the Louisiana Legislature to enact a new congressional map to avoid a map drawn "by some heavy-handed member of the Federal Judiciary"); Liz Murrill (@AGLizMurrill), Twitter (Jan. 16, 2024, 4:53 PM), https://twitter.com/AGLizMurrill/status/1747376599446516056 ("[W]e have a federal judge holding her pen in one hand and a gun to our head in the other."); Statement of Rep. Beaullieu, House Floor, Jan. 19, 2024 ("If we don't act, it's very clear that the federal court will impose the plaintiff's proposed map on our state and we don't want that.").

Put simply, if Defendants succeed in having this case dismissed as moot, they will have removed the stated reason the Legislature identified for drawing a map with a second majority-Black district. Given that the Legislature "adopted [SB 8] at least in part in an attempt to end this particular litigation, not because it conceded the any of its actions were wrongful or because it had abandoned any intent to engage in the same conduct," *Perez*, 26 F. Supp. 3d at 621, there is no reason to think the Legislature will not reenact HB 1 or something very similar as soon as the threat of this litigation is gone.

On the contrary, the *Callais* litigation provides every reason to expect that they will. Neither the Attorney General nor the Legislature have taken any steps to defend

SB 8 from constitutional challenge in that case—in contrast to their prior vigorous defense of HB 1. Indeed, although they insist that SB 8 provides complete relief, nowhere in their briefing do they tell this Court whether they believe SB8 comports with Section 2 or the Constitution. Although the Fifth Circuit has held that, "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing," *Freedom From Religion Found., Inc.* v. *Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (cleaned up), here, Defendants' silence on that critical issue in both this Court and the *Callais* court hardly suggests a commitment to maintaining SB 8 or any other map that would provide Plaintiffs and other Black voters an opportunity to elect candidates of their choice in a second congressional district.

Defendants suggest that as government actors, they are entitled to a presumption of good faith. Mem. at 8. Their status as government actors, however, does not exempt them from the burden of demonstrating mootness and does not automatically overcome the voluntary cessation doctrine. The Fifth Circuit has recently held that the voluntary cessation doctrine applies, even for government actors, where there is (1) an absence of a controlling statement of future intention; (2) the timing of a mooting change is suspicious; and (3) where the Defendant continues its defense of the challenged policies. *Speech First, Inc* v. *Fenves*, 979 F.3d 319, 328 (5th Cir. 2020). Here, as noted, the Defendants have assiduously avoided making any statement of their future intentions—on the contrary, all their statements suggest that SB 8 was enacted solely to avoid Court intervention, and

they have articulated no commitment to preserving it beyond the life of this case. The timing of SB 8 is plainly tied to the schedule imposed by the Fifth Circuit and this Court to avoid a trial on the merits. And here, not only have the Defendants continued to defend the lawfulness of HB 1; they have wholly failed to defend SB 8 and have suggested that Plaintiffs should not be permitted to defend it either.

Defendants' insistence that Plaintiffs' and their counsel's public statements regarding SB 8 amounts to a concession of mootness is unsupported by any case citation and is belied by the facts of this case. ECF No. 352-1 at 1-3. These statements prove no more than that the Plaintiffs agree that the Defendants have, for the time being, voluntarily implemented a map that plaintiffs do not believe violates the VRA. Plaintiffs' and their counsel's views on Defendants' voluntary conduct does not make it any less voluntary or establish that the unlawful conduct Plaintiffs complained of is any less likely to recur.

While "the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists," *Nat'l Black Police Ass'n* v. *Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir.1997), here there is far more than that: through their words and actions, Defendants have made abundantly clear that if left to their own devices, they will very likely repeat the harm of diluting the voting strength of Black Louisianians in violation of Section 2.

## B. The Mere Passage of SB 8 Does Not "Completely and Irrevocably" Eradicate the Effects of Defendants Section 2 Violation.

Even if there were no risk of recurrence, this case is not moot for the separate reason that the mere enactment of a VRA-compliant map—a map that has not and

may never be used in any election—does not eradicate the harm Plaintiffs seek to remedy or protect the rights they seek to vindicate. In short, Plaintiffs are not before this Court to secure the enactment of a particular map that may no longer be operative in 2024 and may never become operative. Rather, they brought this case to ensure that, unlike elections past, they and other Black Louisianans can vote in congressional districts that do not dilute their votes on account of race. Without a judgment from this court, there is still a substantial risk the Plaintiffs will be forced to vote under a congressional plan that violates the VRA in 2024 and subsequent elections.

