UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON, EDGAR CAGE, DOROTHY NAIRNE, EDWIN RENE SOULE, ALICE WASHINGTON, CLEE EARNEST LOWE, DAVANTE LEWIS, MARTHA DAVIS, AMBROSE SIMS, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") LOUISIANA STATE CONFERENCE, AND POWER COALITION FOR EQUITY AND JUSTICE,<br>   *Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana.<br><br>   *Defendant*. | Civil Action No. 3:22-cv-00211-SDD-RLB |
| EDWARD GALMON, SR., CIARA HART, NORRIS HENDERSON, TRAMELLE HOWARD,<br>   *Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana.<br><br>   *Defendant*. | Civil Action No. 3:22-cv-00214-SDD-RLB<br><br>***GALMON* PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

1

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

   I.  This action is not moot................................................................................................... 2

   II. At the very least, the Court should stay proceedings until motions pending in the related *Callais* litigation are resolved ..................................................................................... 7

CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                          Page(s)

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ...................................................................................................................6

*Cooper v. Harris*,
    581 U.S. 285 (2017) ...................................................................................................................4

*Entergy Gulf States La. v. La. Generating LLC*,
    No. CV 14-385-SDD-RLB, 2018 WL 2100587 (M.D. La. May 7, 2018) ...............................8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...................................................................................................................5

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987) .....................................................................................................................2

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................................7, 9

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ...................................................................................................................5

*Leyva v. Certified Grocers of Cal., Ltd.*,
    593 F.2d 857 (9th Cir. 1979) .....................................................................................................7

*Los Angeles County v. Davis*,
    440 U.S. 625 (1979) ...................................................................................................................3

*McKnight v. Blanchard*,
    667 F.2d 477 (5th Cir. 1982) .....................................................................................................9

*Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.*,
    No. 1:12-CV-00179-GHD, 2013 WL 30098 (N.D. Miss. Jan. 2, 2013) ...................................9

*Moore v. Ogilvie*,
    394 U.S. 814 (1969) ...................................................................................................................5

*Perez v. Abbott*,
    970 F. Supp. 2d 593 (W.D. Tex. 2013) ..................................................................................5, 6

*In re Ramu Corp.*,
    903 F.2d 312 (5th Cir. 1990) .....................................................................................................7

*Robinson v. Ardoin*,
    605 F. Supp. 3d 759 (M.D. La. 2022) ............................................................................... 3

*Robinson v. Ardoin*,
    86 F.4th 574 (5th Cir. 2023) ............................................................................................. 3

*U.S. Bank v. Royal Indem. Co.*,
    No. Civ.A. 3:02-CV-0853-P, 2002 WL 31114069 (N.D. Tex. Sept. 23, 2002) ................ 9

*West Virginia v. EPA*,
    597 U.S. 697 (2022) .......................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 12(b) ........................................................................................................... 1

Fed. R. Civ. P. 19(a)(1)(B)(ii) ............................................................................................. 8

**INTRODUCTION**

Defendants have filed a motion to dismiss after answering the complaint, which is prohibited by the Federal Rules. *See* Fed. R. Civ. P. 12(b). For this reason alone, the motion should be denied.

The motion also fails on the merits. This action is not moot because Plaintiffs Edward Galmon, Sr., Ciara Hart, Norris Henderson, and Tramelle Howard have not yet received the full relief they prayed for in their complaint, and direct threats to their legal interests remain live. In addition to injunctive and declaratory relief from H.B. 1, Plaintiffs requested that this Court "[h]old hearings, consider briefing and evidence, and *otherwise take actions necessary to order the adoption of a valid congressional plan* that includes a second congressional district in which Black voters have the opportunity to elect their preferred candidates, as required by Section 2 of the Voting Rights Act." Compl. at 26, *Galmon v. Ardoin*, No. 3:22-cv-00214-BAJ-RLB (M.D. La. Mar. 30, 2022) (emphasis added), ECF No. 1. This Court has held a preliminary injunction hearing and considered voluminous briefing and evidence, but—as adverse litigants here and elsewhere continue to trumpet—there is not currently an order in effect that secures Plaintiffs' rights to a second opportunity district. Absent such an order—and this Court's continued jurisdiction—the remedial map that Plaintiffs won here is defenseless from the assault currently underway in the Western District.

