**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

PRESS ROBINSON, ET AL.

VERSUS

KYLE ARDOIN

CIVIL ACTION

22-CV-211-SDD-SDJ

**RULING**

This matter comes before the Court on the *Motion to Dismiss*[1] filed by Intervenor-Defendant, the State of Louisiana (the "State"), and Nancy Landry, in her official capacity as Louisiana Secretary of State (collectively, the "Defendants"). The Robinson and Galmon Plaintiffs (collectively, the "Plaintiffs") filed *Oppositions*,[2] to which Defendants filed a *Reply*.[3] For the reasons discussed below, Defendants' Motion will be granted.

**I.    FACTS AND PROCEDURAL BACKGROUND**

In March 2022, Plaintiffs brought suit against the Secretary of State challenging House Bill 1 ("H.B. 1"), which established district boundaries for Louisiana's 2022 congressional map.[4] The State of Louisiana, through the Attorney General, intervened in the suit.[5] The Plaintiffs claimed that that the 2022 congressional map provided less opportunity for Black Louisianans to participate in the political process and elect the candidates of their choice to Congress. The Plaintiffs claimed that the 2022 congressional map diluted the Black vote in violation of Section 2 of the Voting Rights Act (the "VRA").[6] They sought declaratory and injunctive relief, requesting that this Court (1) declare that

---

[1] Rec. Doc. 352.
[2] Rec. Docs. 357 and 358.
[3] Rec. Doc. 360.
[4] Rec. Doc. 1.
[5] Rec. Doc. 64.
[6] Rec. Doc. 1, p. 1.

the 2022 congressional map violates Section 2 of the VRA, (2) issue a preliminary and permanent injunction enjoining the Defendants from enforcing the boundaries of the congressional districts as adopted in the 2022 congressional map, and (3) order the adoption of a valid congressional redistricting plan for Louisiana that includes two districts in which Black voters have an opportunity to elect the candidates of their choice.[7] In June 2022, this Court found that Plaintiffs were substantially likely to succeed on the merits of their claims and granted a preliminary injunction enjoining the Defendants from conducting elections under the H.B. 1 map.[8] However, the Fifth Circuit vacated the preliminary injunction and remanded proceedings to this Court. The Fifth Circuit instructed that the Legislature have an opportunity to adopt a new districting plan, and if a new plan became effective, this plan could be subject to new challenges.[9] But if the Legislature failed to adopt a new plan, this Court was instructed to conduct a merits trial to decide the validity of H.B. 1 and "if necessary to adopt a different districting plan for the 2024 elections."[10] On November 27, 2023, the parties held a status conference before this Court. At the conference, Plaintiffs moved to convert the remedial hearing on the preliminary injunction set to begin February 5, 2024, to a trial on the merits.[11] Pursuant to the Fifth Circuit's instruction, the Court ordered that if the Defendants failed to produce a new enacted map on or before January 30, 2024, this matter would proceed to a trial on the merits on February 5th, but if a new enacted map was produced, a trial would

---

[7] *Id* at pp. 51–53.
[8] *Robinson v. Ardoin,* 605 F. Supp. 3d 759, 853 and 856 (M.D. La.), cert. granted before judgment, 142 S. Ct. 2892 (2022), and cert. dismissed as improvidently granted, 143 S. Ct. 2654 (2023), and vacated and remanded, 86 F.4th 574 (5th Cir. 2023).
[9] *Robinson v. Ardoin,* 86 F.4th 574, 601 (5th Cir. 2023).
[10] *Id* at 601–602.
[11] Rec. Doc. 315.

commence on March 25th.[12]   On January 22, 2024, Senate Bill 8 ("S.B. 8"), which provides for the enactment of a new congressional map containing two majority-Black districts, was enacted.[13] The State asserted that the enactment of S.B. 8 makes this matter moot. Thereafter, the Galmon and Robinson Plaintiffs informed the Court that they did not oppose S.B. 8, but contended this case is not moot.[14] Specifically, Plaintiffs argued that the case is not moot primarily because of a pending case, *Callais v. Landry, et al.* in the Western District of Louisiana, which presents a constitutional challenge to S.B. 8 .[15] Defendants move to dismiss this case arguing that S.B. 8 renders this case moot. The Plaintiffs filed Oppositions, and in turn Defendants filed a Reply.[16]

