UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PRESS ROBINSON, EDGAR CAGE, DOROTHY NAIRNE, EDWIN RENE SOULE, ALICE WASHINGTON, CLEE EARNEST LOWE, DAVANTE LEWIS, MARTHA DAVIS, AMBROSE SIMS, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") LOUISIANA STATE CONFERENCE, AND POWER COALITION FOR EQUITY AND JUSTICE,<br>        *Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana,<br><br>        *Defendant*. | Civil Action No. 3:22-cv-00211-SDD-RLB |
| EDWARD GALMON, SR., CIARA HART, NORRIS HENDERSON, TRAMELLE HOWARD,<br>        *Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana,<br><br>        *Defendant*. | Civil Action No. 3:22-cv-00214-SDD-RLB |

**<u>*GALMON* PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER DISMISSAL RULING AND TO SCHEDULE REMEDIAL PROCEEDINGS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................. 1
LEGAL STANDARD.......................................................................................................................... 2
ARGUMENT ........................................................................................................................................ 3
I.  This action is not moot........................................................................................................... 3
   A.  The invalidation of S.B. 8 reanimates Plaintiffs' injury-in-fact. ....................... 3
   B.  This Court's order is inconsistent with subsequent evidence. ........................... 4
      1.  Defendants did not vigorously defend S.B. 8. ............................................... 4
      2.  *Galmon* Plaintiffs have no other forum in which to vindicate their interests. .............. 6
II.  The Court should promptly resume remedial proceedings. ....................................... 7
CONCLUSION................................................................................................................................... 11

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e), Edward Galmon, Sr., Ciara Hart, Norris Henderson, and Tramelle Howard ("*Galmon* Plaintiffs") respectfully move for reconsideration of this Court's April 25, 2024, ruling granting Defendants' Motion to Dismiss, ECF No. 371 ("Ruling"). This Court granted Defendants' motion because, at the time, the Court determined that Plaintiffs' injury was rendered moot by the Legislature's enactment of Senate Bill 8 ("S.B. 8"), a remedial congressional districting plan that temporarily cured Plaintiffs' Section 2 injury. Ruling at 8 (holding that, "with the state's enactment of S.B. 8, there is currently no injury-in-fact"). Although litigants in the parallel *Callais v. Landry* action were actively seeking to enjoin S.B. 8, this Court declined to entertain "the hypothetical circumstance that the *Callais* plaintiffs will prevail in their suit and the Western District of Louisiana will hold S.B. 8 unconstitutional." *Id.* Now, however, the *Callais* plaintiffs have succeeded, and the Western District has permanently enjoined the operation of S.B. 8. *See* Inj. & Reasons for J., *Callais v. Landry*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La. Apr. 30, 2024), ECF No. 198 ("Inj."). Thus, the outcome of the *Callais* litigation is no longer hypothetical, and S.B. 8 no longer remedies—or moots—Plaintiffs' demand for a Section 2-compliant districting plan. Events in this case have returned to where they have left off twice before: with no lawful map in place, and an election approaching. Especially because they have been prohibited from defending their interests as parties in the *Callais* action, *Galmon* Plaintiffs are entitled to prompt remedial proceedings in this Court to ensure that Louisiana's 2024 congressional elections comply with federal law.

1

*Galmon* Plaintiffs respectfully request that this Court reconsider its order granting Defendants' motion to dismiss and schedule the expeditious adoption of a remedial map.[1]

## LEGAL STANDARD

Where, as here, a motion for reconsideration is filed within 28 days of the challenged order, Rule 59(e) governs. *Blueskygreenland Env't Sols., LLC v. Rentar Env't Sols., Inc.*, No. 4:11-CV-01745, 2012 WL 423399, at *2 (S.D. Tex. Feb. 8, 2012). A Rule 59(e) motion to alter or amend the judgment is appropriate "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020) (quoting *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (per curiam)). A court also has discretion to consider materials that were not available for submission at the time of the initial decision. *Abundiz v. Explorer Pipeline Co.*, No. CIV.3:00-CV-2029-H, 2002 WL 2030876, at *1 (N.D. Tex. Sept. 3, 2002). A motion to reconsider based on newly available evidence is appropriate when "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Torres*, 972 F.3d at 663 (quoting *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 534 (5th Cir. 2015)).

