# Exhibit A

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, <br><br> Defendant. | Case No. 3:24-cv-00122 |

**THE STATE OF LOUISIANA'S AND THE SECRETARY OF STATE'S MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR A STAY PENDING APPEAL**

## INTRODUCTION

The State of Louisiana and the Secretary of State[1] respectfully move for a stay pending appeal of this Court's April 30, 2024 injunction, ECF No. 198, as implemented by the Court's subsequent scheduling order, ECF No. 219. As the Secretary of State explained in her brief and supporting declaration regarding internal and external election deadlines (including May 15), *see* ECF No. 217, the *only* maps that could feasibly be used for the 2024 election cycle at this stage are (1) SB8 if the injunction is stayed by May 15, (2) any other map ordered by the court by May 15, and (3) HB1. And if the State is not permitted or ordered to use any of those maps by May 15, election chaos will ensue. *See id.* Given the Court's scheduling order, however, Louisiana will not have a congressional map in place until June—and even then, the order suggests that some map other than SB8 or HB1 will be ordered, which the Secretary has made clear is not feasible. A stay is thus necessary to avoid further election chaos.

The State and the Secretary have a right to appeal this Court's injunction under 28 U.S.C. § 1253. And the Supreme Court has repeatedly reiterated the point that "federal courts ordinarily should not enjoin a state's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring), *vacated*, 143 S. Ct. 2607 (2023). The Supreme Court "often stay[s] lower

---

[1] The Secretary of State joins the State in seeking a stay of the injunction pending appeal because the May 15, 2024 deadline is a firm and immovable deadline. As the Secretary of State, it is this Office's position that it will follow the orders of this Court and the Supreme Court. Any order to change the map currently programmed in the system must be received by the Secretary's Office by May 15, 2024. HB1 is the map currently programmed and would cause the least election-administration disruption. But if the Secretary is going to be permitted or ordered to implement any map other than HB1, it must have an order to do so by May 15—full stop.

1

federal court injunctions that contravene[] that principle." *See id.* (citing *Merrill v. People First*, 141 S. Ct. 25, 25 (2020); *Andino v. Middleton*, 141 S. Ct. 9, 9 (2020); *Merrill v. People First*, 141 S. Ct. 190, 190 (2020); *Clarno v. People Not Politicians Or.*, 141 S. Ct. 206, 206 (2020); *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2616 (2020); *RNC v. DNC*, 140 S. Ct. 1205 (2020) (per curiam); *DNC v. Wis. State. Legis.*, 141 S. Ct. 28, 28 (2020)).

This motion provides this Court an opportunity to prevent the irreparable harm to the State, the Secretary, and all Louisiana citizens that will result from this Court's injunction, as currently issued, and the likelihood that it will require implementation of a map that cannot practically be used for the 2024 elections. This request for a stay is limited to the 2024 elections because there is adequate time to prepare for additional maps for subsequent congressional elections and because any appeal is likely to be resolved in time for the resulting map to be used for the 2026 election cycle.

Federal Rule of Appellate Procedure 8(a)(1)(A) generally requires a party seeking a stay pending appeal to seek such relief in the district court first. That Rule "fairly contemplate[s]" that "tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844–45 (D.C. Cir. 1977).

Because of the exigencies presented here, the State and the Secretary respectfully request that this Court resolve this issue expeditiously. The State and

the Secretary respectfully request a ruling by 12:00 p.m. Central Time on Thursday, May 9, to permit them to file an application with the Supreme Court, if necessary, later that day. Absent a decision by this Court by that time, the State and the Secretary plan to file an emergency application for a stay pending appeal in the Supreme Court by the end of that day.

## ARGUMENT

Under the "traditional" standard for a stay pending appeal, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). These factors are not to be applied "in a rigid or mechanical fashion." *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (alterations accepted). A movant "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (citation omitted).

As the Supreme Court "has often indicated, however, that traditional test for a stay does not apply (at least not in the same way) in election cases when a lower court has issued an injunction of a state's election law in the period close to an election." *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). "That principle— known as the *Purcell* principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled. *Id.* at 880–

81. There is also an arguable "relaxed" interpretation of the rule, requiring "a *plaintiff* [to] establish[] at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Id.* (emphasis added). A stay is warranted under these standards.