Indeed, while broadly asserting that SB 8 has rendered this entire controversy moot because "Black Louisianians can now elect candidates of their choice under" SB 8, Defendants in practice have done little to ensure that Black Louisianians' opportunity to elect a candidate of choice in the rapidly approaching 2024 elections is not illusory. For Plaintiffs' claims to be moot, Defendants' must demonstrate that SB 8 not only cures the VRA violation but also that it can be lawfully implemented—a position they have studiously avoided taking. Even if Defendants were correct that SB 8 cannot be considered a remedial map in the absence of a final judgment of this Court, that would only highlight that Plaintiffs have not yet secured their rights and that this case remains live. Defendants' unwillingness to defend SB 8 here or in *Callais* only underscores that there is still a live controversy over the State's obligations under the VRA.

Defendants' reliance on Plaintiffs' statement that they "do not oppose" SB 8 is also misplaced. Plaintiffs' position presumes that the map can be and will be lawfully put into effect, a presumption the *Callais* litigation and Defendants inaction in defending SB 8 may ultimately disprove. ECF Nos. 346, 347. In these circumstances, the threatened violation of Plaintiffs' voting rights still exists. The *Callais* litigation makes it far from clear whether SB8 will ever be implemented. Indeed, just yesterday, the *Callais* plaintiffs submitted a case management schedule seeking a preliminary injunction hearing in that case to enjoin SB 8. *Callais* v. *Landry*, No. 3:24-cv-00122 (February 19, 2024), ECF No. 43.  The *Callais* plaintiffs expressly seek adoption of a map with only one majority-Black district, which this Court has held would likely violate the VRA.  *Callais* v. *Landry*, No. 3:24-cv-00122 (February 7, 2024), ECF No. 17-1 at 33; *id.* at ECF No. 17-3 at 13. Until Plaintiffs have assurance—through declaratory and injunctive relief issued by this court—that they can and will vote under a map that complies with the VRA, the risk of harm that Plaintiffs have specifically brought this case to remedy continues, and this case remains "live."

Moreover, Defendants' legal maneuvering threatens to deprive Plaintiffs of any forum in which they can protect the rights that this Court and the Fifth Circuit have already recognized. While they insist SB 8 gives Plaintiffs everything they asked for here, Defendants characterize Plaintiffs' attempts to defend the law in their stead as a "desire to act as interlopers" in a case in which, according to Defendants, Plaintiffs "are [not] in any way essential to its resolution." Defs. Opp. To First-Filed Mot., No. 355, pg. 13 at n.5. In other words, as Defendants would have it, Plaintiffs

14

cannot seek further relief in this Court because SB 8 provides a complete remedy, and they should not be permitted to protect that remedy from attack in the *Callais* litigation because there are superficial differences in the factual and legal issues the two cases involve.[3] In effect, Defendants argue that because there is no operative order or judgment in this case, Plaintiffs have lost their ability to protect their rights in this case, and their rights under Section 2 will instead be decided in another case in another forum, potentially without their participation. But the fact that Plaintiffs' rights are not secure in the absence of an order from this Court is the very definition of a live issue. Mootness doctrine was not intended to put plaintiffs in such a bind, and it does not do so here.

## II.    The Public Interest Weighs Against a Finding of Mootness.

The Supreme Court has long recognized the importance of the public interest when assessing whether a defendant's—including a government actor's—voluntary cessation of challenged conduct suffices to moot a case. *See, e.g., W.T. Gant Co.*, 345 U.S. at 632-33 (in cases of voluntary cessation, "a public interest in having the legality

---

[3] Defendants' assertion that the *Callais* case cannot be transferred to this court because it involves constitutional claims that must be heard by a three-judge court is without merit. ECF No. 355 at 3-4. They cite no reason or authority that the case cannot be transferred to this Court and some combination of the current panel recomposed or a new panel convened. They cite no case where the word "shall" in 28 U.S.C. § 2284 has been interpreted to mean that once a panel has been appointed, it is set in stone for all time. On the contrary, there are a number of examples of cases transferred from one three-judge panel to another or where panels have been dissolved when the claims giving rise to panel's authority have been dismissed. *See, e.g.*, *Little* v. *King*, 768 F.Supp.2d 56, 64-69 (D.D.C. 2011) (three-judge-panel transferring to panel in Alabama and dissolving); *Little* v. *Strange*, 796 F. Supp. 2d 1314, 1324-25 (M.D. Ala. 2011) (newly constituted three-judge panel assuming case).

of the [challenged] practices settled … militates against a mootness conclusion"); *see also Tucker* v. *Gaddis*, 40 F.4th 289, 294 (5th Cir. 2022) (Ho, J., concurring) ("[S]uch gamesmanship 'harm[s] both good sense and [ ] individual rights' and 'depriv[es] the citizenry of certainty and clarity in the law' by 'preventing the final resolution of important legal issues.'") (quoting Joseph C. Davis & Nicholas R. Reaves, *The Point Isn't Moot: How Lower Courts Have Blessed Government Abuse of the Voluntary Cessation Doctrine*, 129 Yale L.J. Forum 325, 328 (2019)); *Pierre* v. *Vasquez*, No. 1:20-CV-224-LY, 2022 WL 3219421, at *3 (W.D. Tex. Aug. 9, 2022) (holding that even though the Texas Department of Public Safety made a post-appeal change of policy, the plaintiffs' claims were not moot because "there remains a public interest in determining the legality of Defendants' practices").