In *Callais v. Landry*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La.), twelve plaintiffs have challenged S.B. 8, the congressional map enacted in response to Plaintiffs' success in this litigation, and they have already moved for a preliminary injunction to replace that map with an alternative that lacks the second Black-opportunity district that this Court and the Fifth Circuit have determined is likely required by federal law. *See Callais*, ECF No. 17. Plaintiffs in the present

1

action have moved to intervene in *Callais* to defend S.B. 8, but the *Callais* plaintiffs oppose intervention. *See id.* ECF No. 33. In fact, the *Callais* plaintiffs specifically dispute that Plaintiffs here maintain an interest in the second Black-opportunity district under attack there because "[n]either the Middle District nor the Fifth Circuit ever issued a final order entitling them to this map—or even a map with two majority-minority districts. They have no enforceable judgment." *Id.* ECF No. 33-1 at 20–21. And no other party is available in that action to defend S.B. 8. While Defendants blithely dismiss Plaintiffs' "desire to act as interlopers" in the *Callais* action, ECF No. 355 at 13 n.5, Defendant Secretary of State has not indicated she intends to meaningfully resist the *Callais* plaintiffs' pursuits, and neither the State of Louisiana nor its legislative leadership—each of which was so insistent on defending the Legislature's redistricting prerogatives here—has sought intervention in *Callais* to repel the new challenge.

Accordingly, the controversy that brought Plaintiffs into this Court remains at full boil and Defendants' motion to dismiss should be denied. Plaintiffs' rights under Section 2 of the Voting Rights Act remain under threat, S.B. 8 remains subject to revocation, and—absent this Court's continued exercise of jurisdiction while circumstances regarding Louisiana's congressional map continue to unfold—Plaintiffs' voting rights injury remains capable of repetition while evading review.

**ARGUMENT**

**I.    This action is not moot.**

Defendants bear "the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). To meet that burden, "[t]he defendant must demonstrate that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49,

2

66 (1987) (quotations omitted), and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). This case is the opposite of that: the injury that Plaintiffs suffered in 2022 when they voted in unlawful congressional districts can reasonably be expected to recur—indeed, is virtually guaranteed to recur—if the *Callais* plaintiffs succeed on their as-yet unopposed motion for preliminary injunction. Defendants cannot credibly contend that the Legislature's enactment of S.B. 8 is "irrevocabl[e]" where it is currently under attack and subject to revocation in a collateral challenge.

The rather unusual path this case has followed illustrates Plaintiffs' continuing need for the full relief requested in their complaint, including a prospective order formally declaring Plaintiffs' rights under Section 2. In June 2022, this Court determined that H.B. 1, the congressional map then in effect, likely violated Section 2, preliminarily enjoined that map, and afforded the Legislature an opportunity to enact a compliant map. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 858 (M.D. La. 2022). Because of various stays and delays, the Fifth Circuit did not resolve the appeal of this liability-phase judgment until November 2023, when it confirmed that the district court did not "commit legal error in its conclusions that the Plaintiffs were likely to succeed on their claim that there was a violation of Section 2 of the Voting Rights Act in the Legislature's planned redistricting." *Robinson v. Ardoin*, 86 F.4th 574, 583 (5th Cir. 2023). The Fifth Circuit then vacated this Court's injunction, not to resurrect H.B. 1, but to "allow the Louisiana Legislature time to consider enacting a new congressional redistricting plan." *Id.* This Court subsequently adopted a dual-track pretrial schedule, where first the parties would complete preparations on Plaintiffs' claim that they are entitled to a second Black-opportunity district, and second, in the event the Legislature enacted a new map, the Court would adjudicate any challenges to that map.

3

*See* ECF Nos. 315 ("In a new enacted map is produced, exchanged with Plaintiff's counsel, and filed in the record on or before January 30, 2023, a trial on the merits shall be held commencing on March 25, 2024[.]"), 330 (pretrial scheduling order).

The Legislature's enactment of S.B. 8 on January 22, 2024, followed nine days later by the *Callais* plaintiffs' filing their challenge in the Western District, together threaten to block Plaintiffs from enjoying *any* of the relief they won. Because the Legislature enacted S.B. 8 as a remedial map, final judgment on Plaintiffs' Section 2 rights was deferred for resolution as part of this Court's adjudication of any challenge to S.B. 8. But unless and until the *Callais* plaintiffs' challenge is transferred here, the challenge to S.B. 8 will be adjudicated elsewhere—and, if the *Callais* plaintiffs have their way, without any opportunity for Plaintiffs here to defend their interests. Thus, Plaintiffs maintain an active need for this Court to declare their rights—and Louisiana's obligations—under Section 2, as Plaintiffs requested in their complaint. *See* Compl. at 26. As the Supreme Court has recognized, the race-based districting that *Callais* plaintiffs allege motivated S.B. 8's creation may be justified where a state has "'good reasons' to think that it would transgress [Section 2] if it did *not* draw race-based district lines." *Cooper v. Harris*, 581 U.S. 285, 292–93 (2017). While this Court and the Fifth Circuit have already made clear in the preliminary injunction litigation that these good reasons are present in Louisiana, the *Callais* plaintiffs maintain that no such conclusion may be drawn absent a clear order from this Court. *See Callais*, ECF No. 1 ¶ 10. Because Defendants here have consistently contested Plaintiffs' VRA rights and similarly insist that those rights remain unsettled absent a prospective order from this Court, *see* Defs.' Mot. to Dismiss at 8–9, ECF No. 352-1, this controversy remains live.

Any speculation that the *Callais* plaintiffs may not succeed in blocking a congressional districting configuration with two Black-opportunity districts does not alter the mootness analysis.

4

It is elementary that cases are not moot where the challenged action is capable of repetition yet evading review. *See Moore v. Ogilvie*, 394 U.S. 814, 816 (1969). In *Moore*, the Supreme Court held that a ballot-access dispute brought by independent candidates was not moot, even after the election at issue had concluded. *Id.* The present case is easier yet—Plaintiffs fear that their voting rights will be denied in the 2024 elections, which remain several months away. The capable-of-repetition doctrine applies "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990) (cleaned up). Here, if the *Callais* plaintiffs succeed in enjoining S.B. 8, the time before the 2024 elections will be too short for Plaintiffs to fully litigate their Section 2 rights anew, which creates a reasonable expectation that Plaintiffs will be subject to voting in unlawful districts again this year, just as they did in 2022.

Defendants' mootness argument fails for the additional reason that their own "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Given Defendants' repeated emphasis that this Court has not yet entered a judgment requiring a second Black-opportunity district, *see e.g.*, Defs.' Mot. to Dismiss at 8–9, as well as Defendants' conspicuous refusal to acknowledge the obligations that the VRA imposes on Louisiana's congressional map, Plaintiffs' rights remain vulnerable. As long as the Legislature is free to revert to a congressional map lacking a second Black-opportunity district, there is good reason to believe that will be its intention.

5

Defendants have not identified any analogous redistricting case that was dismissed for mootness. In contrast, *Perez v. Abbott*, 970 F. Supp. 2d 593 (W.D. Tex. 2013), is instructive as to why the case is *not* moot. There, the three-judge court held that plaintiffs' challenges to Texas's 2011 redistricting plans were not mooted by Texas's enactment of new maps in 2013. *Id.* at 596. There, like here, plaintiffs had spent two years challenging Texas's previous configuration as a Section 2 violation, and there, like here, defendants argued that the new enactment rendered the controversy moot because the superseded maps posed no ongoing threat of injury. *See id.* at 598. But in a unanimous opinion, the court held that "Defendants fail to meet their burden of demonstrating that the conduct alleged to violate § 2 and the Constitution with regard to the 2011 plans could not reasonably be expected to recur." *Id.* at 602. The court emphasized that Texas "ha[d] not conceded the illegality of the [challenged maps] and ha[d] steadfastly maintained that its actions did not violate Plaintiffs' rights." *Id.* "Thus, a dispute remains over the legality of the challenged practices, there is no assurance that the conduct will not recur, and Plaintiffs maintain a personal stake in the controversy." *Id.* at 603. Further, the court recognized, even if it "ultimately declines to award injunctive relief, it may find that declaratory relief and equitable relief" are appropriate. *See id.* (citing *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 576 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing 'party.'"); *Blackmoon v. Charles Mix County,* 505 F. Supp. 2d 585, 592–93 (D.S.D. 2007) (holding that plaintiffs' claims against districts no longer in place were not moot)).

Here, Plaintiffs' request for declaratory and equitable relief confirming their rights under Section 2 "is not so implausible that it may be disregarded on the question of jurisdiction." *Chafin*

6

*v. Chafin*, 568 U.S. 165, 177 (2013). Because "even the availability of a partial remedy is sufficient to prevent a case from being moot," *id.* (cleaned up), Defendants' motion should be denied.

**II.     At the very least, the Court should stay proceedings until motions pending in the related *Callais* litigation are resolved.**

This Court need not resolve Defendants' motion at all right now; if it is disinclined to enter judgment for Plaintiffs declaring their Section 2 rights, the Court should stay proceedings until the Western District resolves motions pending in *Callais* that will directly affect those rights—namely, motions to intervene, a motion to transfer, and, if necessary, the motion for preliminary injunction. *See Callais*, ECF Nos. 10, 17, 18. Defendants' motion to dismiss is based on changed circumstances, but it only makes sense for those circumstances to run their course before determining whether dismissal is appropriate.

Trial courts' "wide discretion to control the course of litigation" includes the power to stay proceedings pending the resolution of related litigation. *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

To obtain a stay pending resolution of related litigation, it is not necessary for either the parties or the issues in the two proceedings to be identical. *See id.*; *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (collecting cases recognizing that courts' power to issue a stay pending other proceedings "applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."). Even where two proceedings are not directly intertwined, if it may be difficult to determine the impact of another

7

proceeding, the district court should stay, rather than dismiss, the claims before it until the parallel proceeding has run its course.

Resolution of the motions pending in *Callais* will directly bear on this litigation. Most immediately, if the motion to transfer is granted, then adjudication of S.B. 8's compliance with federal law will pick up here just as the Court and parties have long anticipated. *See* ECF No. 330. If the transfer and intervention motions are denied, the *Callais* plaintiffs' motion for preliminary injunction will be effectively unopposed. And if that injunction is granted, Plaintiffs' Section 2 injury will recur, requiring emergency relief here in advance of the 2024 elections. The record necessary to afford that relief is effectively complete in this Court, and so the most prudent course is to stay these proceedings to preserve that record.

Equitable factors further warrant a stay in lieu of dismissal, including "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation," support a stay. *Entergy Gulf States La. v. La. Generating LLC*, No. CV 14-385-SDD-RLB, 2018 WL 2100587, at *1 (M.D. La. May 7, 2018). There is no possibility that a stay could prejudice Defendants; in fact, a stay appears to be in the Secretary's interests because it would save her from having to maintain contradictory positions simultaneously by defending against opposite claims in the *Callais* action and this one.[1] All Defendants have an interest in the 2024 elections being administered according to a lawful map, and a stay of proceedings here makes that outcome more likely. The absence of a stay, meanwhile, would compound the irreparable harm that Plaintiffs already suffered in 2022 when they voted in districts drawn in violation of Section 2, which is

---

[1] Indeed, the *Callais* plaintiffs may even be necessary parties to this litigation because the resolution of their Western District action and this one could subject the Secretary to "inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

8

precisely what the *Callais* plaintiffs have asked a sister court to order for 2024. And staying this action will save judicial resources by enabling Plaintiffs to obtain emergency relief if the *Callais* action enjoins S.B. 8, because the full record—including 244 exhibits and testimony from dozens of fact and expert witnesses during the preliminary injunction hearing, plus the additional discovery disclosed in preparation for a remedial hearing, and then for trial—will not need to be duplicated.

Furthermore, the stay will be limited in duration or scope. Plaintiffs seek a pause only until the resolution of motions that are currently pending in *Callais*, which could happen in a matter of days, or no more than a few months. The *Callais* plaintiffs have asked the Western District to rule on the intervention and transfer motions now without awaiting further briefing, and they have proposed—without opposition from the Secretary—a combined preliminary injunction and final merits hearing to conclude by March 26, 2024, or if a remedial phase is necessary, by the end of April 2024. *See Callais*, ECF No. 43. *Contra McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (vacating stay that "may last for seven years or longer"). Thus, a modest stay of proceedings pending motions that are already on their way to resolution is "framed in its inception" to have "reasonable limits." *Landis*, 299 U.S. at 257. Indeed, courts frequently grant stays pending the resolution of a motion to transfer because of the obvious benefits for judicial economy. *See, e.g.*, *Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.*, No. 1:12-CV-00179-GHD, 2013 WL 30098, at *2 (N.D. Miss. Jan. 2, 2013) (granting motion to stay proceedings, including the Court's consideration of a pending remand motion, pending transfer decision); *U.S. Bank v. Royal Indem. Co.*, No. Civ.A. 3:02-CV-0853-P, 2002 WL 31114069, at *2 (N.D. Tex. Sept. 23, 2002) (staying briefing on motion to dismiss and all proceedings pending resolution of motion to transfer and

consolidate). These considerations all counsel in favor of a modest stay until the motions pending in *Callais* are resolved.

## CONCLUSION

The Court should deny Defendants' motion to dismiss.

Date: February 20, 2024

Respectfully submitted,

By: */s/Abha Khanna*
    Abha Khanna (admitted *pro hac vice*)
    ELIAS LAW GROUP LLP
    1700 Seventh Ave. Suite 2100
    Seattle, Washington 98101
    (206) 656-0177
    akhanna@elias.law

J. E. Cullens, Jr.
Andrée Matherne Cullens
S. Layne Lee
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. One
Baton Rouge, LA 70810
(225) 236-3636

    Lalitha Madduri (admitted *pro hac vice*)
    Daniel Cohen (admitted *pro hac vice*)
    Qizhou Ge (admitted *pro hac vice*)
    Jacob D. Shelly (admitted *pro hac vice*)
    ELIAS LAW GROUP LLP
    250 Massachusetts Ave, NW Suite 400
    Washington, D.C. 20001
    (202) 968-4490

    *Counsel for Galmon Plaintiffs*