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[17] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[18] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[19]

---

[12] *Id*.
[13] Rec. Doc. 342.
[14] Rec. Docs. 346, p. 1 and 347, p. 2.
[15] *Callais v. Landry*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La).
[16] Rec. Docs. 357, 358, and 360.
[17] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[18] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[19] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[20] A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"[21] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[23] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[24] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[25]

### B. Mootness

Article III restricts this Court's jurisdiction to cases and controversies. The Court is permitted "to adjudicate only live disputes."[26] If "the parties lack a legally cognizable interest in the outcome,"[27] the case is moot. Meaning, "'[t]here must be a case or controversy through all stages of a case'—not just when a suit comes *into* existence but

---

[20] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted).
[22] *Id.*
[23] *Id.*
[24] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[25] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[26] *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020).
[27] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted)

*throughout* its existence."[28] Thus, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."[29]

There is an exception to mootness, however, that occurs when a defendant voluntary ceases the challenged practice. "'[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"[30] "In general, a defendant's voluntary conduct moots a case only if 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"[31] But, government entities bear a "'a lighter burden'. . . in proving that the challenged conduct will not recur once the suit is dismissed as moot."[32] The Court presumes, that "state actors, as public representatives, act in good faith."[33] Consequently, unless there is evidence to the contrary, the Court assumes "'that formally announced changes to official government policy are not mere litigation posturing.'"[34] Moreover, the government's ability to "reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception."[35]

Defendants move to dismiss this case because S.B. 8 has superseded H.B. 1 and Plaintiffs' lack of opposition to S.B. 8 show that an actual controversy no longer exists. Moreover, Defendants argue that the case should be dismissed because the Legislature

---

[28] *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (emphasis added in original) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (explaining that jurisdiction must "subsist[ ] through all stages of federal judicial proceedings").

[29] *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).

[30] *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000)).

[31] *Id* (quoting *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), aff'd sub nom. *Sossamon v. Texas*, 563 U.S. 277 (2011)).

[32] *Id* (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)).

[33] *Id* (internal citations omitted).

[34] *Id* (quoting *Sossamon*, 560 F.3d at 325).

[35] *Id* (internal citations omitted).

voluntarily discontinued the challenged practice and as government actors they should be afforded a presumption of good faith when carrying out this voluntary cessation.[36]

Plaintiffs argue that regardless of S.B. 8's enactment, the voluntary cessation doctrine does not deprive this Court of jurisdiction because Defendants' "words and actions demonstrate that the likelihood of recurrence is high."[37] Plaintiffs argue these actions defeat the presumption of good faith because (1) Defendants have not provided a controlling statement of their future intentions, (2) the timing of S.B. 8's enactment is suspicious, and (3) Defendants continue to defend H.B. 1.[38] Further, the Robinson Plaintiffs rely on *Perez v. Perry*, in which the Western District of Texas considered these similar factors and claim *Perez* is analogous.[39]

In *Perez*, a group of Texas voters sued the state claiming the state's redistricting plans violated the VRA. But, while the case was pending the Texas legislature voluntarily enacted a new set of maps. Thereafter, the state of Texas filed a motion to dismiss the case. The Western District of Texas held that the state's voluntary cessation of allegedly illegal conduct did not deprive the court from hearing the case because the defendants had not carried its burden to show that it would not resume its unlawful conduct once the case was dismissed.[40] Plaintiffs argue, that as in *Perez*, Defendants here have also failed

---

[36] Rec. Doc. 352-1, pp. 5–8.

[37] Rec. Doc. 357, p. 14; The Galmon Plaintiffs argue that the voluntary cessation of the challenged practice herein does not make the case moot because Defendants have refused to acknowledge "the obligations that the VRA imposes on Louisiana's congressional map" and therefore their "rights remain vulnerable." The Galmon Plaintiffs, however, did not address the presumption of good faith placed on state actors. Rec. Doc 358, p. 9.

[38] Plaintiffs cite *Speech First, Inc v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020), in which "[t]he Fifth Circuit has recently held that the voluntary cessation doctrine applies, even for government actors, where there is (1) an absence of a controlling statement of future intention; (2) the timing of a mooting change is suspicious; and (3) where the Defendant continues its defense of the challenged policies." Rec. Doc. 357, p. 16.

[39] *Id* at pp. 13–15.

[40] *Perez v. Perry*, 26 F. Supp. 3d 612, 622 (W.D. Tex. 2014).

to show they can satisfy this burden.[41] Defendants have not asserted H.B. 1 is illegal and the State likely enacted S.B. 8 in part to end this litigation; these are facts similar to the state's actions in *Perez*. But, there are also meaningful distinctions between the two cases, leading the Court to find that the Defendants have met their burden to show the State will not resume any unlawful conduct if this Court dismisses the case.

First, in *Perez*, the new redistricting plans incorporated "identical portions" from the previous plans that were alleged to be illegal.[42] Here, Defendants assert that S.B. 8 "utterly eradicates" the alleged defect with H.B. 1 by providing two additional majority-Black districts to the congressional maps and there is no evidence suggesting S.B. 8 was heavily derived from H.B. 1.[43] Furthermore, the Plaintiffs in *Perez* complained that the "Legislature engaged in similar vote dilution conduct" with regard to the new redistricting plans.[44] "Thus, there [was] evidence that the Legislature ha[d] already engaged in both identical and substantially similar conduct."[45] Here, Plaintiffs argue that "not only have the Defendants continued to defend the lawfulness of [H.B. 1]; [Defendants] have wholly failed to defend [S.B. 8]."[46] But, Defendants counter that their intention to defend S.B. 8 is made clear with the State Attorney General's intervention in *Callais* so that the State can defend the legality of S.B. 8.[47]

The *Callais* case has been tried and S.B. 8 was vigorously defended by the State as Intervenor. The Court finds that the presumption of good faith applies here and

---

[41] Rec. Doc. 357, p. 14.
[42] *Perez*, 26 F. Supp. 2d at 621.
[43] Rec. Doc. 360, p. 3.
[44] *Perez*, 26 F. Supp. 2d at 621.
[45] *Id*.
[46] Rec. Doc. 357, p. 17
[47] Rec. Doc. 360, pp. 3–4.

Defendants have satisfied their burden in showing that the alleged illegal conduct is unlikely to recur.

### C. Implication of *Callais* Litigation

The Robinson Plaintiffs also argue against a finding of mootness because even if there is no risk of recurrence, the allegations set forth in *Callais* "[make] it far from clear whether [S.B. 8] will ever be implemented" and therefore, Plaintiffs need "declaratory and injunctive relief."[48]

Addressing the need for injunctive relief first, the Fifth Circuit has explained that the standard for seeking injunctive relief "requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the [C]ourt's granting of such equitable relief. Plaintiffs must demonstrate that they face a palpable present or future harm, not harm that is 'conjectural or hypothetical.'"[49] "Past wrongs can be considered, however, as evidence of an actual threat of repeated injury."[50]

Plaintiffs' argument for injunctive relief is premised on the hypothetical circumstance that the *Callais* plaintiffs will prevail in their suit and the Western District of Louisiana will hold S.B. 8 unconstitutional. However, with the state's enactment of S.B. 8, there is currently no injury-in-fact. The Court cannot presume the outcome of a case outside of its jurisdiction to reach a particular conclusion for Plaintiffs.

With respect to Plaintiffs' request for declaratory relief, Defendants argue that if the Court were to provide an opinion on such relief, it would constitute an impermissible

---

[48] Rec. Doc. 357, p. 19.
[49] *King v. Our Lady of the Lake Hosp., Inc.,* 455 F. Supp. 3d 249, 259–60 (M.D. La. 2020) (citing *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015) and *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 n. 23 (5th Cir. 1998)).
[50] *Id* at 260 (citing *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992)).

advisory opinion because "the alleged wrong" of the "absence of two majority-minority districts" has been eliminated through S.B. 8.[51] "The Declaratory Judgment Act provides that, 'in a case of actual controversy within its jurisdiction. . .any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"[52] The Court must ask "(1) 'whether an 'actual controversy' exists between the parties' in the case; (2) whether it has authority to grant declaratory relief; and (3) whether 'to exercise its broad discretion to decide or dismiss a declaratory judgment action.'"[53] Moreover, a declaratory judgment "cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts. . . ."[54] "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[55]

In the Complaint, Plaintiffs request that the Court "[d]eclare [that] the 2022 congressional map, [also known as H.B. 1], violates Section 2 of the Voting Rights Act."[56] But, Defendants state that S.B. 8 has "repeal[ed] H.B. 1."[57] Consequently, given this repeal, the Court finds that no substantial controversy remains to warrant a declaratory judgment. Accordingly, Plaintiffs' alleged need for injunctive and declaratory relief does not prevent mootness.

---

[51] Rec. Doc. 360, p. 6.
[52] *Donelon v. Altman*, 2021 WL 4205654, at *3 (M.D. La. Sept. 15, 2021) (citing *Frye v. Anadarko Petroleum Corp.,* 953 F.3d 285, 293–94 (5th Cir. 2019)).
[53] *Id* (citing *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).
[54] *Id* (citing *Vantage Trailers, Inc. v. Beall Corp*., 567 F.3d 745, 748 (5th Cir. 2009)).
[55] *Id* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).
[56] Rec. Doc. 1, p. 52.
[57] Rec. Doc. 360, p. 4.

The Galmon Plaintiffs also argue against dismissal because the capable-of-repetition doctrine applies to this case.[58] The Supreme Court has held that this doctrine applies in "exceptional situations" where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."[59] The Galmon Plaintiffs state, that "if the *Callais* plaintiffs succeed in enjoining S.B. 8, the time before the 2024 elections will be too short for Plaintiffs to fully litigate their Section 2 rights anew, which creates a reasonable expectation that Plaintiffs will be subject to voting in unlawful districts again this year, just as they did in 2022."[60] The argument fails on two grounds. First, Plaintiffs' argument seems to suggest that the action at issue is S.B. 8 and the *Callais* Plaintiffs' challenge of it. But, H.B. 1, not S.B. 8, is the challenged action before this Court. And in a separate ruling this Court declined to apply the First-Filed Rule, which would have allowed the Court to consider the allegations brought forth in *Callais* and decide the constitutionality of S.B. 8.[61]

Second, there is not a reasonable expectation that the Plaintiffs will be subject to the congressional map set forth in H.B. 1 again. As noted earlier, Defendants have intervened in *Callais* in order to defend S.B. 8's enactment, have asserted H.B. 1 is repealed, and there is no evidence suggesting the enjoinment of S.B. 8 would result in H.B. 1's reenactment.

---

[58] Rec. Doc. 358, p. 9.
[59] *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 481 (1990) (internal citations and quotations omitted).
[60] Rec. Doc. 358, p. 9.
[61] Rec. Doc. 370.

### D.  Public's Interest in Litigation

Finally, the Robinson Plaintiffs argue against dismissal because of "the public's undeniable interest in voting under a congressional map that does not dilute the votes of a significant portion of the State's population."[62] Plaintiffs rely on *United States v. W.T. Grant Co.*, and quote the Supreme Court, stating "a public interest in having the legality of the [challenged] practices settled…mitigates against a mootness conclusion."[63] However, this quote does not take into account the Supreme Court's complete holding on this issue. While the Supreme Court held that the public's interest in having practices settled militates against a mootness conclusion, the Supreme Court reached this conclusion in the context of a voluntary cessation of the alleged illegal conduct at issue. The Supreme Court explained that when there is a voluntary cessation of allegedly illegal conduct, a case may not be moot because "[t]he defendant is free to return to his old ways."[64] This freedom "together with" the public's interest in resolving a matter is what militates against a mootness conclusion.[65] The Supreme Court then continues to state, "[t]he case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'"[66] This Court has found that the Defendants demonstrated that there is not a reasonable expectation for the alleged wrong to be repeated. Accordingly, *W.T. Grant Co.* is applicable, but does not persuade the Court against a finding of mootness.

---

[62] Rec. Doc. 357, pp. 21–22.
[63] *Id* at pp. 20–21.
[64] *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (internal citation omitted).
[65] *Id*.
[66] *Id* at 633 (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)).

Plaintiffs also rely on *Pierre v. Vazquez,* stating "that [in this case] even though the Texas Department of Public Safety made a post-appeal change of policy, the plaintiff['s] claims were not moot because 'there remain[ed] a public interest in determining the legality of Defendants' practices.'"[67] But, *Pierre* is distinguishable from this case. The plaintiff brought procedural due process claims against the Department of Public Safety ("DPS") after the Sex Offender Registration Bureau, a division of DPS, notified him that he was a "extrajurisdictional registrant" and thereby requiring him to register as a sex offender under federal law.[68] The plaintiff argued that this was a violation of both federal and state law because he was not provided notice or an opportunity to dispute his sex-offender determination. During the litigation, DPS ceased using the extrajurisdictional registrant policy, and thereafter argued the policy change rendered plaintiff's claims moot.[69]

The Western District of Texas found the plaintiff's request for injunctive and declaratory relief for "the original extrajurisdictional-registrant" determination moot because of the change in policy.[70] But, the Court declined to find the plaintiff's due process claims moot because (1) the policy change did not address the plaintiff's claims that the defendants failed to provide the plaintiff with notice or an opportunity to be heard in violation of his constitutional rights, (2) "th[e] type of alleged procedural-due-process violation ha[d] recurred in multiple cases," and (3) it was not "'absolutely clear' that [the] [d]efendants [would] provide adequate due process to those similarly situated to [the

---

[67] Rec. Doc. 357, p. 21.
[68] *Pierre v. Vasquez*, 2022 WL 3219421, at *1 (W.D. Tex. Aug. 9, 2022).
[69] *Id* at *2–3.
[70] *Id* at *4.

plaintiff]."[71] The Western District of Texas found that the defendants failed to point to "any policy change that would ensure procedural due process and demonstrate adherence to previous Fifth Circuit decisions. . . ."[72] Therefore, the court declined to find the case moot because of the procedure due process issues that remained in the defendants' practices even after the policy change.

The circumstances in *Pierre* are distinct from those in this case. First, this Court has explained that this Court must presume as government actors, Defendants are acting in good faith and Defendants are held to a more lenient standard than the "absolutely clear" standard usually used to analyze voluntary cessations. Second, with the repeal of H.B. 1 and the enactment of a new congressional map with two majority-Black districts, the Court finds that no issues remain.

In conclusion, the Court finds that with the voluntary enactment of S.B. 8 a live substantial controversy no longer exists and Defendants have sufficiently shown that the challenged conduct will not recur following the dismissal of this action. In conclusion, the Court will grant Defendants' motion.[73]

## III.   CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion to Dismiss[74] is hereby **GRANTED.** The *Motion in Limine to Exclude the Proposed Expert Testimony of David A.*

---

[71] *Id.*

[72] *Id.*

[73] In their response in Opposition to Defendants' motion, the Galmon Plaintiffs request that the Court stay proceedings in this matter pending the resolution of the motion to intervene and to transfer *Callais* to this Court in *Callais, et al. v. Landry*. Rec. Doc. 358, p. 13. At the time of the writing of this *Ruling*, the Robinson and Galmon Plaintiffs have successfully intervened in *Callais*, and the Robinson Plaintiffs withdrew their motion to transfer. Accordingly, the request to stay these proceedings are denied as moot.

[74] Rec. Doc. 352.

*Swanson, Ph.D.*[75] and the *Motion in Limine to Exclude the Proposed Expert Testimony the Proposed Expert Testimony of Dr. Douglas Johnson*[76] are **DENIED AS MOOT**.


**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  25th  Day, April, 2024.


_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[75] Rec. Doc. 339.
[76] Rec. Doc. 340.