---

[1] Should the Court reconsider the grant of Defendants' motion to dismiss, then *Galmon* Plaintiffs respectfully request that the Court similarly reconsider its denial of the motions in limine to exclude the proposed expert testimony of Dr. David A. Swanson and Dr. Douglas Johnson. The motions in limine were denied as moot exclusively because of the order granting the motion to dismiss. *See* Ruling at 13–14.

2

**ARGUMENT**

I. **This action is not moot.**

    A. **The invalidation of S.B. 8 reanimates Plaintiffs' injury-in-fact.**

This Court's dismissal hinged on the anticipated operation of S.B. 8 to cure Plaintiffs' Section 2 injury. *See* Ruling at 8 ("[W]ith the State's enactment of S.B. 8, there is currently no injury-in-fact."). Because that remedy is no longer in place, Plaintiffs' injury has returned in full force. The Western District determined that District 6 of S.B. 8 is unconstitutional and permanently enjoined the State of Louisiana "from using SB8's map of congressional districts for any election." Inj. at 59. Just as other courts have done in similar circumstances, this Court should reconsider its prior mootness determination in light of this new evidence. *See, e.g.*, *Ellerbrook v. City of Lubbock*, 465 F. App'x 324, 338 (5th Cir. 2012) (reversing district court's mootness determination as a result of subsequent court decision); *Brooke v. Elite Hosp., LLC*, No. 4:15-CV-0425-HRH, 2016 WL 3213223, at *3 (D. Ariz. June 10, 2016) (reversing prior mootness determination based on new evidence that was not previously available); *Alexsam, Inc. v. Simon Prop. Grp., L.P.*, No. 2:19-CV-331-RWS-RSP, 2022 WL 17727749, at *2 (E.D. Tex. July 14, 2022) (collecting cases where claims were rendered no longer moot by subsequent events), *R. & R. adopted*, No. 2:19-CV-331-RWS-RSP, 2022 WL 17727680 (E.D. Tex. Aug. 22, 2022). Because Plaintiffs again "face a palpable present or future harm," Ruling at 8, they are again entitled to injunctive relief.

Plaintiffs' request for declaratory relief is similarly no longer moot. Contrary to the concern that a declaratory judgment "would constitute an impermissible advisory opinion because 'the alleged wrong' of the 'absence of two majority-minority districts' has been eliminated through S.B. 8," Ruling at 8–9 (quoting Defs.' Reply in Supp. of Mot. to Dismiss at 5, ECF No. 360), the absence of two majority-minority districts has returned. Defendants can no longer bear their burden to "demonstrate that it is *absolutely clear* that the allegedly wrongful behavior could not

3

reasonably be expected to recur," *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (quotation omitted), or that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). To the contrary, the wrongful behavior—the absence of a congressional map with the two required Black-opportunity districts required by federal law—*is now recurring*. *Galmon* Plaintiffs' complaint prayed that this Court would "take actions necessary to order the adoption of a valid congressional plan that includes a second congressional district in which Black voters have the opportunity to elect their preferred candidates, as required by Section 2 of the Voting Rights Act." Compl. at 26, *Galmon v. Ardoin*, No. 3:22-cv-00214-BAJ-RLB (M.D. La. Mar. 30, 2022), ECF No. 1; *see also* Ruling at 2 (noting that Plaintiffs sought relief "order[ing] the adoption of a valid congressional redistricting plan for Louisiana that includes two districts in which Black voters have an opportunity to elect the candidates of their choice"). Over two years later, they maintain an urgent need for this relief.

### B. This Court's order is inconsistent with subsequent evidence.

This Court's dismissal articulated additional factual assumptions that were disproven by subsequent evidence. Namely, the State did *not* provide a vigorous defense of S.B. 8 in *Callais*, and *Galmon* Plaintiffs were *denied* intervention. Accordingly, the State forfeited any presumption of good faith that could have rendered this action moot, and *Galmon* Plaintiffs must rely exclusively on this Court to supply their remedy.

### 1. Defendants did not vigorously defend S.B. 8.

This Court's Ruling credited the State for "vigorously defend[ing]" S.B. 8 in the *Callais* litigation, which the Court found supported "the presumption of good faith" satisfying Defendants' "burden in showing that the alleged illegal conduct is unlikely to recur." Ruling at 7–8. Regretfully, neither of the State Defendants in the Western District action supplied a vigorous defense. The

4

Secretary of State declined to mount *any* defense of S.B. 8—in stark contrast to her all-out defense of H.B. 1 in this litigation—stating that she took "no position" on the merits of Plaintiffs' motion for preliminary injunction and calling no witnesses at trial. Sec'y of State's Resp. to Pls.' Mot. for Prelim. Inj. at 1, *Callais*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La. Feb. 27, 2024), ECF No. 82; Minutes for Proceedings, *Callais*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La. Apr. 10, 2024), ECF No. 178. The State of Louisiana, meanwhile, presented approximately ten minutes of video excerpts from the legislative record at trial and then similarly rested its case without calling any witnesses. Minutes for Proceedings, *Callais*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La. Apr. 10, 2024), ECF No. 178. Notably, both the Secretary and the State have refused to accept this Court's conclusion that H.B. 1 likely violated Section 2, a fact that *Callais* Plaintiffs—and the Western District—emphasized to criticize the Legislature's decision to enact S.B. 8. *See* Pls.' Post-Trial Br. at 2, *Callais*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La. Apr. 17, 2024), ECF No. 190; Inj. at 13 (noting that Attorney General Murrill told legislators that H.B. 1 "was a defensible and lawful map").

Thus, the State Defendants proved undeserving of the presumption of good faith that this Court held defeated the "voluntary cessation" exception to mootness. *See* Ruling at 6 n.37, 7–8. It is now all-the-more clear that the State of Louisiana lacks any genuine commitment to a Section 2-compliant congressional map with a second minority-opportunity district, and thus the State's temporary, "voluntary cessation of a challenged practice" by adopting S.B. 8 "does not deprive a federal court of its power to determine the legality of the [challenged] practice." *Friends of the*

5

*Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).[2]

### 2. *Galmon* Plaintiffs have no other forum in which to vindicate their interests.

This Court was also mistaken in its belief that "the Robinson and Galmon Plaintiffs have successfully intervened in *Callais*," which it offered as its basis for denying *Galmon* Plaintiffs' request for a stay pending resolution of their attempted intervention in *Callais*. Ruling at 13 n.73. In fact, *Galmon* Plaintiffs' every effort to participate in the *Callais* proceedings was rejected. *See* Order on Mots. to Intervene, *Callais*, No. 3:24-cv-00122-DCJ-CES-RRS (W.D. La. Feb. 26, 2024), ECF No. 79 (denying intervention to *Galmon* Plaintiffs); Order on Mots. to Reconsider, *Callais*, No. 3:24-cv-00122-DCJ-CES-RRS, ECF No. 114 (W.D. La. Mar. 15, 2024) (denying *Galmon* Plaintiffs' motion to reconsider denial of intervention); Order, *Callais v. Landry*, No. 24-30177 (5th Cir. Mar. 26, 2024), ECF No. 40-2 (denying *Galmon* Plaintiffs' motion to expedite the appeal of their denial of intervention).

Accordingly, this case remains *Galmon* Plaintiffs' only substantive opportunity to vindicate voting rights guaranteed to them by federal law. Like their efforts to intervene in *Callais*, *Galmon* Plaintiffs' efforts to secure relief in this action have been foiled at every turn even though *no judge or justice* has publicly doubted this Court's conclusion that *Galmon* Plaintiffs were likely to prevail on the merits of their claim—brought over two years ago—that Section 2 requires a second Black-opportunity congressional district in Louisiana. The Supreme Court's stay of this Court's injunction "[o]n the eve of the remedial hearing," Ruling on Mot. to Cancel Hearing at 2, ECF No. 267, relegated *Galmon* Plaintiffs to voting in the 2022 elections from unlawful districts.

---

[2] Even assuming good faith on the part of State Defendants, it is now indisputable that their efforts in *Callais* failed to prevent the concrete and particularized injury that *Galmon* Plaintiffs again suffer.

6

The Supreme Court ordered that stay pending resolution of another Section 2 case from Alabama, which Defendants here insisted "present[ed] the same question" as this case. Pet'rs' Emergency Appl. for Admin. Stay, Stay Pending Appeal, & Pet. for Writ of Cert. Before J. at 4, *Ardoin v. Robinson*, No. 21A814 (U.S. June 17, 2022). On June 8, 2023, the Supreme Court affirmed the finding of a likely Section 2 violation in that case, *Allen v. Milligan*, 599 U.S. 1, 42 (2023), and accordingly vacated the stay of this case and dismissed the writ of certiorari as improvidently granted, *Ardoin v. Robinson*, 143 S. Ct. 2654 (2023) (mem.), which should have cleared the path for Plaintiffs to obtain relief for the next election. But remedial proceedings were paused again in September 2023 for reasons unrelated to the merits, *In re Landry*, 83 F.4th 300, 305 (5th Cir. 2023), and then reset in January 2024 when this Court issued a two-track scheduling order with alternative deadlines for whether or not a legislative remedy was in place, ECF No. 330. Now that S.B. 8 has been enjoined, proceedings should revert to a schedule that will permit this Court to adopt a remedial map in advance of the 2024 elections. *See Robinson v. Ardoin*, 86 F.4th 574, 584 (5th Cir. 2023) ("*Robinson II*") (expecting proceedings will be concluded in time to allow a remedial map "to be used for the 2024 Louisiana congressional elections"); *Ardoin*, 143 S. Ct. at 2654 (vacating stay to "allow the matter to proceed . . . in the ordinary course and in advance of the 2024 congressional elections in Louisiana"). *Galmon* Plaintiffs have been locked out of all proceedings in *Callais*—including remedial proceedings—and they are entitled to judicial redress for their ongoing injury. This Court, where they pleaded and proved valid claims, maintains jurisdiction to supply that remedy.

## II.    The Court should promptly resume remedial proceedings.

There are no significant obstacles preventing this Court from resuming remedial proceedings and ordering a lawful congressional map in advance of the 2024 elections. As the Court has recognized, the parties were fully prepared for a remedial hearing in 2022 before the

7

Supreme Court issued a stay, ECF No. 267 at 2, and again in October 2023 before the Fifth Circuit mandamus order required another opportunity for the Legislature to enact a remedy, *In re Landry*, 83 F.4th at 307, and again in January 2024 before the legislature enacted S.B. 8, *see* ECF No. 330. Proposed remedies have been produced and subject to interrogation by experts and courts, including seven illustrative plans that this Court found—and the Fifth Circuit affirmed—comply with Section 2 without running afoul of the Equal Protection Clause. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 838 (M.D. La. 2022) ("*Robinson I*") (finding that "the record does not support a finding that race predominated in the illustrative map-making"); *Robinson II*, 86 F.4th at 595 ("The district court did not clearly err in its factual findings that the illustrative maps were not racial gerrymanders."). Whether the Court elects to consider briefing on the proposed remedies, hear additional evidence, or assign a special master to consider and adopt a remedial plan, there is no further preparation that needs to be completed before the Court proceeds to the remedial phase.

*First*, it is not too late to order a new map. While the Secretary has requested final maps by May 15 in the *Callais* litigation, it represented to the Fifth Circuit that maps identified by May 30 could be implemented without difficulty. *See Robinson II*, 86 F.4th at 584; *see also id.* ("We mention [that date] only to indicate the State has offered suggestions. The district court will need to make its own decision on the proper scheduling."). And in 2022, both this Court and the Fifth Circuit motions panel recognized that remedial proceedings could commence in late June without risking chaos, distrust, or voter confusion. *See Robinson v. Ardoin*, 37 F.4th 208, 229–30 (5th Cir. 2022); *Robinson I*, 605 F. Supp. 3d at 854 (crediting Defendant's admission "that Louisiana does not have 'a hard deadline for redistricting'"). Indeed, two months earlier, legislative leaders represented in a different case about Louisiana's congressional districts that "[t]he election deadlines that actually impact voters do not occur until October 2022." *Robinson I*, 605 F. Supp.

8

3d at 772 (quoting Legis. Intervenors' Findings of Fact & Conclusions of Law at 8, *Bullman v. Ardoin*, No. C-716690 (La. 19th Judicial Dist. Ct. Mar. 25, 2022)); *see also id.* (noting that legislative leaders explained that Louisiana's "election calendar is one of the latest in the nation" (quoting same at 5)). This Court could hear evidence over the course of three (or fewer) days, *see* Order, ECF No. 250 (resetting remedial proceedings for three days), and enter an order shortly thereafter in advance of any of these potential deadlines.

*Second*, the Fifth Circuit's order vacating the preliminary injunction does not prevent this Court from proceeding directly to a remedial hearing. The Fifth Circuit vacated the injunction not because it was tainted by any legal error, *see Robinson II*, 86 F.4th at 583, but because that court determined—on November 10, 2023—that "a trial can likely occur prior to harm occurring in the 2024 elections," *id.* at 600. *But see id.* at 584 (recognizing, despite Fifth Circuit's preference for trial, that the district court may need to enter further interim relief). The decision did not anticipate the present circumstances, where Louisiana enjoyed a Section 2-compliant congressional districting map for three months only to plunge back into unlawfulness on the last day of April. Now that Louisiana lacks *any* operative congressional plan (let alone a Section 2-compliant plan), there is no need for a trial to determine liability, as the Fifth Circuit contemplated—rather, proceedings should advance directly to a remedial stage to order a map that supplies the second Black-opportunity district that this Court (affirmed by the Fifth Circuit) determined that Section 2 requires.

*Third*, ongoing proceedings in the Western District do not preclude simultaneous proceedings here. As an initial matter, there is no inconsistency between this Court's preliminary injunction ruling and the Western District's injunction of S.B. 8. While this Court held that "the appropriate remedy [for Plaintiffs' likely Section 2 violation] is a remedial congressional

9

redistricting plan that includes an additional majority-Black congressional district," *Robinson I*, 605 F. Supp. 3d at 766, the Western District found more narrowly that one such map—S.B. 8—is unconstitutional. Inj. at 2; *see also id.* at 47 ("assum[ing], without deciding, that compliance with Section 2 was a compelling interest for the State to attempt to create a second majority-Black district"); *id.* at 58–59 (noting the court "does not decide on the record before us whether it is feasible to create a second majority-Black district in Louisiana that would comply with the Equal Protection Clause of the Fourteenth Amendment"). This Court, therefore, remains well positioned to consider and order the adoption of a remedy map that complies with both Section 2 and the Equal Protection Clause. *See Robinson I*, 605 F. Supp. 3d at 835 (rejecting Defendants' argument that Plaintiffs' illustrative plans are unconstitutional).

Nor should this Court hold up resolution of *this* case based on remedial proceedings in the Western District case. Notably, the Western District's truncated proceedings lacked any record—let alone the robust record before this Court—on the Section 2 implications of a map that includes just one majority-Black district. And in any event, whether the Western District will adopt a map with the requisite second Black-opportunity district is precisely the "conjectural or hypothetical" outcome that this Court refused to speculate about in its recent order. Ruling at 8 (quoting *King v. Our Lady of the Lake Hosp., Inc.*, 455 F. Supp. 3d 249, 259–60 (M.D. La. 2020)); *see also id.* ("The Court cannot presume the outcome of a case outside of its jurisdiction to reach a particular conclusion for Plaintiffs.").

Nor is the potential for conflicting orders a basis for this Court's abstention. Ultimately, "robust disagreement by lower court jurists is a feature, not a bug, of our system. Article III contemplated a pyramid and hierarchical shape of the federal judiciary, which encourages multiple judges and multiple circuits to weigh in, thus permitting the airing of competing views that aids

10

appellate review." *Health Freedom Def. Fund, Inc. v. Biden*, 572 F. Supp. 3d 1257, 1266 (M.D. Fla. 2021) (cleaned up). "[D]iffering assessments of the legality of government acts coupled with reasoned opinions create a healthy legal debate that benefits the federal judiciary." *Id.* at 1267. Especially where *Galmon* Plaintiffs' action was filed years before *Callais*, there is no basis for this Court to defer to a subsequent action filed by plaintiffs who could have—but chose not to—intervene in this one.

## CONCLUSION

In light of the Western District of Louisiana's permanent injunction of S.B. 8, this Court should reconsider its order granting Defendants' motion to dismiss and promptly schedule remedial proceedings to redress *Galmon* Plaintiffs' ongoing injury.

Date: May 1, 2024                                                         Respectfully submitted,

                                                                          By: */s/Abha Khanna*

11

| | |
|---|---|
| J. E. Cullens, Jr.<br>Andrée Matherne Cullens<br>S. Layne Lee<br>WALTERS, THOMAS, CULLENS, LLC<br>12345 Perkins Road, Bldg. One<br>Baton Rouge, LA 70810<br>(225) 236-3636 | Abha Khanna (admitted *pro hac vice*)<br>ELIAS LAW GROUP LLP<br>1700 Seventh Ave. Suite 2100<br>Seattle, Washington 98101<br>(206) 656-0177<br>akhanna@elias.law<br><br>Lalitha Madduri (admitted *pro hac vice*)<br>Jacob D. Shelly (admitted *pro hac vice*)<br>Daniel Cohen (admitted *pro hac vice*)<br>Qizhou Ge (admitted *pro hac vice*)<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Ave, NW Suite 400<br>Washington, D.C. 20001<br>(202) 968-4490<br><br>*Counsel for Galmon Plaintiffs* |