I. **THE STATE AND THE SECRETARY WILL SUFFER IRREPARABLE HARM ABSENT A STAY PENDING APPEAL AND SUCH A STAY IS IN THE PUBLIC INTEREST.**

This Court's injunction imposes irreparable harm per se by enjoining a duly enacted State law. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . seriously and irreparably harm[s] the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). "If the district court judgment is ultimately reversed, the State cannot run the election over again, this time applying" the plan enacted by the Louisiana legislature. *Veasey v. Perry*, 769 F.3d 890, 896 (5th Cir. 2014) (issuing stay pending appeal). This is per se a harm to the public interest. *See, e.g., Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 605 (E.D. La. 2016), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017).

The *Purcell* principle establishes here that the State and the Secretary do not have enough time to formulate and implement another congressional map this late in the game. It is a bedrock principle of election law that federal courts should not

4

muddy the electoral waters when an election is in close proximity. *See Merrill*, 142 S. Ct. at 880–81 (Kavanaugh, J., concurring). Louisiana "indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citation omitted). And "[c]onfidence in the integrity of our electoral process is essential to the functioning of our participatory democracy." *Id.*

When considering whether to issue injunctive relief close to an election, courts are "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures." *Id.* at 4. This is because "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, *that risk will increase.*" *Id.* at 4–5 (emphasis added).

The Secretary of State stated in her brief that "she needed an approved congressional plan no later than May 15, 2024, in order to have sufficient time and resources needed to administer the 2024 elections pursuant to federal and state law." ECF No. 217 at 6; *see also Veasey*, 769 F.3d at 893 (explaining that federal courts have emphasized the need to consider the mechanics and complexities of administering state election law). At this point, only HB1 is entered into the election system and is the only map that could presently be used. ECF No. 217-1 at 4. SB8 or some other map ordered by the court could alternatively be used so long as the Secretary could begin entering it into the election systems by May 15—but this

5

Court's injunction prevents her from doing so. *Id.* at 5. Indeed, after May 15, HB1 is the only map that feasibly could be used. *See id.* at 4–5. No other maps are feasible.

In issuing its remedial scheduling order, ECF No. 219, this Court seems to have ignored that the May 15, 2024 date is predicated on the fact that the Secretary must implement not one, but *two*, statewide redistricting plans before the June 19, 2024 deadline for would-be candidates to qualify by petition to run in the Fall 2024 elections. *See* ECF No. 217 at 3. On May 1, 2024—just seven days ago—a new statewide map for Louisiana Supreme Court voting districts became law, which requires the Secretary to move over two million Louisianans (approximately forty-three percent of Louisiana's population) into new districts for the Fall 2024 elections. Notably, the Louisiana Supreme Court redistricting bill (SB 255) was not introduced in the Legislature until March 1, 2024, and was not signed into law until May 1, 2024.[2] Thus, any previous representation made during the October 2023 *Robinson* oral argument before the Fifth Circuit about an end-of-May-2024 deadline for new Congressional maps did not, and could not, take into account the current reality that the Secretary also now must implement significant, statewide changes to an entirely different map—the voting districts for the Louisiana Supreme Court.[3]

---

[2] The legislative history of SB 255 can be found here: https://legiscan.com/LA/bill/SB255/2024. The Court may take judicial notice of the legislative history, including the date the bill was filed and signed into law. *See Territory of Alaska v. Am. Can Co.,* 358 U.S. 224, 227 (1959).

[3] Moreover, the comment made by Jason Torchinsky (counsel for the State in both *Robinson* and here) during the October 2023 *Robinson* oral argument in the Fifth Circuit was made in the last few minutes of rebuttal time, in response to a direct question from Judge Elrod. A recording of that argument can be found here: ca5.uscourts.gov/OralArgRecordings/22/22-30333_10-6-2023.mp3 (at 1:20:59-1:21:29). No staff member from the Secretary's Office was available for consult in the last few minutes of argument. Nor, as mentioned above, was the prospect of implementing a new statewide map for Louisiana Supreme Court voting districts, especially one that moves such a significant amount of

6

As the Secretary of State has emphasized, "[r]ushing the voter assignment and ballot printing process creates an unacceptable risk of error that can lead to flawed elections." *See* ECF No. 217 at 5. Simply put, the truncated process that would result from trying to implement a completely new congressional map before the 2024 election would result in potential errors, negatively impacting the electoral process and voters' trust in that process.

In addition, the Court's injunction, ECF No. 198, and scheduling order, ECF No. 219, do not allow the State a fair and reasonable opportunity to fulfill its constitutional duty and enact a remedial map. "Redistricting is primarily the duty and responsibility of the state and federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Abbott*, 138 S. Ct. at 2324 (internal citation and quotation marks omitted). And the State is entitled to a reasonable opportunity to adopt a remedial map instead of the federal court devising its own plan. *See In re Landry*, 83 F.4th 300, 303 (5th Cir. 2023) (citing *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978)). The State must be given a non-illusory amount of time to accomplish this. *See id.* at 306 (stating that five legislative days was "an impossibly short timetable for [remedial] state legislative action" and noting that, in an Alabama redistricting case, a three-judge panel granted that state legislature six weeks to propose a new map).

As explained by the State, the Legislature does not feasibly have time to adopt a new map by May 15. *See* ECF No. 218. Yet this Court's scheduling order does not

Louisiana's population, on anyone's mind in October 2023—five months prior to the introduction of SB 255.

7

allow for any remedial map to be in place until June 4—well after the May 15 deadline. *See* ECF No. 219 at 3. Accordingly, the State and the Secretary jointly seek a stay pending appeal for purposes of the 2024 elections.

## II. THE STATE AND THE SECRETARY ARE LIKELY TO PREVAIL ON APPEAL.

As explained above, the Court's injunction leaves the Secretary with no map to implement by May 15, which creates grave risks of electoral confusion, chaos, and errors. Because that injunction runs afoul of the *Purcell* doctrine and well-established principles of equity, the State and the Secretary are likely to prevail on appeal. The current scheduling order indicates that this Court will impose a map on June 4, 2024, *see* ECF No. 219 at 3, which is 154 days before the November 5, 2024 election. In *Robinson*, the Supreme Court stayed the order enjoining the use of HB 1 that the Middle District issued on June 6, 2022, which was 155 days before the November 8, 2022 elections. The same result would likely follow here.

Additionally, for the reasons already articulated by the State in its post-trial brief and opposition to Plaintiffs' motion for a preliminary injunction, the State is likely to prevail on the underlying constitutional merits. *See* ECF No. 86; ECF No. 192.

## CONCLUSION

For the foregoing reasons, this Court should grant a stay pending appeal.

Dated: May 8, 2024                                    Respectfully Submitted,

Jason B. Torchinsky (DC No. 976033)*        */s/ Morgan Brungard*
                                                                       Morgan Brungard (LSBA No. 40298)
                                                                       *Deputy Solicitor General*

8

H<small>OLTZMAN</small> V<small>OGEL</small> B<small>ARAN</small>
T<small>ORCHINSKY</small> & J<small>OSEFIAK</small>, PLLC
2300 N Street, NW
Suite 643A
Washington, DC 20037
Tel: 202-737-8808
Email: jtorchinsky@holtzmanvogel.com

Phillip M. Gordon (VA No. 95621)*
Zachary D. Henson (NY No. 5907340)*
H<small>OLTZMAN</small> V<small>OGEL</small> B<small>ARAN</small>
T<small>ORCHINSKY</small> & J<small>OSEFIAK</small>, PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: pgordon@holtzmanvogel.com
       zhenson@holtzmanvogel.com

Drew C. Ensign (DC No. 976571)*
Brennan A.R. Bowen (AZ No. 036639)*
H<small>OLTZMAN</small> V<small>OGEL</small> B<small>ARAN</small>
T<small>ORCHINSKY</small> & J<small>OSEFIAK</small>, PLLC
2575 East Camelback Rd, Ste 860
Phoenix, AZ 85016
602-388-1262
Email: densign@holtzmanvogel.com
       bbowen@holtzmanvogel.com

    *admitted *pro hac vice*

*Counsel for Intervenor-Defendant State of Louisiana*

Carey Tom Jones (LSBA No. 07474)
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 326-6000 phone
(225) 326-6098 fax
BrungardM@ag.louisiana.gov
JonesCar@ag.louisiana.gov

*Counsel for Intervenor-Defendant State of Louisiana*

*/s/ Phillip J. Strach*
Phillip J. Strach
phillip.strach@nelsonmullins.com
Alyssa M. Riggins*
alyssa.riggins@nelsonmullins.com
Cassie A. Holt*
cassie.holt@nelsonmullins.com

9

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: (919) 329-3800
Facsimile: (919) 329-3799

*/s/ John C. Walsh*
John C. Walsh (Louisiana Bar Roll No. 24903)
john@scwllp.com
**SHOWS, CALI & WALSH, L.L.P.**
P.O. Box 4046
Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-5561

*Counsel for Defendant Nancy Landry*
admitted *pro hac vice**

10

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participating attorneys.

*/s/ Morgan Brungard*
Morgan Brungard