Here, the public undoubtedly has an interest in knowing whether the map under which they will elect their representatives to Congress in the rapidly approaching 2024 elections complies with the Voting Rights Act. That question remains squarely before the Court in this case, and Defendants' conspicuous absence from the *Callais* litigation heightens the importance of having it resolved here, where it has already been thoroughly litigated. This Court should deny Defendants' assertion of mootness and resolve the disputed issues that remain before it.

Indeed, based on the thorough record developed over two years of litigation in this case, the Fifth Circuit and this Court have already recognized—in multiple rulings that Plaintiffs are likely to succeed on their Section 2 claim—the public's undeniable interest in voting under a congressional map that does not dilute the votes

of a significant portion of the State's population. Plaintiffs, Black Louisiana activists, educators, faith leaders, and voters, have spent over two years litigating their rights under the VRA because they shared the simple belief that the state's congressional delegation ought to reflect the will of its population. Indeed, they have devoted significant time and resources—at tremendous personal cost—to this litigation precisely because they and one third of the state have been denied an equal opportunity to elect a candidate of their choosing to the U.S. Congress. The creation of a second district in which Black voters have the opportunity to elect their candidates of choice is not only required by Section 2; it is integral to the functioning of the political process in the state of Louisiana—this significant public interest weighs heavily against any finding of mootness.

## **CONCLUSION**

This Court can and should ensure that Plaintiffs are not forced to vote again under a congressional districting plan that denies them an equal opportunity to elect candidates of their choice to the U.S. Congress. Despite the enactment of a map that contains two majority-Black districts, the State has not met its heavy burden of showing that they have completely and irrevocably eradicated the harm this Court and two panels of the Fifth Circuit agreed likely exists: elections occurring under a congressional districting plan that dilutes Black Louisianians' political power by denying them an opportunity to elect candidates of choice in a second congressional district. Because Defendants' legal arguments lack merit and the harm *Robinson*

Plaintiffs alleged in their complaint remains live so long as there is no final judgment in this case, this Court should deny Defendants' motion to dismiss.

DATED:  February 20, 2024                    Respectfully submitted,


By:  /s/ *Tracie L. Washington*              By: /s/ *Kathryn Sadasivan*
Tracie L. Washington                         Stuart Naifeh (admitted *pro hac vice*)
LA. Bar No. 25925                            Kathryn Sadasivan (admitted *pro hac vice*)
Louisiana Justice Institute                  Victoria Wenger (admitted *pro hac vice*)
8004 Belfast Street                          NAACP Legal Defense and Educational
New Orleans, LA 70125                         Fund, Inc.
Tel: (504) 872-9134                          40 Rector Street, 5th Floor
tracie.washington.esq@gmail.com              New York, NY 10006
                                             Tel: (212) 965-2200
                                             snaifeh@naacpldf.org
                                             ksadasivan@naacpldf.org
                                             vwenger@naacpldf.org

*Counsel for NAACP Louisiana*
*State Conference, Dorothy Nairne,*          *Counsel for Robinson Plaintiffs*
*Martha Davis, Clee Earnest Lowe,*
*and Rene Soule*

19

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani (admitted *pro hac vice*)
NAACP Legal Defense and
    Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon (admitted *pro hac vice*)*
Megan C. Keenan (admitted *pro hac vice*)
American Civil Liberties Union
    Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
LA. Bar No. 33382
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

John Adcock
L.A. Bar No. 30372
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Tel: (504) 233-3125
jnadcock@gmail.com

*Additional counsel for Robinson Plaintiffs*

**Practice is limited to federal court.*

Robert A. Atkins (admitted *pro hac vice*)
Yahonnes Cleary (admitted *pro hac vice*)
Jonathan H. Hurwitz (admitted *pro hac vice*)
Amitav Chakraborty (admitted *pro hac vice*)
Adam P. Savitt (admitted *pro hac vice*)
Arielle B. McTootle (admitted *pro hac vice*)
Robert Klein (admitted *pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison
        LLP
1285 Avenue Of The Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com

Sophia Lin Lakin (admitted *pro hac vice*)
Dayton Campbell-Harris (admitted *pro hac vice*)*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg (admitted *pro hac vice*)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu